UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X

CRAIG MOSKOWITZ and BARBARA MOSKOWITZ,
each on their own behalf, and as parents on behalf of their
minor child, S.M.,

                              Plaintiffs,

                 -against-

GREAT NECK UNION FREE SCHOOL DISTRICT,
THE BOARD OF EDUCATION OF THE GREAT NECK
UNION FREE SCHOOL DISTRICT, DANA SLACKMAN,
DR. GABRIELLA DUKE, KATE MUGNO, ROBIN
TRICHON, DR. ANTHONY IACOVELLI, LUCIANA
BRADLEY, and SARA GOLDBERG, each Individually,
and in their respective official capacities,

                            Defendants.

------------------------------------------------------------------------ X

Case No. 20-cv-1659

**COMPLAINT
AND JURY DEMAND**

Plaintiffs Craig Moskowitz and Barbara Moskowitz, each individually and as parents on

behalf of their minor child Plaintiff S.M., through their counsel Advocates for Justice, Chartered

Attorneys, as against Defendants the Board of Education of the Great Neck Union Free School

District (the "School Board") and the Great Neck Union Free School District (the "School

District") and Individual Defendants Dana Slackman, Dr. Gabriella Duke, Kate Mugno, Robin

Trichon, Dr. Anthony Iacovelli, Luciana ("Lucie") Bradley, and Sara Goldberg, in their

respective individual and official capacities, plead and allege as follows:

**PRELIMINARY STATEMENT**

1.     This action arises because of numerous instances of physical and emotional

harassment and bullying against Plaintiff S.M., a child with emotional and learning disabilities,

during his school years 2017-2018 (4th grade) and 2018-2019 (5th grade) at Saddle Rock Elementary

School ("Saddle Rock"), by S.M.'s schoolmates and by Defendants School District, School Board,

and Individual Defendant administrators and employees, and because of Defendants' unlawful removal on April 1, 2019 of S.M. from his classroom and Defendants' shocking and unprecedented use of a spread-eagle method of physical restraint against S.M., during which he sobbed uncontrollably, crying for his parents (referred to as "the April 1, 2019 incident").

2.      As a result of Defendants' unlawful actions and inactions, including Defendants' bullying treatment, unreasonable removal from class, and use of egregious spread-eagle restraint during the April 1, 2019 incident, all of which violated Plaintiffs' constitutional rights, federal and state disability and civil rights, and federal, state, and local rights and laws, and which constituted Defendants' deliberate indifference, gross negligence, and recklessness, S.M. suffered severe emotional trauma, physical injuries, and extreme emotional distress, resulting in his psychiatric hospitalization at South Oaks Hospital. In addition to his physical and emotional injuries, and particularly after the April 1, 2019 incident, S.M. also experienced heightened fear of school, fear of school teachers and administrators, fear of schoolmates, high levels of anxiety, additional difficulties in learning, and enhanced symptoms of his disabilities, all of which contributed to the necessity to prescribe him additional and/or alternative medications.

3.      Further as a result of the above, S.M.'s parents Craig and Barbara Moskowitz suffered physical, emotional, and financial losses, including but not limited to pain and suffering, emotional distress, medical and pharmacological expenses, traveling and transportation expenses, school tuition payments, and tutoring expenses.

4.      This action seeks a jury trial and multiple remedies as a result of Defendants' violations of law, including but not limited to and as further specified herein, declaratory and injunctive relief, compensatory education services and tutoring, the provision of computer-

aided and other technology learning tools and aides, a one-on-one paraprofessional, psychiatric and other therapeutic counseling, and compensatory and punitive damages.

## PARTIES

### Plaintiff S.M.

5.        S.M. is now an eleven-year-old child who resides in Great Neck, New York with his parents, Plaintiffs Craig and Barbara Moskowitz; he brings this action by and through his Plaintiff-parents.

6.        S.M. is a child with multiple emotional and learning disabilities, each of which meets the definitions of "a disability" and "an impairment" as defined under the Individuals with Disabilities Education Act, 20 U.S.C. §§1400, *et seq.*, Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§12131, *et seq.*, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794, and the applicable regulations promulgated thereunder, and under the New York State Human Rights Law, §290, *et seq.*

7.        Specifically, S.M. has been diagnosed at various times as suffering from several disabilities and disorders including Attention Deficit Hyperactivity Disorder ("ADHD"), Disruptive Mood Dysregulation Disorder ("DMDD"), Unspecified Anxiety, and Unspecified Trauma. These disabilities, disorders, and impairments substantially limit and make it exceedingly difficult for S.M. to concentrate or to learn. One of S.M.'s doctors who worked with him on a one-on-one basis during the school year noted that S.M.'s learning and behavior disabilities made him hyperactive, impulsive, and unable to concentrate on a regular basis.

8.        As a result of his disabilities and impairments, S.M. qualifies for and is in need of special education and related services as defined and authorized by the IDEA and the State of New York.

9. One of S.M's doctors, Arya Soman, a Clinical Assistant Professor at the Zucker School of Medicine at Hofstra/Northwell, wrote a letter to Plaintiff-parents, to be shared with Defendants, regarding her personal observations of such learning impairments, including S.M.'s abilities to concentrate and to learn, which she also noted caused S.M. to experience a disrupted education due to his suffering from anxiety and hyperactivity. Additionally, after being at South Oaks Hospital for treatment after the April 1, 2019 incident, Dr. Sidra Kahlon had to prescribe two additional medications for S.M.'s ADHD and DMDD.

10. Although S.M. is classified as having emotional and learning disabilities, and has exhibited attentional difficulties, he was qualified to participate in an Integrated Classroom Teaching ("ICT") educational program offered by Saddle Rock.

11. Because of his disabilities and because he was not capable of defending himself and responding to bullying and harassment as would a nondisabled child, several of S.M.'s schoolmates harassed and bullied S.M. on multiple occasions, which included teasing, name calling, physical altercations, intimidation, and overall cruel treatment. Such incidents caused S.M. to feel extreme emotional distress; he also continued to experience increased anxiety and hyperactivity both at school and at home, which further disrupted his educational progress and his learning.

**Plaintiffs Craig and Barbara Moskowitz**

12. Plaintiff Craig Moskowitz is S.M.'s father and husband to Plaintiff Barbara Moskowitz, S.M.'s mother. Together the family lives in Great Neck, New York.

13. Plaintiffs Craig and Barbara Moskowitz bring this action on their own respective individual behalf, and on behalf of their minor child, S.M.

14. As S.M.'s parents, Plaintiffs Craig and Barbara Moskowitz, along with S.M.'s doctors, on a regular basis, informed Defendants, including others as necessary from Saddle Rock, of S.M.'s

disabilities and diagnoses, and any changes therein, ensuring that Defendants were kept apprised of any updates regarding S.M.'s diagnoses, symptoms, or medications.

**Defendant Board of Education of the**
**Great Neck Union Free School District ("the Board")**

15. Defendant Board of Education of the Great Neck Union Free School District (the "Board") is a corporate body created by and existing under the education Law of the State of New York pursuant to Sections 1701 and 1709 of the New York State Education Law. Pursuant to various provisions of that law, the School Board and the School District are charged with several responsibilities including administering and managing the educational affairs of the School District and serving as the employer of all educators and principals hired to teach in and serve as administrators of the School District.

**Defendants School District and School Board**

16. Defendant School District's central office is located at 345 Lakeville Road, Great Neck, NY 11020.

17. Defendant School Board typically meets within the School District's central office.

18. Upon information and belief, the School District and the schools within it are recipients of federal funds as contemplated by the ADA and Section 504.

19. Saddle Rock Elementary School ("Saddle Rock") is a public school organized under the laws of the State of New York and is a school within the School District. Saddle Rock is located at 10 Hawthorne Lane, Great Neck, NY 11203.

**Individual Defendants**

20. Defendant Dana Slackman is a behavior clinician ("BCBA") specializing in special education, an employee of and/or independent contractor with the School District and worked at Saddle Rock. She is being sued in both her individual and professional capacities.

21.     Defendant Dr. Gabriella Duke is a school psychologist, an employee of the School District, and worked at Saddle Rock. She is being sued in both her personal and professional capacities.

22.     Defendant Kate Mugno was S.M.'s fifth-grade teacher and an employee of the School District; she worked at Saddle Rock. She is being sued in both her personal and professional capacities.

23.     Defendant Robin Trichon is a Speech and Language therapist and an employee of the School District; she worked at Saddle Rock. She is being sued in both her personal and professional capacities.

24.     Defendant Dr. Anthony Iacovelli is a school psychologist, an employee of the School District, and worked at Saddle Rock. He is being sued in both his personal and professional capacities.

25.     Defendant Luciana "Lucie" Bradley is the Principal of Saddle Rock; she is an employee of the School District; she is being sued in both her personal and professional capacities.

26.     Defendant Sara Goldberg is the Assistant Principal of Saddle Rock, an employee of the School District. She is being sued in both her personal and professional capacities.

27.     Defendants have both an individual and a collective a duty and responsibility to protect children with disabilities, including S.M., generally from harm, including from harassment and bullying, and from discrimination because of disabilities.

## JURISDICTION AND VENUE

28.     This Court has subject matter jurisdiction over this federal action pursuant to 28 U.S.C. Section 1331, as there are substantial issues of federal law to be adjudicated herein (*e.g.*,

under the IDEA, the ADA, Section 504, and the United States Constitution). The Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the New York State statutory and common law claims including Plaintiffs' claims for intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, gross negligence, failure to train, failure to supervise, negligent performance of a governmental function, assault and battery.

29.     Venue is proper under 28 U.S.C. § 1391 in the Eastern District of New York as it is the jurisdiction in which Plaintiffs reside and in which the events giving rise to Plaintiffs' claims occurred.

## **FACTS**

### *A.     S.M.'s Disabilities and Mandated Education Services*

30.     From the time S.M. first enrolled at Saddle Rock, and during his initial time there, both Plaintiff-parents and Defendants because Plaintiff-parents were aware of S.M.'s learning disabilities and impairments, including ADHD, DMDD, and Unspecified Anxiety through many observations and examinations of S.M. by Dr. Soman in her practice, and by Dr. Iacovelli at school during class time and therapy sessions, along with numerous conversations between Defendants about S.M.'s educational learning and lack of progress.

31.     In addition, Dr. Soman wrote to Defendants explaining S.M. continued to exhibit signs of having learning disabilities and impairments as he was increasingly hyperactive, impulsive, often inattentive, and unable to concentrate for long periods of time.

32.     On account of his disabilities, S.M. has an individualized education program ("IEP") in an effort to ensure that he received the educational learning and skills necessary for his educational and social advancement.

33.     According to his IEP, S.M. was mandated to receive his education in an ICT classroom setting and mandated to receive both small group counseling sessions during school.

Further, according to his IEP, S.M. was mandated to receive speech and language therapy in small group settings.

**Incidents of Bullying and Harassment at Saddle Rock**

34.    During the eighteen-month period prior to the April 1, 2019 incident, during school years 2017-2018 and 2018-2019, S.M. suffered continuous, numerous incidents of bullying and harassment by his schoolmates; such incidents were known and/or should have been known to Defendants and many other staff members of Defendant School District; Plaintiff-parents discussed the upsetting incidents that they were aware of with Defendants and other members of the school staff of Saddle Rock, including Assistant Principal, now Principal, Luciana Bradley and Assistant Principal Sonia Goldberg.

35.    Further, in school year 2017-2018, Plaintiff-parents discussed with Defendants multiple incidents of harassment and bullying, including an egregious occasion when S.M. was hurt and brought to tears by a schoolmate.

36.    Despite receiving Plaintiff-parents' complaints of harassment and bullying, and the clear evidence of S.M.'s physical and emotional suffering, Defendants ironically "blamed the victim" by erroneously claiming that S.M. frequently "caused" these incidents because he had somehow placed himself "in the path" of these bullies.

37.    Because these bullying and harassing incidents continued, and because Defendants continued to fail to intervene or protect S.M., Plaintiff-parents called the police and filed a police report. The following morning, Craig Moskowitz spoke with Principal Bradley, Jennifer Green, S.M.'s then fourth-grade teacher, and Rene Remi, S.M.'s then Special Education teacher, again expressing concerns that S.M. was being bullied and harassed at school and that Defendants were failing to protect him. During this conversation, both Ms. Bradley and Ms.

Remi stated in substance that S.M. should learn to stay away from these bullies and that it was S.M.'s own fault for putting himself in their paths.

38. Thereafter, the incidents of bullying and harassment of S.M. continued to worsen. Plaintiff-parents provided the School Psychologist, Dr. Iacovelli, with recordings of S.M. recounting his day, describing what was going on at school. Despite this evidence, Dr. Iacovelli did nothing to alleviate the harassment and bullying S.M. described that he was experiencing in school.

**B.**   ***S.M. Was Subjected to Multiple Incidents of Bullying by Fellow Schoolmates***

39. For the school year of 2018-2019, S.M., due to his disabilities and manifestations of his disabilities, faced multiple incidents of bullying by fellow schoolmates, including teasing, name calling, physical altercations, mimicking, and other forms of harassment, bullying, discrimination, and physical abuse.

40. Further, at the beginning of the 2018-2019 school year, Plaintiff-parents spoke with Assistant Principal of Saddle Rock, Sara Goldberg, expressing incredible frustration regarding the lack of attention or action that Defendants had taken to remedy the bullying and harassment S.M. had been receiving while at Saddle Rock. During this conversation, Plaintiff-parents reiterated a particular example of the abuse S.M. encountered at school, where another student kicked him and threw rocks at S.M., which caused him to fall and hurt himself. In response, Ms. Goldberg merely stated in substance that she and his teachers and the other staff would maintain a careful watch on S.M.

41. The bullying incidents, however, continued during the fifth grade as well. During the 2018-2019 school year, S.M.'s behavior continued to worsen, which greatly interrupted his education due to emotional and behavioral dysregulation and hyperactivity.

42.     As evidence of his disrupted education and impact of his learning disabilities, S.M. scored an eighty-one (81) for his Written Language Composite, meaning that he scored below average as he was within the tenth (10th) percentile.

43.     One of S.M.'s schoolmates continually bullied S.M. by threatening him with severe harm, intimidating him by pushing his body towards S.M. in a menacing manner, and physically hitting and/or throwing hard objects at S.M. causing him to fall to the ground while at school.

44.     This same schoolmate during an extracurricular activity approached S.M. on the soccer field, threated S.M., told him that he wanted to hurt S.M., and then proceeded to kick S.M. in the testicles.

45.     Along with Defendants witnessing such incidents themselves, Plaintiff-parents spoke with the Assistant Principal, teachers, and other staff members of Defendant School District regarding the continual incidents of bullying and harassment.

46.     Because of Plaintiff-parents' continual interactions with the Principal, Assistant Principal, and other staff members of Defendant School District regarding their concern for S.M., both parent Plaintiffs were banned from coming onto school grounds. Later the Superintendent of the School District withdrew the ban, but only in part.

**C.     *Unlawful Restraint of S.M. on April 1, 2019***

47.     On April 1, 2019, Defendant Slackman stared at and taunted S.M. and then threatened to drag him to see the school psychologist, Defendant Iacovelli. After a series of further actions and inactions by Defendants, which exacerbated S.M.'s disability symptoms, Defendants caused S.M. to feel threatened and unsafe, prompting him to elope through the school. S.M. became more and more agitated, hyperactive, and fearful for his well-being; Defendants, instead of employing de-escalation techniques to handle S.M.'s crisis incident and

defuse S.M.'s fear and anxiety, further exacerbated S.M.'s crisis reaction, chasing S.M. and threatening him through the school.

48.    Three additional employees, Defendants Mugno, Duke, and Trichon, joined Defendant Slackman in attempting to restrain S.M. and employed a highly unauthorized, unnecessary and egregious method of physical restraint. Each Defendant – four adults – each grabbed hold of one of S.M.'s limbs and stretched him spread-eagle in the air; Defendants held S.M. spread-eagle while S.M. was screaming and crying uncontrollably for over ten minutes.

49.    When S.M.'s father arrived at school, having been summoned by Saddle Rock to deal with his son, Plaintiff Craig Moskowitz witnessed his child being held spread-eagle by Defendants, still screaming and sobbing uncontrollably.

50.    When Defendants finally released their hold on S.M., he was incapable of standing up. The manner in which Defendants restrained S.M., which was grossly excessive and violative of standards for de-escalation or of crisis protocols, caused S.M. to suffer severe trauma, and physical and emotional injuries and harm.

51.    Though questioned repeatedly by Plaintiff-parents, Defendants failed to provide adequate or even reasonable justification for Defendants' use of such egregious restraint; Defendants then advised Plaintiff-parents that S.M. was suspended from school and prohibited from returning for two days.

52.    Defendants further failed to advise or reassure Plaintiff-parents that Defendants could keep S.M. safe or provide him with the attention or environment that S.M. deserved and required.

### D. *Emotional Trauma and Hospital Stay After the April 1, 2019 Incident*

53.     As a result of Defendants' egregious treatment and their continued failure to keep S.M. in a safe educationally appropriate environment, Plaintiff-parents had to hospitalize S.M. at South Oaks Hospital for ten days, from April 5, 2019 to April 15, 2019, for psychiatric treatment.

54.     Upon discharging S.M., S.M.'s physician, Dr. Sidra Kahlon, prescribed additional medications for S.M. to take after April 15, 2019, for his ADHD and DMDD.

55.     Additionally, South Oaks Hospital scheduled S.M. to meet both with a therapist and psychiatrist along with recommending that S.M. attend Sagamore Intensive Day Treatment ("IDT") program, not only for S.M. to recover but to achieve the proper educational and emotional needs S.M. was entitled to and required.

56.     Dr. Soman, who had been overseeing and monitoring S.M. since September 2018. in a letter after S.M.'s stay at South Oaks Hospital, also recommended that S.M. attend Sagamore IDT in order to meet his educational and emotional needs, which were not being met properly by Defendants.

57.     During S.M.'s hospitalization, the hospital diagnosed S.M. as having experienced trauma, caused by the long-term bullying and the egregious spread-eagle restraint S.M. had suffered.

58.     During and following his hospital discharge, S.M. expressed extreme fear and apprehension regarding any potential return to school or seeing any of the Defendants, including other schoolteachers or administrators.

### E. *Defendants' Failure to Properly Train and Supervise Staff*

59.     Defendants have a special duty and responsibility as providers for special education students and providers of essential educational services, as they oversee the education, management, health, and overall safety of the children in school, including S.M.

60. Despite the many reports of harassment and bullying experienced by S.M. at Saddle Rock and being aware of the continual and abusive harassment and bullying S.M. was experiencing at school, Defendants failed to provide a of safe learning environment for S.M.; Defendants simply failed to protect him from physical or emotional abuse and further exacerbated S.M.'s disability symptoms by their response to S.M.'s crisis behavior.

61. In fact, Defendant Assistant Principal and S.M.' teacher even insinuated that S.M. either instigated his bullying and harassment and/or that S.M. failed to avoid circumstances when bullying was likely to occur, thereby blaming S.M. for the horrible treatment of harassment and bullying he experienced.

62. On account of the bullying and harassment from his classmates, S.M. became more emotionally distressed throughout the year as demonstrated by Dr. Soman's diagnoses, Dr. Iacovelli's observations of his behavior at school, and Plaintiff-parents' experiences at home. For example, in a letter, Dr. Soman noted that S.M. continued to struggle greatly with hyperactivity, inattention, and poor concentration, which led to emotional and behavioral dysregulation disruptions both at home and at school.

63. Defendants School Board and School District, along with Defendants Bradley, Goldberg, and other administrative personnel, are responsible for the overall administration of all schools within the District, including Saddle Rock.

64. From the offices in Great Neck, NY, the School Board and the School District supervise the District by setting district-wide policies and goals; hiring school leaders and other professionals, including teachers, psychologists, and providers, responsible for carrying out its mission; encouraging the development of shared services, curricula, and facilities among schools; and creating and implementing plans to provide a District-wide plan for education.

65.     Defendants were responsible for establishing and carrying out the proper anti-harassment, anti-bullying, and anti-discrimination policies and practices, which should have been utilized and adhered to.

66.     Defendants failed to properly train and supervise their teachers and staff members.

67.     First, the staff continually failed to provide a safe and comforting learning environment for S.M. as they neglected to keep him safe from continuous bullying, harassment, and abuse. In fact, staff members of Saddle Rock blamed S.M. for causing such harassment and bullying because he was unable to remove himself from the paths and circles of his aggressors.

68.     Second, standard practice and protocols for de-escalation and crisis management, and for when a child must be restrained, used by trained professionals, is to go behind the child and while holding their arms or hands, embrace the child until the child exhibits calm.

69.     Upon information and belief, and for example, as evidenced by the April 1, 2019 incident, Defendants failed to train its staff in handling incidents such as S.M.'s crisis.

70.     Defendant Board and School District, along with Saddle Rock's Principal and Assistant Principal, should have supervised their employees to ensure that they were following protocols and creating and maintaining a safe education environment.

71.     Moreover, Defendants and other teachers and staff members were well aware of the severe harassment and bullying that S.M. suffered on multiple occasions yet Defendants failed to investigate such incidents and failed to remediate them.

***F.   Saddle Rock's Failure to Provide S.M. FAPE and Failure to Address S.M.'s Education Needs***

72.   Saddle Rock failed to provide S.M. with any reasonable accommodations, which should have included, at a minimum, a behavioral plan pursuant to § 504 of the Rehabilitation Act designed to identify, manage, and extinguish problematic behaviors.[1]

73.   Saddle Rock also violated § 504 by:

a.   Failing to notify the Plaintiff -parents of S.M.' rights, and their rights, under § 504;

b.   Failing to direct the Plaintiff-parents to a § 504 coordinator (if in fact such a person existed at Saddle Rock at the time);

c.   Failing to convene a § 504 meeting to determine whether S.M. required a behavioral plan to address his difficulties with focusing and following classroom instructions; and

d.   Failing to develop interventions that would benefit S.M., including creation of a modified disciplinary policy and protections from bullying and harassment.

74.   In the course of the evaluations and observations done by Defendant Dr. Iacovelli, S.M. was observed in the classroom, where it was noted that he had difficulty focusing. Additionally, teachers reported, among other things, that S.M. had difficulty responding to behavioral corrections, that he was hyperactive, anxious, and impulsive. Staff reported that S.M. had difficulty focusing and with receiving and following instructions.

75.   Saddle Rock discriminated against S.M. on account of his disabilities as it failed to provide him with a bully and harassment free environment.

_____

[1] A "504 Plan" is a written plan developed to ensure that a child who has a disability identified under the law receives accommodations that will ensure their academic success and access to an appropriate learning environment.

76. After working and overseeing the educational development of S.M. during the 2018-2019 school year, Dr. Iacovelli noted that S.M. continued to struggle more throughout the year with episodes of emotional and behavioral dysregulation at school. Had Defendants shielded S.M. from terrible and continuous harassment, abuse, and bullying, S.M. would not have continued to get worse through the year.

77. Due to its failure to provide S.M. with a safe learning environment free of physical abuse and restraint, harassment, and bullying, Defendants deprived S.M. of a proper education.

**H.    *Defendants Failed to Provide Hours of Home-Bound Schooling & Tutoring***

78. Upon discharge from the hospital, Plaintiff-parents could not permit S.M. and refused to return him to the hostile learning environment that caused their son such incredible amounts of physical and emotional distress. Dr. Soman also opined that S.M. should not return to Saddle Rock.

79. While Plaintiff-parents awaited S.M.'s possible placement at Sagamore IDT program, they requested for home-bound schooling and tutoring.

80. Defendants originally stated that S.M. would receive five hours of 1:1 instruction at the Clover Drive Office along with other services agreed to on his most recent IEP; however, Defendants later actually reduced these hours. S.M. received less than five hours of instruction per week, which negatively impacted his learning and education.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**(Defendants Violated § 504 by Discriminating Against S.M.)**

81. Plaintiffs repeat and incorporate each and every allegation set forth in the preceding paragraphs.

82.     S.M. is an "individual with a disability" under § 504 of the Rehabilitation Act of 1973 because he has learning impairments that substantially limit one or more major life activities.

83.     Defendants were aware of S.M.'s disabilities as he was diagnosed with ADHD, Unspecified Anxiety, and DMDD. In connection with evaluations and observations of S.M., especially during the school year 2018-2019, Defendants were aware that S.M. suffered from difficulties focusing, hyperactivity, inattentiveness, impulsivity, and poor concentration, among other characteristics associated with ADHD, Unspecified Anxiety, and DMDD.

84.     S.M. is an "individual with a disability" under § 504 of the Rehabilitation Act of 1973 because he could have succeeded at the school had he received reasonable and meaningful accommodations.

85.     Defendants and other District employees failed to make proper accommodations for S.M. despite his disabilities.

86.     Defendants and other District employees discriminated against S.M. on the basis of his disabilities:

    a.      by failing to offer § 504 accommodations, such as a behavioral plan, that would have enabled S.M. to better cope within the classroom setting;

    b.      by segregating S.M. from the other students in the class when he experienced emotional and behavioral dysregulation;

    c.      by denying S.M. the right to participate in the education program to the same extent as other nondisabled students;

    d.      by permitting severe harassment and bullying against S.M. to occur and continue without sufficient remedial action to deter such incidents;

e.     by blaming S.M. for incidents of harassment and bullying he suffered by fellow schoolmates;

f.     by denying S.M. the right to participate fully in Saddle Rock's education and extracurricular programs; and

g.     by removing S.M. from the classroom and unlawfully and egregiously restraining him;

h.     by failing to provide S.M. with academic instruction during the time that he was removed from the School and failing to provide sufficient number of hours of home-bound instruction to compensate for the school days missed when S.M. could not be allowed return to school.

87.     The actions of Defendants and other Saddle Rock employees against S.M. constituted a method of administration that substantially impaired the ability of students with attentional and learning disabilities to access Saddle Rock's education program.

88.     The discrimination by Defendants and other Saddle Rock employees against S.M. constitutes a violation of § 504 of the Rehabilitation Act of 1973 and the regulations promulgated thereunder.

89.     The actions and inactions of Defendants and other Saddle Rock employees against S.M. demonstrated willful and intentional discrimination and therefore a claim for damages under § 504 of the Rehabilitation Act of the 1973 is appropriate.

90.     The actions and inactions of Defendants and other Saddle Rock employees against S.M. demonstrated deliberate indifference, gross negligence, and recklessness, and therefore a claim for punitive damages against the Individual Defendants under § 504 of the Rehabilitation Act of the 1973 is appropriate.

## SECOND CLAIM FOR RELIEF

### (Defendants and Other Saddle Rock Employees
### Violated the ADA by Discriminating Against S.M.)

91.     Plaintiffs repeat and incorporate each and every allegation set forth in the preceding paragraphs.

92.     Defendants acting both in their respective personal and professional capacities as educators and staff of Saddle Rock discriminated against S.M. on the basis of his disabilities through the conduct set forth above.

93.     Defendants failed to ensure S.M. received his services required by FAPE and his IEP, to prevent harassment and bullying, to protect S.M. from such attacks, and to follow mandated protocols and procedures for deescalating and/or restraining children,

94.     Defendants and the aforementioned staff members' conduct against S.M. demonstrates willful and intentional discrimination and therefore a claim for damages under the ADA is appropriate.

95.     Defendants and other Saddle Brook employees' actions and inactions constitute a violation of the ADA and the regulations promulgated thereunder.

96.     The actions and inactions of Defendants and other Saddle Rock employees against S.M. demonstrated deliberate indifference, gross negligence, and recklessness, and therefore a claim for punitive damages against the Individual Defendants under the ADA is appropriate.

## THIRD CLAIM FOR RELIEF

### (Defendants Violated § 504 by Retaliating Against Plaintiff-Parents)

97.     Plaintiffs repeat and incorporate each and every allegation set forth in the preceding paragraphs.

98. Plaintiffs Craig Moskowitz and Barbara Moskowitz, in communicating their concerns about Defendants' failures to prevent bullying and harassment of their son, were engaging in protected activity under § 504 of the Rehabilitation Act of 1973.

99. A causal connection exists between Plaintiff-parents communicating their concerns and Defendants banning Plaintiff-parents from school grounds. Defendants' ban on Plaintiff-parents' presence occurred only after Defendants discussed multiple reports of bullying and Plaintiff-parents s complained about the harassment and bullying of S.M. by his schoolmates.

100. Defendants' order to prevent Plaintiffs from school grounds was an adverse action because Plaintiff-parents' presence was one of the necessary means for Plaintiff-parents could express and discuss their grievances regarding their son's treatment.

101. Therefore, Defendants retaliated against Plaintiffs for engaging in protected activity in violation of § 504 of the Rehabilitation Act of 1973.

102. Defendants and the aforementioned staff members' conduct against S.M. demonstrates willful and intentional retaliation and therefore a claim for damages under Section 504 of the Rehabilitation Act is appropriate.

103. The actions and inactions of Defendants and other Saddle Rock employees against S.M. demonstrated deliberate indifference, gross negligence, and recklessness, and therefore a claim for punitive damages against the Individual Defendants under § 504 of the Rehabilitation Act of the 1973 is appropriate.

## FOURTH CLAIM FOR RELIEF
### (Defendants Violated the ADA by Retaliating Against Plaintiff-parents)

104. Plaintiffs repeat and incorporate each and every allegation set forth in the preceding paragraphs.

105.     Plaintiffs Craig Moskowitz and Barbara Moskowitz, in communicating their concerns about Defendants' failures to prevent bullying and harassment of their son, were engaging in protected activity under the ADA.

106.     A causal connection exists between Plaintiff-parents communicating their concerns and Defendants banning Plaintiff-parents from school grounds. Defendants' ban on Plaintiff-parents' presence occurred only after Defendants discussed multiple reports of bullying and Plaintiff-parents s complained about the harassment and bullying of S.M. by his schoolmates.

107.     Defendants' order to prevent Plaintiffs from school grounds was an adverse action because Plaintiff-parents' presence was one of the necessary means for Plaintiff-parents could express and discuss their grievances regarding their son's treatment.

108.     Defendants and the aforementioned staff members' conduct against S.M. demonstrates willful and intentional retaliation and therefore a claim for damages under the ADA is appropriate.

109.     Therefore, Defendants retaliated against Plaintiffs for engaging in protected activity in violation of the ADA.

110.     The actions and inactions of Defendants and other Saddle Rock employees against S.M. demonstrated deliberate indifference, gross negligence, and recklessness, and therefore a claim for punitive damages against the Individual Defendants under the ADA

### FIFTH CLAIM FOR RELIEF
**(Defendants Created a Hostile Learning Environment Under § 504)**

111.     Plaintiffs repeat and incorporate each and every allegation set forth in the preceding paragraphs.

112.    As a student with actual and/or perceived disabilities, S.M. is a member of a protected group.

113.    S.M. has been subjected to unwelcome harassment, bullying, and discrimination based on a protected characteristic, namely, his disabilities.

114.    As set forth above, S.M. was subjected to repeated bullying and harassment, including, but not limited to, timeout sessions, unreasonable removal from the classroom, and unlawful and excessive physical restraint.

115.    In addition, Defendants failed to intervene during multiple incidents of harassment and bullying of S.M. by his schoolmates, thereby allowing such incidents to reoccur.

116.    Defendants further discriminated against S.M. by failing to provide him with FAPE.

117.    In light of S.M.'s age and the frequency with which he was harassed and bullied Defendants discrimination against S.M. was sufficiently severe and pervasive such that it altered the conditions of S.M.'s education and created an abusive educational environment.

118.    There is a basis to hold Defendants liable because the harassing, bullying, discriminatory conduct at issue here is indicative of their failures to remedy the abusive environment.

## SIXTH CLAIM FOR RELIEF
### (Defendants Violated 42 U.S.C. § 1983)

119.    Plaintiffs repeat and incorporate each and every allegation set forth in the preceding paragraphs.

120.    S.M. suffers from learning disabilities including ADHD, DMDD, and Unspecified Anxiety.

121.    S.M.'s disabilities have more than impacted at least one of his major life activities, especially his educational learning.

122.     Defendants and other staff members of Saddle Rock repeatedly not only observed S.M. experience severe bullying and harassment while at school as he faced physical attacks and threats to his personal safety, but also failed to take action even after Plaintiffs complained of such incidents. Moreover, Saddle Rock's staff members even blamed S.M. for his horrible treatment.

123.     In failing to prevent such harassment and bullying, which continued for over eighteen months, Defendants and other staff members of Saddle Rock intentionally permitted such harassment and created a hostile learning environment for S.M.

124.     Defendants and other staff members of Saddle Rock also eliminated S.M.'s personal freedom when unlawfully restraining him in a manner that violated established procedures and protocols for de-escalation and crisis management.

125.     Before the use of the unlawful restraint by Defendants, S.M.'s disability symptoms were unreasonably exacerbated causing his emotional and behavioral dysregulation, which he has exhibited in the past. His behavior, however, never warranted such egregious and unlawful action nor was it threating or harmful to himself, other schoolmates, Defendants, or staff of Saddle Rock.

126.     Defendants and their staff members knew that S.M. was subjected to multiple incidents of harassment and bullying, yet engaged in unlawful and unreasonable restraint, and further failed to take any action to prevent the irreparable harm that S.M. has suffered.

127.     On account of these actions, Defendants and other staff members of Saddle Rock knowingly deprived S.M. of a proper education, safe educational environment, ability to move freely, and freedom from harassment and bullying.

128.     Defendants and other staff members of Saddle Rock committed the above actions while in their professional capacities. Defendants include Saddle Rock a public school that is funded by and functions according to state and federal regulations and laws.

129.     Defendants and other staff members of Saddle Rock committed the above actions while in their individual capacities. Defendants include Saddle Rock a public school that is funded by and functions according to state and federal regulations and laws.

## SEVENTH CLAIM FOR RELIEF
### (Defendants Violated Fourth Amendment rights)

130.     Plaintiffs repeat and incorporate each and every allegation set forth in the preceding paragraphs.

131.     On April 1, 2019, Defendants unlawfully, unreasonably, and egregiously seized and fully restrained S.M. despite his desperate cries for help and release.

132.     Any other child, even an adult, in the same situation would have been unable to move freely since the incident involved direct physical force where four adults used their strength and weight to hold the limbs of a ten-year-old boy spread-eagle for at least ten minutes, thereby preventing him from moving whatsoever.

133.     The events leading up to this unlawful restraint in no way merited such forceful physical restraint. Defendants, along with other staff members of Saddle Rock, were fully aware of the numerous physical attacks and harmful incidents of harassment and bullying that S.M. experienced, and that his disabilities, which on April 1, 2019 caused him to become dysregulated as he had on other occasions.

134.     Before the physical restraint, S.M. was exhibiting typical symptoms of a child with learning disabilities, symptoms that Defendants and other personnel at Saddle Rock had witnessed on other occasions.

135. S.M. had never been restrained in such a manner before because Defendants knew or should have known that S.M.'s dysregulation were neither harmful nor threatening to his own safety or the safety or welfare of his schoolmates, or to Defendants or other personnel, but rather mere minor disruptions of the class, and indicative of his disabilities.

136. The unlawful and unreasonable restraint used on S.M. did not comply with standard protocols and procedures for handling a dysregulated child and/or a child in crisis mode, which Defendants knew or should have known, and should have employed, rather than use unlawful restraints.

137. Defendants were or should have been required to take such training on lawful restraints.

138. Furthermore, Defendants are also liable for such actions since Defendants and other staff members of Saddle Rock, including its Principal and Assistant Principal both of whom spoke with Plaintiff-parents to discuss the many incidents of bullying and harassment that S.M. faced, blamed S.M. for the harassment and bullying he was receiving.

139. During one conversation with Plaintiff-parents, the Assistant Principal of Saddle Rock at the time merely said that adults were always supervising the children, and that they would be sure to keep an eye out for S.M., but still failed to do so as S.M. continued to be harassed and bullied.

140. Therefore, Defendants are liable due to their violation of S.M's Fourth Amendment Rights not to be unlawfully restrained.

## EIGHTH CLAIM FOR RELIEF
### (Violation of the Equal Protection Clause)

141. Plaintiffs repeat and incorporate each and every allegation set forth in the preceding paragraphs.

142.     On multiple occasions, Defendants selectively treated S.M. differently than his schoolmates as he was one of the only students given timeout sessions, removed from the classroom, and subjected to egregious restraint.

143.     Additionally, S.M. was the only student restrained by physical means, means that substantially differed from the mandated procedures, whereas other students, equally disruptive in yelling, screaming, physically throwing objects at and/or physically pushing other children at school, were never treated with such force.

144.     S.M. as a child with learning disabilities, was targeted by Defendants and other staff with more severe discipline than his schoolmates and caused severe emotional and physical injuries due to an unlawful and unreasonable restraint and failed to create and maintain a safe and hostility-free learning environment due to Defendants' inability to properly care for S.M. and provide him with the necessary educational learning he required.

145.     Defendants and other staff intentionally discriminated against S.M. based on the incidents as alleged above as they were fully aware that they were failing to fully support the education and social needs of S.M. because of his disabilities.

146.     Therefore, Defendants are liable for violations of S.M's Equal Protection Rights provided by the Fourteenth Amendment.

## NINTH CLAIM FOR RELIEF
### (Defendants Violated S.M.'s and Plaintiff-Parents' Due Process Rights)

147.     Plaintiffs repeat and incorporate each and every allegation set forth in the preceding paragraphs.

148.     On April 1, 2019, Defendants unlawfully deprived S.M. of his right to free bodily movement after his crisis episode.

149.     Defendants restrained S.M. in an effort not only to discipline S.M., but also to retaliate against him for eloping and to further discriminate against him because of his disabilities.

150.     Before the April 1, 2019 incident, Defendants and other staff members of the School District handled S.M.'s symptoms of his disabilities by other than egregious means, either by removing him from the classroom and/or having him sit quietly by himself away from the other children as he never presented any danger or threat to himself, his schoolmates, or Defendants or other staff of Saddle Rock, which were successful.

151.     According to established protocols and procedures, educators are not permitted to restrain children in the way that the Defendants restrained S.M. as such restraint can cause extreme physical and emotional harm. In fact, S.M. suffered extreme physical and emotional harm as evidenced by the necessity to send him to South Oaks Hospital, which noted that S.M. had experienced trauma.

152.     Furthermore, Defendants used a severe form of corporal punishment with excessive force as there were four adults to one ten-year-old boy, who never needed restraint before, and the established procedures dictate that only one educator, if a situation requires restraint, should restrain the child in question with a hug from behind, not four adults holding a young child spread eagle. Thus, in order to restore discipline and order, Defendants should have used the established practices and protocols, but instead used excessive force and unlawfully and egregiously restrained S.M.

153.     Due to the Defendants' conduct, S.M. suffered tremendous amounts of both physical and emotional suffering as he continued to be held spread eagle position screaming and sobbing uncontrollably until his father picked him up from school, was hospitalized for ten days,

and prescribed additional medicine for his learning and behavioral disabilities and observed to be traumatized by the incident and continual bullying at school.

154. Plaintiff-parents were denied a reasonable or justifiable explanation for the egregious restraint used, or an explanation of the events leading up to the unlawful restraint.

155. Plaintiff-parents were also denied a hearing on the reasons and rationale for S.M.'s suspension.

156. Accordingly, Defendants deprived Plaintiffs of due process for which they are individually and jointly liable.

**TENTH CLAIM FOR RELIEF**

**(Defendants Violated S.M.'s Equal Protection Rights)**

157. Plaintiffs repeat and incorporate each and every allegation set forth in the preceding paragraphs.

158. S.M. is a member of a vulnerable class as he has behavioral and learning disabilities, including ADHD, anxiety, and DMDD.

159. Defendants subjected S.M. to disparate treatment on account of his disabilities as they failed to intervene when they were made aware of the many incidents of bullying and harassment he faced based on his disabilities, to provide the services required by his FAPE and IEP that would have allowed him to achieve the same education his classmates received, and to create a safe and welcoming learning environment by subjecting him to severe and continual discipline along with unlawful, physical restraint.

160. Defendants discriminated against S.M. on account of his disabilities as they later admitted that Saddle Rock could not meet his educational needs.

161. Defendants' disparate treatment stemmed from a lack of concern for the safety and welfare for S.M. as evidenced by the fact that despite Plaintiffs' numerous reports to staff

members of Saddle Rock, including the then Assistant Principal, the staff blamed S.M. for the

bullying and harassment he was receiving and promised to keep an eye out for him. However, as

demonstrated by the event of April 1, 2019, not only did Defendants fail to observe and monitor

S.M., but also punished him for the actions of others in an egregious manner: unlawful restraint.

### ELEVENTH CLAIM FOR RELIEF

**(Defendants Subjected S.M. to False Imprisonment)**

162.    Plaintiffs repeat and incorporate each and every allegation set forth in the

preceding paragraphs.

163.    Defendants intentionally confined and restrained S.M. on April 1, 2019 when they

each took one of S.M.'s limbs and held him spread eagle in the air for at least ten minutes.

164.    S.M. was not only conscious, but also vehemently rejected such restraint as he

continued to yell, scream, and fight against such unlawful and abrasive restraint from the

moment Defendants grabbed him and spread his limbs apart to the moment his father came to

pick him up from school.

165.    Such confinement and restraint were not privileged or reasonable because this

restraint was not in the interest of his educational goals, but rather further increased the physical

and emotional anguish S.M. was already suffering at the hands of the Defendants, which further

delayed and disrupted S.M.'s education.

166.    Defendants should have followed established practices and protocols for

restraining a child, including having a trained educator restrain the child in a hug from behind,

yet Defendants failed to follow this practice or protocol or any other reasonable method of

restrain, even assuming that physical restraint was necessary, which Plaintiffs deny.

## TWELFTH CLAIM FOR RELIEF

### (Defendants Intentionally Inflicted Emotional Distress upon S.M. and His Parents)

167.    Plaintiffs repeat and incorporate each and every allegation set forth in the preceding paragraphs.

168.    Despite Plaintiffs numerous discussions with Defendants and staff at Saddle Rock regarding S.M.'s suffering of continual bullying and harassment, Defendants failed to take any reasonable or effective action and even blamed S.M. for such harassment and attacks, thereby fostering a hostile learning environment.

169.    Further, Defendants failures only further delayed and disrupted S.M.'s daily educational learning.

170.    Finally, on removing S.M. from his classroom and subjecting him to unlawful and egregious restraint, Defendants caused S.M. to experience both physical and emotional trauma, a means of restraint, upon information and belief never before used on S.M or any other student for the school years of 2017-2019 until April 1, 2019.

171.    Defendants' actions as set forth above were outrageous and extreme, were taken knowing that they would cause severe emotional and physical distress to S.M. and his Plaintiff-parents, including Craig Moskowitz, who witnessed his son spread-eagle in the air crying inconsolably, and did cause each Plaintiff severe emotional distress.

## THIRTEENTH CLAIM FOR RELIEF

### (Defendants Negligently Inflicted Emotional Distress upon S.M. and His Parents)

172.    Plaintiffs repeat and incorporate each and every allegation set forth in the preceding paragraphs.

173.    Defendants and its staff allowed S.M.'s schoolmates to harass and bully him, including physically pushing him and/or throw sharp and heavy objects at him causing him to

fall to the ground, and failed to take action effective or remedial measures and instead blamed S.M. for the actions of his bullies.

174.    Furthermore, Defendants grabbed and held each of S.M.'s limbs spread eagle for at least ten minutes and knew or should have known that such restraint measures did not align with established and/or reasonable methods of restraint under the circumstances.

175.    Based on his experiences, S.M. was hospitalized at South Oaks Hospital for ten days for treatment, whereat the specialized doctors there noted the extreme physical and mental distress S.M. was suffering from, due to the incident and continual harassment and bullying.

176.    Therefore, Defendants' actions as set forth above, unreasonably endangered the physical safety of S.M., caused S.M. to fear for his safety, and their direct actions led to S.M.'s hospitalization and suspension from school, and need for increased alternative medications.

177.    Based on Defendants actions and/or inactions, Defendants knew or should have known Plaintiffs would suffer and did suffer extreme emotional distress for which they seek to hold Defendants individually and professionally liable.

## FOURTEENTH CLAIM FOR RELIEF
### (Defendants Acted Negligently While S.M. Attended Saddle Rock)

178.    Plaintiffs repeat and incorporate each and every allegation set forth in the preceding paragraphs.

179.    Defendants and staff of Saddle Rock owe S.M. along with every other student a duty of care.

180.    Defendants failed to uphold that duty with respect to Plaintiff S.M. and failed to take the minimum measures necessary to protect S.M. and provide him with the necessary services to achieve an education.

181.     Defendants knew and/or should have known of the multiple incidents of harassment and bullying of S.M. by his schoolmates; instead of taking reasonable and remedial action, Defendants blamed S.M. for the actions of his peers.

182.     Defendants confined and restrained S.M. by all limbs using excessive force of four adults for at least ten minutes despite the fact that S.M. posed no threat to himself, his schoolmates, Defendants, or staff of Saddle Rock.

183.     These actions and conduct caused Plaintiffs to suffer injuries and harm, including the need for S.M.'s hospitalization for treatment, where several doctors and staff noted the trauma S.M. had suffered and showed signs of such long lasting effects.

## FIFTEENTH CLAIM FOR RELIEF
### (Defendants Negligently Trained and Supervised Teachers and Staff)

184.     Plaintiffs repeat and incorporate each and every allegation set forth in the preceding paragraphs.

185.     As a public school district, Defendants are responsible for providing adequate training and supervision of their employees and other staff.

186.     Further, Defendants owe this duty to Plaintiffs to provide an appropriate training and supervision of their employees and other staff.

187.     By the actions and inactions described herein, Defendants breached that duty and thereby caused Plaintiffs to suffer injuries and harm, including delayed education, poor academic performance, increased educational costs and expenses, increased medication and medical expenses, and increased transportation costs.

188.     Defendants' training, to the extent it exists, is and was inadequate and failed to inform administrators, teachers, and other staff, regarding anti-bullying and anti-discrimination responsibilities and requirements for students with disabilities under state and federal law.

Defendants also negligently failed to supervise its individual Defendants, failing to ensure that reasonable accommodations were being made for students with disabilities and/or that remedial measures were being employed to address the ongoing bullying and harassment that S.M. was experiencing at Saddle Rock.

189.    As a result of these failures, a substantial risk was created that employees, including Individual Defendants would refuse or be unaware of their respective responsibilities to accommodate known or suspected disabilities of students and/or remedy harassment or bullying if students, including S.M. required such accommodations or modifications to the their educational environment.

190.    Plaintiffs filed a notice of claim with Defendant the Great Neck Union Free School District, and await a hearing required under 50H to be held, which have been repeatedly delayed, and the date of which has been postponed again due to COVID-19.

## SIXTEENTH CLAIM FOR RELIEF
### (Defendants Negligently Performed a Governmental Function)

191.    Plaintiffs repeat and incorporate each and every allegation set forth in the preceding paragraphs.

192.    Defendants and their staff owed a duty to S.M. as they do to all children in their care, to protect him from bullying, harassment, and other physical and emotional damage.

193.    Defendants, however, failed in upholding this duty as they overlooked and ignored and/or failed to remediate multiple incidents and reports of emotional and physical harassment and bullying by schoolmates and other forms of bullying and harassment against S.M.

194.    Moreover, Defendants and other staff failed to provide necessary training or supervision to staff members of Saddle Rock, and likely to other schools within the District,

regarding caring and protecting students, including S.M. from schoolmates and/or regarding proper techniques and protocols and procedures for restraining a child if and as necessary.

195. Due to a lack of adequate and proper training, and/or failure to adequately or properly supervise staff, Individual Defendants restrained S.M. by all four limbs spread eagle for at least ten minutes contrary to reasonable and/or established and lawful procedures.

196. Because Defendants' failed to perform a quintessential government function, providing a safe and productive educational setting, S.M. suffered emotional and physical harm, and is continuing to suffer from the incredible physical and emotional trauma he experienced.

## SEVENTEENTH CLAIM FOR RELIEF
### (Defendants Committed Battery and Assault against S.M.)

197. Plaintiffs repeat and incorporate each and every allegation set forth in the preceding paragraphs.

198. On April 1, 2019 when Defendant Slackman forcibly removed S.M. from the classroom and prior to Individual Defendants egregiously restraining him, S.M. felt threatened and feared that these four adults were about to physically harm him.

199. Defendants unreasonably and unlawfully restrained S.M. for longer than five minutes, and as a result assaulted and battered S.M. by physically holding him spread eagle, which caused severe physical and emotional injury, and which South Oaks Hospital diagnosed that S.M. suffered a resulting trauma.

200. This use of restraint and amount of force was unreasonable and unjustified as S.M. had never required such disciplinary action before and on April 1, 2019, was not threatening nor endangering the health or safety of himself, his schoolmates, Defendants, or other staff at Saddle Rock; rather, S.M. was merely experiencing symptoms typical of his disabilities.

201. A jury trial is demanded on all claims as permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

202.     Enter judgment against each Defendant, in their individual and professional capacities, as applicable, for violating § 504 of the Rehabilitation Act of 1973 by discriminating against S.M. on the basis of his disability.

203.     Enter judgment against each Defendant, in their individual and professional capacities, as applicable, for retaliating against S.M. and his Plaintiff-parents on the basis of S.M.'s disabilities in violation of § 504 of the Rehabilitation Act of 1973.

204.     Enter judgment against each Defendant, in their individual and professional capacities, as applicable, for violating the ADA for retaliating against S.M. on the basis of his disabilities.

205.     Enter judgment against each Defendant, in their individual and professional capacities, as applicable, for retaliating against Plaintiff-parents based on Plaintiffs having engaged in a protected activity.

206.     Enter judgment against each Defendant, in their individual and professional capacities, as applicable, for violating § 504 of the Rehabilitation Act of 1973 by creating a hostile learning environment.

207.     Enter judgment against each Defendant for violating 42 U.S.C. § 1983 by discriminating against S.M. on the basis of his disability under Section 504, the ADA, the Fourth Amendment, the Equal Protection Clause, the Due Process Clause, and for creating a hostile educational environment in violation of federal statutes and Plaintiffs' constitutional rights.

208.	Enter judgment against each Defendant in their individual and professional capacities, as applicable, for violating Fourth Amendment due to unreasonable and unlawful restraint.

209.	Enter judgment against each Defendant, in their individual and professional capacities, as applicable, for wrongfully seizing and falsely imprisoning S.M.

210.	Enter judgment against each Defendant, in their individual and professional capacities, as applicable, for intentional infliction of emotional distress

211.	Enter judgment against each Defendant, in their individual and professional capacities, as applicable, for negligent infliction of emotional distress

212.	Enter judgment against each Defendant, in their individual and professional capacities, as applicable, for negligence.

213.	Enter judgment against each Defendant in their individual and professional capacities, as applicable, for negligent supervision and training of the Individual Defendants

214.	Enter judgment against each Defendant in their individual and professional capacities, as applicable, for negligently performing a government function.

215.	Enter judgment against each Defendant in their individual and professional capacities, as applicable, for battery and assault of S.M.

216.	Award compensatory damages to Plaintiffs for their emotional and pecuniary losses.

217.	Impose punitive damages against each Individual Defendant in his/her individual capacity as permissible by law.

218.	Award all Plaintiffs their attorneys' fees, costs and expenses.

219.	Award such other and further relief as this court deems appropriate.

Dated: April 1, 2020
      New York, New York

 

ADVOCATES FOR JUSTICE,
CHARTERED ATTORNEYS

By: /s/ Laura D. Barbieri
    Laura D. Barbieri
    Arthur Z. Schwartz
225 Broadway, Suite 1902
New York, New York 10007
(212) 285-1400
lbarbieri@advocatesny.com

*Counsel for Plaintiffs*