**advocates
for justice
chartered attorneys**

Laura Dawn Barbieri
Of Counsel

lbarbieri@advocatesny.com

225 Broadway, Suite 1902
New York, New York 10007

t. (212) 285-1400
f. (212) 285-1410

www.afjlaw.com

July 30, 2020

**Via ECF**
Hon. Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

        Re: *Moskowitz, et al. v. Great Neck UFSD, et al.*
           Case No.: 20-CV-1659 (KAM) (SIL)

Dear Judge Matsumoto:

     We represent the Plaintiffs in the above-captioned action and write in response to Defendants' pre-motion request for a conference prior to filing their Motion to Dismiss. Although we understand whether to grant such a request is completely within the discretion of the Court, and accordingly, have no objection to such conference, we nonetheless take issue with the legal and factual basis for such a motion as represented by Defendants' Letter to the Court. Accordingly, we provide the basis for our opposition here.

**I.    PLAINTIFF'S STATE CLAIMS ARE EXCEPTIONS TO TRADITIONAL NOTICE OF CLAIM**

    (a) *NYHRL Claims Are Not Subject to Notice of Claim*
    Under Point I, Defendants erroneously argue that a formal notice of claim must be served upon the District within 90 days of the April 1, 2019 incident. However, NYHRL claims need not adhere to this formal notice of claim requirement. Rather, it is sufficient that the District be notified of the claims being sought. *See Bertuzzi v. Copiague Union Free Sch. Dist.*, 2020 U.S. Dist. LEXIS 43351 *1, *57-8 (E.D.N.Y. Mar. 2020) (explaining that § 3813(2) does not apply to non-tort actions; therefore, HRL claims need only adhere to the less formal notice of claim under § 3813(1)); *Berrie v. Bd. of Educ.*, 2017 U.S. Dist. LEXIS 83623 (S.D.N.Y. 2017), *aff'd*, 750 Fed. App'x 41 (2d Cir. 2018). Plaintiffs notifications to the District met these requirements.

    (b) *Continuing Violation Doctrine Applies to Negligent Supervision Claim*
    The continuing violation doctrine requires that Plaintiff allege at least one act in furtherance of a discriminatory policy. *Richard v. N.Y. City Dep't of Educ.*, 2017 U.S. Dist. LEXIS 50748, *1, *17-8 (E.D.N.Y. 2017) (citing *Patterson v. County of Oneida*, 375 F.3d 206,

220 (2d Cir. 2004). The continued inadequate training of administrators, teachers, and other staff regarding state and federal anti-bullying and anti-discrimination requirements and responsibilities constitutes this continued violation.

      (c) *Late Notice of Claim is Excusable When Vindicating Public Interest*

Plaintiffs suit seeks vindication of a public interest for an equal and appropriate public education for disabled children. While seeking monetary damages can result in a notice of claim requirement; where a public interest is served, courts have granted this exception. *See Scaggs v. New York State Dep't of Educ.*, 2007 U.S. Dist. LEXIS 35860, *1, *70 (E.D.N.Y. 2007) ("While the claims alleged in the instant case seek to vindicate the right to... [an] appropriate public education for disabled children..., the Court finds that the relief sought would directly affect the rights of a similarly situated class of the public").

## II.    Plaintiff's Satisfies Prerequisites for constitutional due process claims

Here, Plaintiffs' have alleged systematic and continuing violations of S.M.'s rights over two school years—including continual harassment and bullying and a complete failure by Defendants to respond appropriately to such or respond appropriately to his educational needs—culminating in the egregious incident on April 1, 2019. (Compl. ¶¶ 34-47, 72-80) Moreover, rather than alleging only such violations on behalf of the minor child, Plaintiff-parents specifically allege specific violations of their own liberty rights, in addition to all the violations of their child's rights, by state officials barring them from entering the school grounds. (Compl. ¶ 46). Thus, Defendant's reference to *Patrick v. Success Academy*, for the proposition that a violation of a one's child's rights fails to give rise to a § 1983 cause of action is inapposite in this case, where Plaintiff-parents' own rights have been violated. (Def. Let. at 2) See also, *Nestle Waters North Am., Inc. v. City of New York*, No. 15-CV-5189, 2016 WL 3080722, at *7 (S.D.N.Y. May 25, 2016) ("[W]here the deprivation is systemic, litigants have a well-established right to pursue their claims in federal court without resorting to state judicial remedies.").

Defendants mischaracterize the incident as "holding down the 5th grade plaintiff by his limbs after he left class." (Def. Let. at 2) By contrast, Plaintiffs allege that S.M., a ten-year-old child, was restrained by four adults, *spread-eagled in the air*, for over ten minutes in which Plaintiff-child sobbed uncontrollably until Plaintiff-parent arrived at the school. (Compl. ¶ 48). We agree with Defendants that such conduct cannot and should not be "equated to a slap in the face" purely because it is demonstrably and obviously significantly more egregious than a slap to the face, insofar as it was excessive, unnecessary, and result in substantial harm to Plaintiff-child requiring subsequent hospitalization and treatment. (Def. Letter at 2, Compl. ¶¶ 53-58) Nor is such disciplinary conduct comparable to a punch in the face delivered *during an attempt to break up a fight between high school aged children*, as in *J.E. ex rel. Edwards v. Ctr. Moriches Union Free Sch. Dist.*, 898 F. Supp. 2d 516 (E.D.N.Y. 2012). The forcible restraint and extended, spread-eagle suspension in the air of an already harassed and traumatized ten-year-old boy by four adults aware of his particular needs and history of posing danger neither to himself nor others is a clear violation of substantive due process rights to be free from excessive force. *See Johnson*, 239 F.3d at 252 ("First, the force [defendant] used far surpassed anything that could reasonably be characterized as serving legitimate government ends, such as student discipline, classroom control or self-defense. Second, the alleged assault was extremely violent.

[Defendant's] conduct was of a kind likely to cause substantial physical injury or emotional suffering and a need for medical treatment. It is alleged that [plaintiff] suffered head trauma, lacerations, and bruising, that his injuries required hospital treatment, and that various emotional injuries were inflicted. Accordingly, we easily find the alleged assault to be conscience-shocking in violation of [plaintiff's] substantive due process right to be free of excessive force.)

### III. IDEA EXHAUSTION REQUIREMENTS ARE NOT APPLICABLE

"The exhaustion requirement applies [only] to suits that "seek relief for the denial of a FAPE," regardless of whether the suit was brought under the IDEA or "similar laws," including the ADA, the Rehabilitation Act, and 42 U.S.C. § 1983. *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 752 (2017); see 20 U.S.C. § 1415(*l*). "The only "relief" the IDEA makes "available" is relief for the denial of a FAPE." *Id.* at 755. In *Fry*, the Supreme Court made clear that the laws cited in the complaint are inferior to the substance of the claim in determining whether the exhaustion requirement applies. *Id.* The New York process as outlined by Defendant fails to include that this "impartial due process hearing" is primarily for review of IEPs. *Cave v. E. Meadow Union Free Sch. Dist.,* 514 F.3d 240, 245 (2d Cir. 2008). S.M. had an IEP which mandated certain educational needs which, although could have been followed and exhausted through the IDEA requirements, are not the heart of this complaint. (Compl. ¶33.) In this case, more than half of the prayers for relief are not ADA related but have to do with the key incidents which motivated this complaint, specifically bullying and physical and emotional harassment including an unlawful restraint on April 1, 2019. (Compl. ¶ 47-52.) Consequently, this complaint is not subject to the IDEA exhaustion requirements.

### IV. PLAINTIFF ADEQUATELY ALLEGE DISCRIMINATION UNDER THE ADA AND SECTION 504 OF THE REHABILITATION ACT

Defendants claim that the complaint lacks any allegation that the bullying and harassment directed at S.M. were based on S.M.'s alleged disability. Conversely, the complaint clearly asserts that S.M. was subject to teasing, name calling, mimicking, threats and physical abuse "due to his disabilities and manifestations of his disabilities." (Compl. ¶ 39). Further, the complaint in its description of Defendants' conduct clearly establishes "deliberate indifference" to S.M.'s rights. *Garcia v. State Univ. of N.Y. Health Scis. Ctr.*, 280 F.3d 98 (2d. Cir 2001). (Compl. ¶¶ 40, 41, 43, 44, 45, 71).

### V. PLAINTIFFS ADEQUATELY ALLEGE RETALIATION

Advocacy on behalf of disabled students satisfies the element of protected activity for the purposes of Section 504. *See Stahura–Uhl v. Iroquois Cent. Sch. Dist.*, 836 F.Supp.2d 132, 143 (W.D.N.Y.2011) (denying motion to dismiss on retaliation claim because teacher (plaintiff) sufficiently alleged that she engaged in protected activity by advocating on behalf of her disabled students). (Compl. ¶¶ 11, 99, 105.) Due to the repeated and ongoing nature of the bullying suffered by Plaintiff S.M. over his two school years at Saddle Rock, his parents' advocacy including repeated conversations and in-person meetings with Defendants suffices. (Compl. ¶¶ 45-46.) Further, Defendants' actions banning Plaintiff parents from the school grounds because

of these conversations and meetings is adverse action preventing them from advocating on behalf of their son.

## VI. PLAINTIFFS ADEQUATELY STATE A VIABLE EQUAL PROTECTION CLAIM

The complaint alleges (1) S.M. was segregated "from the other students in the class when he experienced emotional and behavioral dysregulation." (Compl. ¶ 86.b). (2) S.M. was denied the right to participate in the education program to the same extent as other nondisabled students." (Compl. ¶ 86.c). (3) S.M. was denied "the right to participate fully in Saddle Rock's education and extracurricular programs." (Compl. ¶ 86.f). Any one of these claims is sufficient to affirmatively allege differing treatment to similarly situated individuals. *See Lopez v. Bay Shore Union Free School Dist.*, 668 F. Supp. 2d 406, 418 (E.D.N.Y. 2009) (court held that suspension of a Hispanic student for "single, potentially innocuous statement concerning 'MS'" was sufficient to establish differing treatment).

## VII. PLAINTIFFS ADEQUATELY STATE A CLAIM FOR MUNICIPAL LIABILITY OR INDIVIDUAL LIABILITY UNDER 42 U.S.C. SECTION 1983

In *Amnesty America v. Town of West Hartford,* 361 F.3d 113, 125 (2d Cir.2004), "demonstrating that the municipality itself caused or is implicated in the constitutional violation is the touchstone of establishing that a municipality can be held liable for unconstitutional actions taken by municipal employees." Defendants acting in their professional and individual capacities, violated 42 U.S.C Section 1983 when they, failed to prevent the harassment and bullying that S.M. endured for over eighteen months on the school grounds and allowed engaged in an unlawful restraint. (Compl. ¶ 123.) By failing to take action, Defendants intentionally condoned such harassment and created a hostile learning environment for S.M. (Compl. ¶ 123.)

In *Zeno v. Pine Plains Cent. Sch. Dist.,* 702 F.3d 655, 668 (2d Cir.2012) "because school officials are charged with prescribing and controlling conduct in the schools, the District had disciplinary oversight over the harassers. Hence, the District had substantial control over the harassment." Further, according to the Second Circuit, "[r]esponses that are not reasonably calculated to end harassment are inadequate." *Zeno,* 702 F.3d at 669. However, "the school's action—or inaction—must, at a minimum, cause students to undergo harassment or make them liable to or vulnerable to it."

Defendants knew that S.M. suffers from learning disabilities including ADHD, DMDD, and Unspecified Anxiety. (Compl. ¶ 83.) Defendants repeatedly not only observed S.M. experience severe bullying and harassment while at school as he faced physical attacks and threats to his personal safety, but also failed to act even after Plaintiffs complained of such incidents. Moreover, Saddle Rock's staff members irresponsibly blamed S.M. for his horrible treatment. (Compl. ¶ 122.)

Defendants violated S.M.'s Fourth Amendment rights when they unlawfully, unreasonably, and egregiously seized and fully restrained S.M. despite his desperate cries for help and release. (Compl. ¶¶ 131, 132.) Moreover, the court in *Hassan v. Lubbock Indep. School Dist.,* 55 F.3d 1075, 1079 (5th Cir.1995) held that the "reasonableness of seizures must be determined in light of all of the circumstances, with particular attention being paid to whether the

seizure was justified at its inception and reasonable in scope." The incident involved direct physical force where four adults used their strength and weight to hold the limbs of a ten-year-old boy spread-eagle for at least ten minutes, thereby preventing him from moving whatsoever. (Compl ¶ 132.) Taking into consideration all of the circumstances this use of forces was unreasonable. The events leading up to this unlawful restraint in no way merited such forceful physical restraint. Before the physical restraint, S.M. was exhibiting typical symptoms of a child with learning disabilities, symptoms that Defendants and other personnel at Saddle Rock had witnessed on other occasions. (Compl. ¶134.) The unlawful and unreasonable restraint used on S.M. did not comply with standard protocols and procedures for handling a dysregulated child and/or a child in crisis mode, which Defendants knew or should have known, and should have employed, rather than use unlawful restraints. (Compl. ¶136.)

      Lastly, each of the six (6) individual Defendants against whom general claims are asserted are not entitled to qualified immunity. Reliance on *Saucier v. Katz*, 533 U.S. 194, 201 (2001) is misplaced. Here all of the six defendants engaged in conduct that a reasonable person would have known violated S.M.'s constitutional rights. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

      Respectfully yours,

      Advocates for Justice, Chartered Attorneys

      /s/_____

      Laura D. Barbieri

cc: All counsel via ECF