UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
CRAIG MOSKOWITZ and BARBARA MOSKOWITZ,
each on their own behalf, and as parents on behalf of their
minor child, S.M.,

                                        Plaintiffs,


                        -against-                                    Case No. 20-CV-1659 (KAM) (SIL)

GREAT NECK UNION FREE SCHOOL DISTRICT,
THE BOARD OF EDUCATION OF THE GREAT
NECK UNION FREE SCHOOL DISTRICT, DANA
SLACKMAN, DR. GABRIELLA DUKE, KATE
MUGNO, ROBIN TRICHON, DR. ANTHONY
IACOVELLI, LUCIANA BRADELY, and SARA
GOLDBERG, each Individually and in their respective
official capacities,

                                        Defendants.
-----------------------------------------------------------------X


---


**PLAINTIFFS' MEMORANDUM OF LAW IN
OPPOSITION TO MOTION TO DISMISS**

---


                                        **ADVOCATES FOR JUSTICE,
                                        CHARTERED ATTORNEYS**
                                        225 Broadway, Suite 1902
                                        New York, NY 10007


                                        **Attorneys for Plaintiffs**


Of Counsel
 Laura D. Barbieri, Special Counsel
 lbarbieri@advocatesny.com
(212) 285-1400, ext. 712
(914) 819-3387 cell

# TABLE OF CONTENTS

**PAGE**

Table of Authorities ............................................................................................................ iii

Preliminary Statement ........................................................................................................ 1

    A. Defendants' submissions contain false and misleading assertions ...................................... 1
    B. Defendants ignore the pervasive nature of the wrongful treatment of S.M.
        and his parents ............................................................................................................ 1

Statement of Facts ............................................................................................................ 3

    A. Harassment and bullying of S.M. ............................................................................ 4
    B. April 1, 2019 Assault .............................................................................................. 5

Standards of Review ........................................................................................................ 6

    A. Plaintiffs' Complaint satisfies the Rule 12(b)(6) standard of review ................................ 6
    B. The Court should decline to consider documents extrinsic to the Complaint .................... 7
    C. The Court should decline to convert the motion to dismiss to a Rule 56 motion ............. 12

Argument ........................................................................................................................ 13

I.       Exhaustion of Plaintiffs' ADA/504 claims was not required ............................................ 13

    A. Not all "education-centric" discrimination claims are subject to exhaustion .................. 14
    B. Plaintiffs' ADA/504 claims were not subject to exhaustion even if Plaintiffs could have
        brought corresponding IDEA claims ............................................................................ 16
    C. Plaintiffs pass the *Fry*-hypothetic exhaustion test .......................................................... 17
    D. Plaintiffs did not have to exhaust because the harm was systemic ................................ 17
    E. Plaintiffs did not have to exhaust because the administrative process offers no relief
        against individual defendants ...................................................................................... 18

II.      Plaintiffs' complaint alleges sufficient factual matter to plausibly state ADA/504 claims
        against Defendants ...................................................................................................... 18

    A. Plaintiffs properly pleaded bad faith and gross misjudgment .......................................... 19

III.    Plaintiffs sufficiently pleaded retaliation under the ADA/504 .......................................... 27

IV.    Plaintiffs sufficiently pleaded a hostile learning environment claim .................................. 28

V.     Plaintiffs sufficiently pleaded their constitutional claims .................................................. 30

VI.    Defendants cannot substantiate the dismissal of Plaintiffs' Fourth Amendment claim
        based on a theory that their conduct was justified .......................................................... 32

VII.     Plaintiffs sufficiently pleaded their procedural and substantive Due Process claims........33

    A.  A Procedural Due Process claim was sufficiently pleaded................................................33
    B.  A Substantive Due Process claim was sufficiently pleaded ............................................35

VIII.    Plaintiffs sufficiently pleaded an Equal Protection claim..................................................37

IX.      Municipal liability is plausibly established.......................................................................37

X.       The individual Defendants are not entitled to qualified immunity ...................................40

XI.      Plaintiffs' state law claims are sufficiently pleaded ........................................................41

    A.  False imprisonment is sufficiently pleaded...................................................................41
    B.  The IIED claim is sufficiently pleaded .........................................................................41
    C.  The NIED claim is sufficiently pleaded........................................................................42
    D.  Negligent supervision and training is sufficiently pleaded...........................................42
    E.  Assault and battery is sufficiently pleaded ...................................................................43
    F.  Punitive damages against individual defendants are warranted .....................................44
    G.  Individual defendants, including Defendant Slackman, are government actors...............44
    H.  Individual liability is sufficiently pleaded ....................................................................45

XII.     Plaintiffs' request to amend the complaint should be granted ..........................................45

Conclusion ....................................................................................................................................46

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Amnesty America v. Town of W. Hartford,*
361 F.3d 113 (2d Cir. 2004) .................................................................................... 37, 38

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).................................................................................................... 6, 7

*B.C. v. Mount Vernon Sch. Dist.,*
837 F.3d 152 (2d Cir. 2016).......................................................................................... 19

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)........................................................................................................ 7

*Brass v. American Film Techs., Inc.,*
987 F.2d 142 (2d Cir. 1993)............................................................................................. 9

*Bush v. Bruns Nordeman & Co,*
No. 72 Civ. 484, 1972 WL 360 (S.D.N.Y. Nov. 8, 1972) ................................................ 7

*C.L. v. Scarsdale Union Free Sch. Dist.,*
744 F.3d 826 (2d Cir. 2014)........................................................................................... 20

*Carlos v. Santos,*
123 F.3d 61 (2d Cir. 1997)........................................................................................30-31

*Chambers v. Time Warner, Inc.,*
282 F.3d 147 (2d Cir. 2002) ....................................................................................... 8, 9

*Canton v. Harris,*
489 U.S. 378 (1989)...................................................................................................... 39

*Corley v. Vance,*
No. 15 Civ. 1800, 2015 WL 4164377 (S.D.N.Y. Jun. 22, 2015).................................... 42

*Cortec Indus. Inc. v. Sum Holding L.P.,*
949 F.2d 42 (2d Cir. 1991)............................................................................................... 8

*Dressler v. N.Y.C. Dep't of Educ.*
No. 10 CV-3769, 2012 WL 1038600 (S.D.N.Y. Mar. 29, 2012).................................... 38

*EC ex rel. RC v. County of Suffolk,*
882 F.Supp.2d 323 (E.D.N.Y. 2012) ............................................................................. 30

*D.C. ex rel. E.B. v. New York City Dept. of Ed.,*
950 F.Supp.2d 494 (S.D.N.Y. 2013).......................................................................... 19, 20

*Elbit Sys., Ltd. v. Credit Suisse Grp.,*

917 F.Supp.2d 217 (S.D.N.Y. 2013) ............................................................ 7

*Faulkner v. Beer,*
    463 F.3d 130 (2d Cir. 2006) ...................................................... 10, 11, 12

*Foman v. Davis,*
371 U.S. 178 (1962) ................................................................................. 18, 45

*Fry v. Napoleon Cmty. Schs.,*
137 S.Ct. 743 (2017) ................................................................. 13, 14, 16, 17

*Gant v. Wallingford Bd. of Educ.,*
69 F.3d 669 (2d Cir. 1995) ...................................................................... 6, 37

*Garcia v. S.U.N.Y. Health Scis. Ctr. of Bklyn,*
    280 F.3d 98 (2d Cir. 2001) ............................................................ 18 n.4, 22

*Gomez v. Toledo,*
446 U.S. 635 (1980) ....................................................................................... 30

*Harris-Thomson v. Riverhead Charter Sch. Bd. of Trs.,*
    No. CV 14-5340, 2016 WL 11272084 (E.D.N.Y. Feb. 23, 2016) ................. 10

*Henrietta D. v. Bloomberg,*
    331 F.3d 261 (2d Cir. 2003) ........................................................................ 19

*Int'l Audiotext Network, Inc. v. AT&T Co.,*
    62 F.3d 72 (2d Cir. 2012) ............................................................................. 7

*Koppel v. 4987 Corp.,*
    167 F.3d 125 (2d Cir. 1999) .................................................................... 8, 10

*Krupski v. Costa Crociere S.p.A,*
    560 U.S. 538 (2010) ..................................................................................... 13

*Lawton v. Success Acad.Charter Schs., Inc.,*
323 F.Supp.3d 353 (E.D.N.Y. 2018) .......................................... 21, 22, 26

*Loeffler v. Staten Island Univ. Hosp.,*
    582 F.3d 275 (2d Cir. 2009) ........................................................................ 22

*Logan v. Matveevkil,*
57 F. Supp. 3d 234 (S.D.N.Y. 2014) ........................................................... 19

*Marino v. Chester Union Free Sch. Dist.,*
859 F. Supp. 2d. 566 (S.D.N.Y. 2012) ....................................................... 38

*McElwee v. City of Orange,*

700 F.3d 635 (2d Cir. 2012) .................................................................................. 19

*McLennon v. N.Y. City,*
No. 13-CV-128 (KAM) (SMG), 2015 WL 147589 (E.D.N.Y. Mar. 31, 2015) .............................. 9

*Monell v. Dep't of Soc. Servs.,*
436 U.S. 658 (2d Cir. 2003) ............................................................................... 37

*Nagle v. Marron*
663 F.3d 100 (2d Cir. 2011) ............................................................................... 38

*N.Y. Cmtys. for Change v. N.Y. City Dep't of Educ.,*
No. 11-CV-3494, 2012 WL 7807955 (E.D.N.Y. Aug. 29, 2012) ...................................... 7

*Patrick v. Success Acad. Charter Schs., Inc.,*
354 F. Supp. 3d 185 (E.D.N.Y. 2018) ............................................................. 21, 25

*Peres v. Oceanside Union Free Sch. Dist.,*
426 F. Supp. 2d. 15 (E.D.N.Y. 2006) .............................................................. 7, 3

*Rae v. Cty. of Suffolk,*
693 F. Supp. 2d. 217 (E.D.N.Y. 2010) ................................................................. 30

*Reynolds v. Giuliani,*
506 F.3d 183 (2d Cir. 2007) ............................................................................... 38

*Rich v. Fox News Network, LLC*
322 F. Supp. 3d 487 (S.D.N.Y. 2018) ............................................................. 41, 42

*Rodriguez v. Winski,*
973 F. Supp. 2d 411(S.D.N.Y. 2013) ................................................................... 31

*S.G. v. Success Acad. Charter Schs.,*
18 Civ. 2484, 2019 WL 1284280 (S.D.N.Y. 2019) ............................................... 21, 24

*Salvador v. City of N.Y.,*
No. 15-CV-5164 (DLC), WL 2939166 (S.D.N.Y. May 19, 2016) ................................. 10

*Swierkiewicz v. Sorema N.A.,*
534 U.S. 506 (1992) ............................................................................................. 7

*Sybalski v. Indep. Grp. Home Living Program, Inc.,*
546 F.3d 255 (2d Cir. 2008) ............................................................................... 30

*Walker v. City of N.Y.,*
974 F.2d 293 (2d. Cir. 1992) ............................................................................... 39

**Statutes**

20 U.S.C. § 1400 *et seq.* (*"Individuals with Disabilities Education Act"*) ........................... 14

29 U.S.C. § 794, 504 ("Rehabilitation Act") ................................................................... 16

**Rules**

Federal Rules of Civil Procedure 8(a) ............................................................................. 27

Federal Rules Civil Procedure 12(b)(2) and (6)................................................ 1, 6, 8, 10, 11, 19

Federal Rules Civil Procedure 15(a)(2) ...................................................................... 27 n.8

Federal Rules of Civil Procedure 56 ............................................................................ 8, 13

Federal Rules of Evidence 201(b)(2).................................................................................. 9

**Other Authorities**

Letter from Russlynn Ali, Assistant Sec'y for Civil Rights, Office of Civil Rights, U.S. Dep't of Education (Oct. 26, 2010) (on file with the U.S. Dep't of Education). ...................................... 24, 39

## PRELIMINARY STATEMENT

### A. District Defendants' submissions contain false and mislead assertions.

In their motion to dismiss, the District Defendants make several assertions that are false and misleading. First, Defendants erroneously contend Plaintiff S.M. attempted to "escape from the school." *See, e.g.*, D-Mem. at 1, 5, 6, 9, 12, 15.[1] Nowhere is that allegation supported by the Complaint or admissible extrinsic documents. Second, by attempting to add disputed "facts" to the Complaint, Defendants erroneously assert that Defendants Robin Trichon and Dr. Iacovelli were not present during the April 1, 2019 crisis incident. D-Mem. at 24, 29. Defendant Trichon's alleged absence is directly refuted by the Complaint, which asserts her participation in the April 1 crisis incident. ¶48. The defense cannot legally challenge this allegation by an affidavit to the contrary. *See* discussion *infra* at 7-8, 12-13. Whether Dr. Iacovelli was at the school, on his way, or someplace else does not negate the legal sufficiency of the Complaint with respect to his culpability. Defendants are prohibited from offering new or contrary facts by affidavit to bolster their defense pre-discovery in support of a Rule 12(b)(6) motion. *Ibid.*

### B. Defendants' ignore the pervasive nature of the wrongful treatment of S.M. and his parents.

Defendants purposefully ignore the allegations detailing the more than 18-months of bullying and harassment S.M. suffered along with those describing Plaintiffs parents' continuous complaints about their son's treatment and their unanswered pleas for help from Defendants – pleas that were so insistent that Defendants banned S.M.'s parents from the school. ¶46. In an effort to minimize their culpability and shift the Court's attention away from its Rule 12(b)(6) Complaint review, District Defendants' arguments are almost inseparable from the contents of

---

[1] Page references to District Defendants' Memorandum of Law are abbreviated as "D-Mem. at __"; page references to Defendant Slackman's Memorandum of Law are abbreviated as "DS-Mem. at __"

the extrinsic documents they claim are irrefutable and demand the Court accept as "truth." Without converting their motion to one seeking summary judgment, an invitation this Court should decline, none of Defendants' documents are integral to the Complaint; as a consequence, neither these documents nor their contents can be considered.

**C. Defendants' assertions that Plaintiffs' Complaint contains "disguised objections" to the quality of S.M.'s education or to his IEP are error.**

Plaintiffs' Complaint does not involve deficiencies in S.M.'s IEP or the CSE process, despite Defendants' attempts to direct the Court's attention to this unrelated process. Plaintiffs do not specifically challenge any aspect of S.M.'s disability services. Purposefully misreading the Complaint, Defendants try to recharacterize Plaintiffs' allegations as complaints about the *quality* of S.M.'s education rather than about the bullying, harassment, and hostile discriminatory atmosphere S.M. endured – an hostile education environment the District knew existed, did nothing to prevent, and instead, exacerbated. Defendants harp on the CSE process to bolster their exhaustion argument and for no other reason. D-Mem. at 3-6.

Plaintiffs urge the Court to consider the Complaint as written. Nowhere therein do Plaintiffs challenge or quarrel with the CSE process, the IEP, or the CSE team – the group of District representatives, who with S.M.'s parents, came together to design and agree on S.M.'s IEP. Nor do Plaintiffs complain about any aspect of S.M.'s IEP, including whether it was effective. Those aspects of S.M.'s education – *if* Plaintiffs had complaints, would be properly addressed by the Due Process Complaint procedure provided by the IDEA. Such complaints are resolved by administrative adjudications before Independent Hearing Officers (IHOs). Such claims are not before the Court.

Plaintiffs' Complaint is about the failures of the District Defendants to protect S.M. from being bullied and harassed by his schoolmates, then blamed by his teachers and administrators as

causing the resulting harm, and victimized by both during his attendance at Saddle Rock Elementary School. Although the Defendants' discrimination may have interfered with S.M.'s education, the Complaint is about the fact of the discrimination and not about the quality of his education. It is about how the discrimination substantially interfered with S.M.'s access to education. It is about how Defendants were deliberately indifferent to S.M.'s suffering, Defendants' failures to investigate the bullying incidents Plaintiff-parents brought to their attention, or remedy the hostile educational environment in which S.M. existed, or keep S.M. safe. Ultimately, no matter how many times Defendants erroneously assert that the IDEA controls Plaintiffs' Complaint, the gravamen of Plaintiffs' Complaint concerns the bullying, harassment, and discrimination S.M. endured.

## STATEMENT OF FACTS

S.M., then an eleven-year-old child who has been diagnosed with severe Attention Deficit Hyperactive Disorder, or ADHD, and other disabilities, attended fourth grade (during school years 2017-2018) and fifth grade (during school year 2018-2019) at a public elementary school, Saddle Rock Elementary School ("Saddle Rock"), in the Great Neck Union Free School District ("School District"). ¶¶ 1, 5, 7. In both the school years, S.M. suffered continuous bullying and harassment, including physical and verbal altercations and intimidation by schoolmates, unabated and unprotected by Defendants, the Saddle Rock School administrators and staff. ¶¶2, 9, 11, 34-36. Despite S.M's parents' frequent complaints about the ongoing incidents and the harm being suffered by S.M., Defendants remained callously indifferent, refusing to investigate the bullying or harassment; by their willful inaction, Defendants essentially condoned the wrongful treatment S.M. suffered and allowed it to continue unabated. ¶¶38, 40, 45, 60, 61.

3

A. **Incidents of Bullying and Harassment at Saddle Rock**

During the prior eighteen-month period, during school years 2017-2018 and 2018-2019, S.M. suffered numerous incidents of bullying and harassment by his schoolmates, which were known to many District staff members and were discussed among Plaintiff-parents and the school staff of Saddle Rock, including Assistant Principal, now Principal, Luciana Bradley. ¶¶34-36. Specifically, and at least on one occasion, S.M. was hurt and brought to tears by a schoolmate during an incident of bullying. ¶35. Moreover, Plaintiff-parents reported multiple incidents of bullying and harassment to Defendants. Despite receiving these complaints and the clear evidence of S.M. 's physical and emotional suffering, Defendants ironically claimed that S.M. "caused" these incidents because he had somehow placed himself "in the path" of these bullies. ¶¶34, 36-37. In short, S.M. was not only victimized by his schoolmates, but he was also victimized by Defendants as well. Because bullying and harassing incidents continued, and because Defendants repeatedly failed to intervene or protect S.M., Plaintiff-parents called the police and filed a police report. ¶37. Even after being advised about the police report, and being provided with a tape recording of S.M. describing bullying incidents, ¶38, Defendant employees continued to blame S.M. and advise S.M. should learn to stay away from these bullies and that it was S.M.'s own fault for putting himself in their paths. ¶37.

Despite Plaintiff-parents expressing their frustration at the lack of remedial responsiveness, nothing was done. ¶40. Plaintiff-parents reiterated a particular example of the abuse S.M. encountered at school, where another student kicked him and threw rocks at S.M., which caused him to fall to the ground and injure himself. *Id.* In response, Ms. Goldberg merely stated that she and his teachers and the other staff would maintain a careful watch on S.M. ¶40. The bullying incidents, however, continued during the fifth grade as well. ¶41.

**B. The April 1, 2019 Assault of S.M.**

On April 1, 2019, as a result of his being threatened by Defendant Slackman and pushed to a crisis point, S.M.'s disability symptoms manifested such that he feared for his safety. S.M. attempting to flee the threat he perceived; instead of deescalating the situation, Defendants engaged in behavior that exacerbated S.M.'s disabilities; four individual employees of the School District engaged in an outrageous and extreme method of unlawful restraint of S.M. Specifically, Defendants Dr. Gabriella Duke, Robin Trichon, Kate Mugno, and Dana Slackman, each restrained S.M. by holding him by one of his four limbs, in midair, spread eagle, for over ten minutes, while S.M. was hysterically screaming and crying for his parents, and while these individuals and other municipal employees of the School District were waiting for S.M.'s parents to arrive. The other Defendants, employees of the District, observed and/or were aware of the egregious restraint being used and did nothing to stop or remediate it. ¶¶47-52.

Upon S.M.'s father's arrival to the school, Craig Moskowitz witnessed his son's obvious hysteria and extreme physical and emotional distress, along with the highly unorthodoxed and impermissible method of restraint Defendants' employed. ¶49. When Defendants lowed S.M. to the ground and let go of S.M.'s limbs, he could not stand. S.M., still sobbing, crawled to his father. ¶50.

Mr. Moskowitz knew he had to remove his son from the school as quickly as possible. In the few days that followed, S.M. had to be hospitalized at South Oaks Hospital, where he remained for ten days, receiving psychiatric treatment for the trauma he suffered as a result of the unlawful and egregious restraint Defendants' used and the continuous harassment and bullying S.M. had been suffering at school and from which there had been no respite. ¶¶53, 56.

As a result of the April 1, 2019 incident, Defendants suspended S.M. from school. To date, and though Plaintiff-parents tried on multiple occasions, Plaintiff-parents were unable to

obtain a satisfactory explanation from Defendants regarding the reason(s) S.M. was suspended. ¶51.

For S.M., the post-traumatic stress, suffering, and emotional distress continued, causing him to fear Defendants and a return to school. ¶58.Even after S.M. was released from South Oaks, he continued to suffer from posttraumatic stress as a result of his in-school treatment. Due to the incredible stress Plaintiffs were suffering from S.M. in-school treatment and the necessity it caused requiring hospitalization, after consulting with S.M.'s doctors, they thought it best that S.M. not to return to Saddle Rock. ¶78. As a result, S.M. was unable to complete his 2018-19 school year at Saddle Rock due to the incredible trauma he suffered there. S.M., therefore, received limited in-home tutoring until the end of the year. Despite Plaintiff-parents' requests to Defendants for additional schoolwork and tutoring, S.M. received limited instruction and consequently suffered delayed educational progress. ¶¶79-80.

## STANDARDS OF REVIEW

### A. Plaintiffs' Complaint satisfies the Rule 12(b)(6) standard of review.

Defendants' Motions to Dismiss the Complaint under Fed. R. Civ. P. 12(b)(6) are without merit and should be denied in their entirety.

A Rule 12(b)(6) motion to dismiss for failure to state a claim must be denied unless "it appears *beyond doubt* that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir. 1995) (emphasis added). A complaint is sufficient if it contains enough factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* "Determining

whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The "plausibility standard is not akin to a 'probability requirement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556)). Rather, when assessing the sufficiency of a pleading, "a court accepts the truth of the facts alleged in the complaint," and construes all reasonable inferences in favor of the plaintiffs. *See, e.g., Elbit Sys., Ltd. v. Credit Suisse G, p.,* 917 F. Supp. 2d 217, 224 (S.D.N.Y. 2013); *New York Communities for Change v. New York City Dep't of Educ.,* No. 11 CV 3494, 2012 WL 7807955, at *3 (E.D.N.Y. Aug. 29, 2012), *report and recommendation adopted,* No. 11 CV 3494, 2013 WL 1232244 (E.D.N.Y. Mar. 26, 2013).

The Complaint may not be dismissed unless it appears that *no* construction of the facts would permit the plaintiffs to prevail. *Bush v. Bruns Nordeman & Co.,* No. 72 CIV. 484, 1972 WL 360, at *l (S.D.N.Y. Nov. 8, 1972). Plaintiffs are only required to "nudge[] their claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Notably, in *Swierkiewicz v. Sorema*, the Supreme Court held that the simplified pleading standard in Rule 8(a) applies generally to all civil actions. 534 U.S. 506, 513, 122 S. Ct. 992 (2002); *Peres v. Oceanside Union Free Sch. Dist.,* 426 F. Supp. 2d 15, 24 (E.D.N.Y. 2006). Plaintiffs' Complaint clearly satisfies this standard of review.

**B.  The Court should decline to consider documents extrinsic to the Complaint**

A district court may consider three categories of documents extrinsic to the pleadings without converting a Rule 12(b)(6) motion into one for summary judgment.

First, a court can consider documents that are either attached to the complaint or incorporated into it by reference. *Inter'l Audiotext Network, Inc. v. AT&T Co.*, 62 F.3d 69 , 72

(1995) (per curiam) (incorporating an business agreement entered into by sophisticated parties); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 46-48 (2d Cir. 1991), *cert. denied*, 503 U.S. 960 (1992) (incorporating business agreements referenced in the complaint between sophisticated parties).

Second, a court can consider extrinsic documents if they are integral to the complaint. *Ibid.* A document is integral to the complaint if the plaintiff relies on the document's terms and effect when drafting the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-153 (2d Cir. 2002) (reversing district court for improperly considering defendants affidavits and exhibits attached thereto); *Koppel v. 4987 Corp.*, 167 F.3d 125, 128 (2d Cir. 1999) (citing *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)). The court in *Chambers* instructed lower courts and emphasized that a plaintiff's knowledge and possession of a document is not enough for the court to consider it integral to the complaint; rather, the plaintiff's "*reliance on the terms and effect in drafting the complaint is a necessary prerequisite* to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers*, 282 F.3d at 153 (although the contracts between the sophisticated parties were relied on in the complaint and thus "integral" to the pleadings, the court's receiving and reviewing other extraneous material was error). Once the court is presented with documents extraneous to the pleadings, Rule 12(b) provides that the court may either exclude the documents as extrinsic or convert the motion to one under Rule 56. The rationale underlying these exceptions is that a plaintiff cannot claim to lack notice of a document if she used the document when crafting the complaint. Accordingly, if a plaintiff relies upon an extrinsic document, but presents the document's facts in a misleading fashion, a defendant is free to rely upon that document in its 12(b)(6) motion.

The *Chambers* court noted that consideration of extrinsic material when considering the complaint's sufficiency is "at odds with the liberal pleading standard of Rule 8(a) requiring only a short plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 154 (citing Rule 8(a)(2)). The court also risks depriving plaintiff of a fair adjudication on an incomplete record. *Id.* at 155. A full and fair adjudication on the merits of the complaint requires that discovery proceed.

Third, a court can consider "matters of which judicial notice may be taken" pursuant to Fed. R. Evid. 201(b). *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (abrogated on other grounds by *Chambers, supra*). This exception allows a court to consider facts that are either generally known, or facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Judicially noticeable facts must "not [be] subject to reasonable dispute," Fed. R. Evid. 201(b)(2). Such facts can be considered on a motion to dismiss, just as they can be considered at any stage of the litigation. This exception routinely applies to facts contained in government documents, as such documents presumably contain facts whose accuracy cannot reasonably be questioned.

Even if the court takes judicial notice of any document, which here it should decline to do, the truth of any statements contained within the documents cannot be considered; accordingly, Plaintiffs contend the documents Defendants submitted are of little value to the Rule 12(b)(6) motion before the Court. *See McLennon v. New York City*, No. 13-CV-128 (KAM) (SMG), 2015 WL 1475819, at *4 (E.D.N.Y. Mar. 31, 2015) ("Where the Court takes judicial notice, it does so 'in order to determine what statements [the public records] contained ... not for the truth of the matters asserted.'" (alterations in original) (quoting *Monroe v. Myskowsky*, No. 12 Civ. 5513 (KPF), 2014 WL 496872, at *1 n.3 (S.D.N.Y. Feb. 6, 2014))).

Finally, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Faulkner v. Beer,* 463 F.3d 130, 134 (2d Cir. 2006). "It must also be clear that there exists no material disputed issues of fact regarding the relevance of the document." *Ibid.* Moreover, where two potential interpretations of a document are possible, the court must interpret the document in the light most favorable to the plaintiff. *Koppel*, 167 F.3d at 133. "It is not for us to choose between two plausible readings of the [document] in reviewing the Defendants' motion to dismiss." *Ibid.* (finding plaintiffs' reading to be among those plausible readings and reversing the district court for dismissing plaintiffs' claims).

None of the cases cited by Defendants support consideration of extrinsic documents. For example, the *Koppel* court reversed the district court for improperly considering certain documents not part of the complaint. 167 F.3d at 131. *Salvador v. City of New York*, No. 15-CV-5164 (DLC), 2016 WL 2939166, at *2 (S.D.N.Y. May 19, 2016), cited by Defendants, also fails to serve the defense arguments. In *Salvador*, though the defense attached multiple documents to its motion, only the search warrant was considered integral since the plaintiff relied upon it to argue malicious prosecution and false arrest.

Defendants' also cited *Harris-Thomson v. Riverhead Charter Sch. Bd. of Trts.*, No. CV-14-5340, 2016 WL 11272084 (E.D.N.Y. Feb. 23, 2016) (report and recommendation) (adopted in full at 14-CV-5340 (JMA)(AYS) 2016 WL 4617207 (E.D.N.Y. Sept. 6, 2016), presumptively in support of adding extrinsic documents for the court's consideration and/or for converting the motion to one seeking summary judgment.[2] However, the Rule 12(b)(6) standards provided in the court's decision fail to favorable support defendants' motion. Specifically, in *Harris*, the

---

[2] Plaintiffs note this matter was litigated by the defense firm representing the District Defendants.

court declined to consider all the extrinsic documents submitted by the defense. *Ibid.*

Here, none of the documents submitted by Defendants should be considered by the Court.

First, none of the documents were annexed to the Complaint. Nor did Plaintiffs "rely heavily" on any of the exhibits appended to Defendants' motion. In fact, the Complaint did not rely on Defendants' exhibits at all. Defendants' contrary assertions are spurious. Rather, Defendants improperly seek to add rebuttal allegations to Plaintiffs' Complaint and erroneously claim that such allegations are irrebuttable "documentary" evidence that cannot be disputed by Plaintiffs. D-Mem. at 1-2. A Rule 12(b)(6) motion does not permit such a negative inference.

Second, Defendants fail to differentiate between documentary evidence that demonstrates the fact that correspondence occurred from evidence of the substance of the communication – in other words, Defendants improperly argue that the Court should accept the truth of the correspondences' contents, *see, e.g.*, D-Mem. at 1-2, 9-10 (arguing the truth of the contents of the emails.). While the Court may consider that an email was sent on a particular day at a particular time, it cannot interpret an email, for example, in a light favorable to the defense merely because defendants argue that the contents has a certain purported meaning. *See Faulkner v. Beer,* 463 F.3d 130, 134 (2d Cir. 2006) ("It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.").

Finally, Defendants attempt to introduce five extraneous emails from Mr. Moskowitz to the CSE team about the CSE process, which is neither part of the Complaint nor relevant to the claims at issue. *See* Miranda Decl. Exh. C-G. These documents cannot be considered part of the Complaint. The emails address the CSE process, which is not relevant to Plaintiffs' claims. The import and contents of the emails are subject to interpretation, and thus, are not undisputed. For example, Defendants erroneously claim that emails from Plaintiffs, or more specifically from

Craig Moskowitz, "praise" the District.[3] *See, e.g.*, D-Mem. at 10. The defense "spin" on the emails, attached as extraneous exhibits, is yet another attempt to introduce "facts" into the record that are disputed by Plaintiffs and/or that Plaintiffs consider immaterial to their claims. For all these reasons, none of the emails may be considered as part of the Complaint without converting the motion into a Rule 56 motion. *Faulkner*, 463 F.3d at 134.

## C. <u>The Court should decline to convert the motion to a Rule 56 motion</u>

Assessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings. If a court does consider material outside the pleadings, the motion to dismiss *must* be treated as a motion for summary judgment under Rule 56 and all parties must be given a reasonable opportunity to present all material pertinent to the motion. *See* Fed. R. Civ. P. 12(d); 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366 (3d ed. 2018) ("Once the district court decides to accept matters outside of the pleadings, the presence of the word 'must' [in Rule 12(d)] indicates that the judge must convert the motion to dismiss into one for summary judgment . . . . [T]hat is what has been done in a vast array of cases, especially when the district court actually considers the contents of this material in deciding the motion.").

Here, Defendants' motion to dismiss is pre-answer; discovery has not occurred. If

---

[3] As discovery will demonstrate, Plaintiffs' April 3 email dripped with sarcasm, not praise. Consider the circumstances of the email's issuance by Plaintiff S.M.'s father. After the District Defendants' horrendous treatment of S.M., they failed to inquire after S.M.'s well-being for more than 48 hours. *Two whole days* passed after their son had been egregiously victimization by Defendants' actions, which were shocking, wholly unorthodox, and unlawful. Defendants' communications with S.M.'s parents consisted of a hand-delivered suspension letter and telephone calls insisting on an in-person meeting with Plaintiff-parents, all while they were trying to handle their son's emotional crisis while he was experiencing severe post-traumatic stress. The tone and contents of Craig Moskowitz's email conveyed contempt, not laud. At no time did Plaintiffs contemplate S.M.'s return to the school that treated S.M. so egregiously and/or necessitated a 10-day hospital stay for S.M. to even begin recovering from the trauma he experienced at Defendants' hands. Instead, the District Defendants' wholly deficient crisis handling continued to "bear gifts," as Mr. Moskowitz conveyed. He used phrases including "*such a nice touch*," and "*just how lucky we are*," which demonstrated his mocking contempt that both Plaintiff-parents felt about the Defendants and the school. Defendants' attempts to twist Plaintiffs' words in an effort to refute them must be rejected.

converted, Plaintiffs would properly be entitled to at least a lengthy adjournment to submit evidence in opposition, if not time to conduct necessary discovery. Moreover, the development of a factual record is preferred prior to dismissal considerations. *Forman v. Davis*, 371 U.S. 178, 181–82 (1962) (the Federal Rules of Civil Procedure expressly prefer consideration of an action based on its merits); *see also Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 550 (2010) (observing that Rule 15 in particular expresses this preference).

Accordingly, none of the affidavits offered by Defendants should be considered by the Court (*i.e.*, Trichon, Iacovelli, and Mugno Affidavits). Not only are they self-serving and suggest defenses that are disputed by Plaintiffs, but no opportunity also to cross-examine or depose these Defendants has been provided to Plaintiffs. At a minimum, Plaintiffs would be entitled to depose these Defendants, along with the other named Defendants, and to obtain relevant document discovery; in other words, Plaintiffs would be entitled to full and fair discovery prior to any determination under Rule 56.

Finally, Plaintiffs note that Defendants failed to comply with the requirements of Rule 56; no Local Rule 56.1 statement was submitted by Defendants as is required for such a motion. *See* Local Rule 56.1. On this basis alone, Defendants' invitation to convert this motion to one pursuant to Rule 56 should be denied. *See* Local Rule 56.1(a).

## ARGUMENT

### I. EXHAUSTION OF PLAINTIFFS' ADA/504 CLAIMS WAS NOT REQUIRED

Exhaustion is not required for suits that center on harassment, bullying, or discrimination; exhaustion is required *only when* a suit seeks relief for the denial of a Fair and Appropriate Public Education (FAPE). *Fry,* 137 S. Ct. at 752. For any disputes concerning the provision of FAPE, such as, for example, whether a child requires more

speech and language therapy or a smaller class size, the IDEA directs parties to an administrative forum with the local or state educational agency. *See* 20 U.S.C. § 1415(b)(6). Any relief awarded through this forum must be "based on a determination of whether the child received a [FAPE];" thus, plaintiffs seeking relief for the denial of FAPE must first exhaust their claims through this administrative process. 20 U.S.C. § 1415. Because Plaintiffs are seeking relief for discriminatory conduct, harassment, and bullying treatment on the basis of S.M.'s disabilities, and not the denial of FAPE (or any other aspect of the provision of special education services), Plaintiffs' claims were not and are not subject to exhaustion.

### A. Not All "Education-Centric" Discrimination Claims Are Subject to Exhaustion.

The Supreme Court has rejected the argument that all FAPE-denial allegations are subject to exhaustion. *See Fry,* 137 S. Ct. at 758 (exhaustion does not turn on "whether [the plaintiffs] injuries were, broadly speaking, 'educational' in nature"); *see also G.M v. Lincoln Cty. Sch. Dist.,* No. 16 Civ. 01739, 2017 WL 2804996 (D. Or. Apr. 21, 2017) (educational claims regarding the removal of children with disabilities from the classroom for instructional or punitive reasons were not subject to exhaustion); *Gabel v. Bd. of Educ. of Hyde Park Cent. Sch. Dist.,* 368 F. Supp. 2d 313, 333-334 (S.D.N.Y. 2005) ("denial of *access* to an appropriate educational program on the basis of a disability is a Section 504 issue, whereas dissatisfaction with the *content* of an IEP [(Individualized Education Program)] would fall within the purview of IDEA" (emphasis in original)). The mere mention of "special education" in Plaintiffs' Complaint does not magically transform it into one asserting a denial of FAPE. *See Fry,* 137 S. Ct. at 755 (exhaustion is not a "magic word" test).

14

The plaintiff in *Fry,* a child with a severe disability, required a service dog to assist her with activities of daily living. The Sixth Circuit held that exhaustion was required whenever a suit was related to the IDEA, finding that "the genesis and the manifestations" of the *Fry* case were "educational" in nature. *Fry v. Napoleon Cmty. Schs.,* 788 F.3d 622, 627 (6th Cir. 2015) (quoting *Charlie F. v. Bd. of Educ. of Skokie Sch. Dist. 68,* 98 F.3d 989, 993 (7th Cir. 1996)). Upon review, the Supreme Court rejected this argument, holding that, while education-related allegations can turn on the adequacy of a recommended special education program, as is the central question in IDEA cases subject to exhaustion, they can also turn on "other harms, independent of any FAPE denial," and therefore not be subject to exhaustion. *Fry,* 137 S. Ct. at 754.

In *Fry,* the "other harms" included discriminatory treatment and the denial of reasonable accommodations. *Id.* These "other harms" are precisely the ones experienced by Plaintiffs in this action – namely, harassment, bullying, and discrimination.

In *G.M v. Lincoln Cty. Sch. Dist.,* an Oregon district court applied *Fry* in a case that may be helpful here. The plaintiff, a fifth grader with Down' s Syndrome who was touching his fellow students, was disciplined by being repeatedly expelled to a "seclusion room" where he was segregated from his non-disabled peers and forced to miss significant amounts of instruction. His parent complained, yet his school's administrators continued to order the use of the seclusion room as a method of discipline. The plaintiff filed suit alleging, *inter alia,* violations of Section 504. The court found that exhaustion was not required, stating, "while such treatment could certainly affect the quality of one's education ... Plaintiff alleges discrimination , not inadequate individualized educational services, and thus his claims fall outside the IDEA." *Id.,* No. 16 Civ. 01739, 2017 WL

2804996, at *4 (D. Or. Apr. 21, 2017).

### B. Plaintiffs' ADA/504 Discrimination Claims Were Not Subject to Exhaustion, Even If Plaintiffs Could Have Brought Corresponding IDEA Claims.

Plaintiffs stated separate, distinct denial of access and discrimination claims under Section 504, regardless of whether there were potential IDEA claims that they could have brought. The *Fry* Court recognized this possibility, explaining that cases involving IDEA's FAPE guarantee turn on the receipt of "individually tailored educational services," the denial of which may have "some overlap" with whether the plaintiffs were discriminated against and thus denied equal access to education under Section 504. *Fry,* 137 S. Ct. at 756. In determining whether the Court has jurisdiction over Plaintiffs' Section 504 claims, the question is not whether any hypothetical, but overlapping, IDEA claims Plaintiffs might have brought required exhaustion, but rather whether the claims Plaintiffs in fact brought could ever be resolved by the educational relief afforded through IDEA's administrative procedures. *Id.* at 755. Relatedly, the *Fry* court held that courts must treat the plaintiff as "the master of her claim" and assess whether her lawsuit seeks relief available under IDEA, "not, as a stricter exhaustion statute might, [assess] whether the suit 'could have sought' relief available under the IDEA." *Id.; see also JS. v. Houston Cty. Bd. of Educ.,* No. 15 Civ.14306, 2017 WL 4351313, at *4 (11th Cir. Oct. 2, 2017) (suit which could have been brought under IDEA nevertheless stated separate and distinct Section 504 and ADA claims for intentional discrimination, and thus no exhaustion was required).

As instructed by the *Fry* Court, regardless of the potential to state any FAPE claims, the focus must be on the claims Plaintiffs did bring. Here, the Complaint centers

on intentional discrimination and the resulting harm, for which administrative remedies could not have provided relief.

### C.  **Plaintiffs Pass the _Fry_ Hypothetical Exhaustion Test**

Exhaustion may be required if an adult at the school could not press the same grievance, or if the plaintiff could not bring essentially the same claim if the alleged conduct occurred at a public facility other than a school – like a public library. _Fry,_ 137 S. Ct. at 756. The same type of claim could have been brought by an adult at Saddle Rock. For example, if the District Defendants were to similarly restrain an employee, and hold him by his limbs until the police arrived, or were to continually ignore verbal taunts and physical harassment by library employees of another employee who was disabled, the employee with disabilities would have an action for disability discrimination. Similarly, S.M. also could have brought essentially the same claim had he been repeatedly bullied and harassed at another kind of public facility, such as the public library, by employees, because of his disabilities, S.M. would have a similar discrimination claim.

The gravamen of Plaintiffs' suit pursuant to _Fry,_ therefore, is not a failure to provide Plaintiffs with an education appropriate to S.M.'s disabilities, but rather, Defendants' discriminatory treatment and failure to investigate or successfully prevent the ongoing harassment and bullying treatment S.M. suffered at school thereby discriminating against him by denying him access to the school and its benefits.

### D.  **Plaintiffs Did Not Have to Exhaust Because the Harm Was Systemic**

Even if the gravamen of a suit is the denial of FAPE, exhaustion is not required if it would be "futile or inadequate," such as when an administrative hearing officer cannot offer the plaintiffs any relief because the harm at issue is systemic. _See, e.g., Honig v._

*Doe,* 484 U.S. 305, 326-27 (1988); *JS v. Attica Cent. Schs.,* 386 F.3d 107, 113-15 (2d Cir. 2004); *Taylor v. Vt. Dep't of Educ.,* 313 F.3d 768, 788-91 (2d Cir. 2002).

Here, the nature of the harassment was pervasive and extended over a lengthy period of time, during which Defendants did nothing to alleviate the bullying conditions. Repeated requests by Plaintiff-parents were minimized if not ignored altogether. Defendants failed to investigate, failed to institute any remedial steps, and failed to discipline the schoolmates who inflicted the harm.

### E. Exhaustion Is Not Required Because the Administrative Hearing Process Offers No Relief Against Individual Defendants

Exhaustion in this case would be futile because IDEA offers no relief against the individual District Defendants. *See, e.g., Diaz- Fonseca v. Puerto Rico,* 451 F.3d 13, 35 (1st Cir. 2006); *LMP v. Sch. Ed. of Broward Cty., FL.,* 516 F. Supp. 2d 1305 (S.D. Fla. 2007). Plaintiffs allege that Defendants intentionally discriminated against S.M. and retaliated against Parent-Plaintiffs. Thus, exhaustion is not appropriate.

### II. PLAINTIFFS' COMPLAINT ALLEGES SUFFICIENT FACTUAL MATTER TO PLAUSIBLY STATE ADA/504 CLAIMS AGAINST DEFENDANTS.[4]

In the Second Circuit,

> [t]o establish a prima facia case of discrimination under either the ADA or Section 504, a plaintiff must show (1) plaintiff is a qualified individual with a disability; (2) plaintiff was excluded from participation in the school district's services, programs, or activities or was otherwise discriminated against by the district; and (3) such exclusion or discrimination was due to plaintiff's disability. Exclusion or

---

[4] Although not apparently argued by Defendants, Plaintiffs agree that their ADA and Section 504 claims against the individual Defendants in their individual capacities, including the failure to accommodate and retaliation claims, must be dismissed. *See, e.g., Garcia v. S.U.N.Y. Health Scis. Ctr. of Bklyn,* 280 F.3d 98, 105, 107 (2001) (neither Title II of the ADA nor Section 504 provides for individual capacity suits) (collecting cases). However, Plaintiffs' ADA and Section 504 claims seeking declaratory relief against individual Defendants should remain.

> discrimination may be shown by disparate treatment, disparate impact, or failure to make a reasonable accommodation.

*B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 158 (2d Cir. 2016); *D.C. ex rel. E.B. v. New York City Dept. of Ed.,* 950 F. Supp. 2d 494, 518 (S.D.N.Y. 2013). Although there are distinctions between claims pursuant to the ADA and Section 504, *see, e.g., McElwee v. Cty. Of Orange,* 700 F.3d 635, 640 (2d Cir. 2012); *Logan v. Matveevskil*, 57 F. Supp. 3d 234, 254 (S.D.N.Y. 2014) (explaining differences),[5] such claims typically are evaluated using the same standards. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

Section 504 "prohibits programs and activities receiving federal financial assistance from excluding, denying benefits to or discriminating against 'otherwise qualified' disabled individuals." *McElwee v. Cty. of Orange,* 700 F.3d 635, 640 (2d Cir. 2012) *(quoting* 29 U.S.C. § 794(a)). The disability must be the "substantial cause" of the exclusion. *Henrietta v. Bloomberg,* 331 F.3d 261, 291 (2d Cir. 2003). Moreover, because Section 504 is "a remedial statute, it and the regulations promulgated under it are to be construed broadly." *Heilweil v. Mount Sinai Hosp.,* 32 F.3d 718, 722 (2d Cir. 1994), *cert. denied,* 513 U.S. 1147 (1995).

Defendants, conceding the first two factors, focused on the third factor; however, their arguments must be rejected.

### A.  Plaintiffs Properly Pleaded "Bad Faith" And "Gross Misjudgment"

In a Rule l 2(b)(6) motion, when an ADA/Section 504 intentional discrimination

---

[5] For example, Section 504 is limited to the denial of benefits "*solely* by reason of … disability," 29 U.S.C. § 794(a) (emphasis added), while the ADA is broader, applying to denials "by reason of … disability." 42 U.S.C. § 12132. In addition, Section 504 requires a showing of federal funding. *Henrietta D.*, 331 F.3d at 272. Here, Defendants did not argue distinctions in the statutes should be considered or challenge Plaintiffs' Complaint in this regard. *See* D-Mem., Point II. Accordingly, the Court should consider the statutes together. *Cerecpac v. Health & Hosps. Corp.*, 147 F.3d 165, 167 (2d Cir. 1998).

claim is alleged, plaintiffs must show bad faith or gross misjudgment on the part of defendants. *Weixel v. Ed. of Educ. of N.Y,* 287 F.3d 138, 146 (2d Cir. 2002). "[T]he plaintiff is not required to show personal animosity or ill will." *D.C. ex rel. E.B. v. New York City Dept. of Educ.,* 950 F. Supp. 2d at 518 (quotations, brackets, and citations omitted). Rather, discrimination "may be inferred when there is evidence that a school district acted with deliberate or reckless indifference to the student's federally protected rights or with bad faith or gross misjudgment." *Id.; see also C.L. v. Scarsdale Union Free Sch. Dist.,* 744 F.3d 826, 841 (2d Cir. 2014) (same). Such intentional discrimination may be inferred "when a policymaker acted with at least deliberate indifference to the strong likelihood that a violation of a federally protected rights will result from the implementation of the challenged policy or custom," *S.W. by J.W. v. Warren,* 528 F. Supp. 2d 282, 291 (S.D.N.Y. 2007), or when the school district commits numerous errors in handling the case of a student with a disability. *See, e.g., Gabel ex rel L.G. v. Bd. of Educ. Of Hyde Park Cntrl. Sch. Dist.,* 368 F. Supp. 2d 313, 335 (2005) ("Case law from this Circuit suggests that the District's many failures [in handling the case of a student with a disability] may rise to the level of gross negligence or reckless indifference sufficient to support a claim of discrimination under Section 504."); *Conway v. Bd. of Educ. of Northport-East Northport Sch. Dist.,* No. 13 Civ.5283 , 2014 WL 3828383, at *18 (E.D.N.Y. Aug. l , 2014) (plaintiffs allegations of defendants' failures in dealing with plaintiff rose to the level of gross negligence or deliberate indifference sufficient to withstand dismissal of the Section 504 claim at the pleading stage). Plaintiffs' allegations meet this pleading standard for ADA/504 claims.

Essentially, the District Defendants point to nine paragraphs in a 219-paragraph complaint to claim Plaintiffs' Complaint is disguised as a complaint concerning Plaintiff S.M.'s

IEP and the denial of FAPE, rather than one concerning pervasive discrimination, harassment, and bullying by S.M.'s schoolmates and condoned by Defendants. However, neither Plaintiffs' allegations cited in ¶¶72-77 nor those cited in ¶¶78-80 convert this Complaint into one involving Plaintiff S.M.'s IEP, the sufficiency disability services provided to him by the District, or the quality of S.M.'s education.

Specifically, too, the relief requested is not available under the IDEA. Notwithstanding Plaintiffs' recitation of Defendants' failures to provide Plaintiff S.M. with particular services, ¶4, Plaintiffs' did not and do not seek such compensatory IEP services. *See* ¶¶202-219, for relief requested. Defendants' failures to provide S.M. with a Section 504 plan, homebound classes, and tutoring, explained in ¶¶72-77 and ¶¶78-80 were cited as evidence of Defendants' intentional discrimination, failures to investigate Plaintiff-parents' complaints, failures to remedy the bullying and harassment, and retaliation under the ADA/504. Significantly, neither an ADA nor a Section 504 claim should be conflated to become equivalent to one alleged under the IDEA. These statutes are separate and distinct provisions of law, describing different standards to be met by Defendants and enumerating differing remedies. Similarly, an ADA claim is distinct from an IDEA claim, as it is distinct from a 504 claim.

Defendants' reliance on pre-*Fry* case law also must be rejected. The gravamen of Plaintiffs' Complaint does not concern the denial of FAPE. *Fry*'s two-question inquiry yields the same answers as they did in *Lawton v. Success Academy Charter Schs., Inc.*, *Patrick v. Success Academy Charter Schs., Inc.*, and *S.G. v. Success Academy Charter Schs., Inc.*: Defendants' conduct, namely, repeated failures to keep S.M. safe from student bullying, discriminating against him by ignoring parents' complaints, being subjected to repeated harassment and bullying, if such actions were to occur at a Library by Library staff, including using physical

restraints against a child visitor, or against a disabled employee working for the School District, such conduct would form the basis of valid ADA/504 claim. *Lawton*, 323 F. Supp. 3d at 362; *Patrick*, 354 F. Supp. 3d 228; *S.G.*, 2019 WL 1284280; *Fry*, 137 S. Ct. at 756.

Under Section 504, a claim may be established by allegations that a disabled student was denied access to a free appropriate education as compared with his non-disabled peers. *C.L. v. Scarsdale Free Union Sch. Dist.*, 744 F.3d 826, 840-841 (2d Cir. 2014). Such claims require a demonstration of "bad faith or gross misjudgment." *Ibid.* (collecting cases). Monetary damages are recoverable upon a showing of an intentional violation, namely, "deliberate indifference to the strong likelihood of a violation." *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009) (internal citations and quotations omitted); *Garcia v. S.U.N.Y. Health Scis. Ctr. of Bklyn*, 280 F.3d 98, 115 (2d Cir. 2001) (plaintiff must show defendants acted with "deliberate indifference" to the disabled student's rights).

Discriminatory conduct may also take the form of a denial of a reasonable accommodation. *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009). Discrimination occurs when a defendant fails to make a reasonable accommodation that would allow a disabled student to have access to and take a meaningful part in a school district's services. *See also Henrietta D.*, 331 F.3d at 283 (describing "meaningful access").

Here, Defendants argue that Plaintiffs did not adequately allege that S.M. was denied access to or participation in the District's services, programs, or activities or that such exclusion or discrimination was due to S.M.'s disability.[6] D-Mem. at 14-16. Quite simply, Defendants are wrong. Plaintiffs' Complaint is replete with specific allegations detailing the bullying treatment

---

[6] Defendants do not challenge the first two elements of a *prima facie* case of discrimination under either the ADA or Section 504: that plaintiff was a qualified individual with a disability (para 6-8) or that Defendants were subject to the statute (para 18). D-Mem. at 13. Further and notably, Defendants do not challenge this Court's subject matter jurisdiction, only the sufficiency of Plaintiffs' Complaint.

and harassment S.M. experienced at school under the supervision of Defendants, ¶¶ 34-46. Plaintiffs repeatedly alleged Defendants both observed, ¶¶30, 45, 74, 76, and were made aware of these bullying and harassing incidents by S.M.'s parents, ¶¶34, 35, 37, 38, 40, 45, 46, 60, and S.M.'s private therapist, ¶¶ 30, 31, 62. Indeed, S.M's parents complained so much about Defendants' failures to investigate, intervene, and/or protect S.M., ¶¶34, 36, 37, 38, 40, 45, 52, 71, including Plaintiffs' filing a police report, ¶37, that Defendants banned parent-Plaintiffs from the school, ¶46.

Plaintiffs further alleged the harassment and bullying was harmful because it interrupted his education and affected his academic progress, ¶¶30, 41, 42, 62, 74, 76, to the extent that S.M. was denied FAPE. *Ibid.* Plaintiffs also allege S.M. was removed from the classroom on multiple occasions for reasons related to his disabilities, ¶86. Plaintiff-parents were not required to use special words when they made repeated pleas for help from Defendants. Defendants were under a continuing obligation to evaluate S.M. and the necessity for different or additional services and for accommodations that would facilitate S.M. receiving an equal opportunity, including a 504 Plan.

Although Defendants failed to acknowledge any of the above factual allegations as sufficient to establish Plaintiffs' claims, they admitted during their arguments advocating exhaustion, *see* D-Mem. at 4, that Plaintiffs sufficiently alleged that Defendants deprived S.M. of access to services by *inter alia* Defendants' failure to provide a behavioral plan, citing ¶¶72-77, and sufficiently alleged Defendants failure to provide sufficient homebound instructions and tutoring, citing ¶¶78-80. Defendants argue, however, that these deprivations instead of establishing further evidence of Plaintiffs' ADA and Section 504 claims, only establish Plaintiffs' obligation to exhaust administrative remedies. *See* D-Mem. at 4. Defendants' one-

dimensional view of the Complaint fails to recognize that such allegations are additional examples of Defendants' excluding S.M. from accessing Defendants' services, programs, and benefits, as well as demonstrated Defendants' discriminating against S.M. because of the manifestations of his disabilities. *See* Russlynn Ali, Assistant Sec'y for Civil Rights, Office for Civil Rights, U.S. Dep't of Educ., "Dear Colleague Letter: Harassment and Bullying" (Oct. 26, 2010) (noting local school districts' often fail to recognize student harassment and bullying also amount to discrimination on multiple grounds, including on the basis of disabilities).[7]

Plaintiffs' allegations repeatedly demonstrated Defendants' bad faith and deliberate indifference to the harassing and bullying way that S.M was treated; worse, Defendants' gross misjudgment is demonstrated by their repeatedly blaming the victim, as if S.M. invited the continuing discrimination to which he was subjected, ¶¶36, 37, 46. Clearly, by blaming S.M., Defendants suggest that S.M.'s disabilities contributed to the harassment he was receiving. Even if that were true, Defendants failed to recognize their obligation to remedy these circumstances. At this stage in the proceedings, Plaintiffs' allegations that Defendants' repeatedly ignored Plaintiffs' pleas for help, along with Plaintiffs' allegations that Defendants blamed S.M., the victim, instead of investigating bullying incidents or providing S.M. with a safe environment, both sustain Plaintiffs' pleading burden to establish the District's and Defendant administrators' bad faith and gross misjudgment. *See, e.g., S.G.*, 2019 WL 1284280, at *14-*15 (finding as plausible Plaintiff S.G.'s multiple allegations supporting inferences of bad faith or gross misjudgment at the pleading stage).

Defendants' argument that Plaintiffs' Complaint is internally inconsistent by purportedly "conceding" that the District provided S.M. with special education and related services or

---

[7] *See* https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201010.pdf.

"admitting" that the District provided S.M. with services while suspended, D-Mem. at 14, misstate Plaintiffs' Complaint. Plaintiffs reported that the District had a legal requirement to provide S.M. with an IEP and related services, ¶¶32, 33, and that the District provided S.M. with *less than 5 hours a week* of instruction while he was out of school, ¶80, despite Plaintiffs' request for homebound schooling and tutoring, ¶79. Plaintiffs allegations are hardly "admissions." Rather these allegations, considered in context with S.M.'s suffering continual discriminatory, harassing, and bullying treatment by school peers – treatment repeatedly made known to Defendants, demonstrated the woefully inadequate and deliberately reckless responses by the Defendants to remedy the known harm S.M. continuously suffered. *See, e.g.*, ¶¶36, 37, 61, 67, 71, 77, 83, 86, 87, 89, 93.

Defendants' arguments that extraneous emails regarding the CSE process from Craig Moskowitz conflict with the allegations in the Complaint should be ignored. First, Defendants cannot introduce extraneous, unrelated emails into their Rule 12(b)(6) motion, for all the reasons argued *supra*. Defendants cannot paraphrase the emails or quote from them out of context. *See* D-Mem. at 14. Indeed, the context of these emails is wholly outside the purview of this Court during a Rule 12(b)(6) motion.

The totality of the circumstances pleaded by Plaintiffs more than demonstrated plausible allegations of the bad faith, deliberate indifference, and gross misjudgment by Defendants. Indeed, these allegations demonstrated Defendants' ongoing culpability if not systemic discrimination by virtue of Defendants' repeatedly ignoring the multiplicity of Plaintiffs' complaints of harassment and bullying of S.M. *See Patrick v. Success Academy Charter Schs., Inc.*, 354 F. Supp. 3d 185, 210 n.26 (E.D.N.Y. 2018) (recognizing Plaintiff sufficiently pleaded a "systemic due process violation" by allegations of repeated denials of due process), and *see*

*Lawton v. Success Academy Charter Schs., Inc.*, 323 F. Supp. 3d 353, 366 (recognizing Plaintiffs sufficiently pleaded "systemic discrimination" by allegations of repeated class removals and suspensions on disabled four- and five-year olds).

Finally, Defendants' efforts to minimize the incredibly horrific spread-eagle hold employed by school personnel – persons who betrayed any semblance of trust children are supposed to have for their educators, incredibly argue this same hold would have been used for a non-disabled child. These were individuals charged with ensuring S.M.'s safety, not traumatizing him. D-Mem. at 15. Defendants improper efforts to add these disputed facts into their arguments only serves to further exemplify their distorted view of their legal responsibilities towards S.M. *Ibid.* Plaintiffs plainly and plausibly alleged the wholly inept and legally reprehensible manner in which Defendants handled S.M. on April 1, 2019, ¶¶47-52, which only served to exacerbate rather than ameliorate S.M.'s disabilities, *ibid.* Contrary to Defendants' assertions, D. Mem. at 15, Plaintiffs alleged they repeatedly brought S.M.'s disabilities and the harassment and bullying treatment to Defendants' attention. The Complaint is filled with example after example of Plaintiffs' communications with Defendants about the abuse S.M. was receiving, literally pleading with Defendants for help. Defendants were supposed to be trained professionals. Yet in the face of S.M.'s continually being abused, Plaintiffs' pleas were met with attempts to justify Defendants' inaction by blaming S.M. for his own disabilities.

Here, no room for debate exists. Plaintiffs sufficiently alleged Defendants' liability under the ADA and Section 504 for denying and excluding S.M. from the services, programs, and benefits of FAPE to which S.M. was entitled and for discriminating against S.M. based on and because of his disabilities and their manifestations.

### III. PLAINTIFFS SUFFICIENTLY PLEADED RETALIATION UNDER THE ADA/504.

Defendants erroneously argue that the only protected activity Plaintiffs' engaged in was alleged in ¶¶98, 105. Plaintiffs' Complaint contains multiple additional paragraphs alleging Plaintiffs' complaining about the abuse S.M. was enduring and requesting help. ¶¶34-36, 37, 40, 45, 46, 60, 78, 98, 99, 105, 122, 138. Plaintiffs even called the police about the bullying and harassing incidents, and then spoke with the Principal and others from the school the following day. ¶37. In fact, Plaintiffs complained so much they were banned from the school. ¶¶99, 100, 106, 107. Complaining about the harassment and bullying treatment S.M. was receiving was sufficient "protected activity" under both the ADA and Section 504. *Ibid.*

Plaintiffs also properly alleged a causal connection between their complaints and being banned from the school. The District's retaliation occurred only after Plaintiffs' repeatedly complained. ¶¶99, 106. Defendants' argument that no time frame was alleged is specious. D-Mem. at 17. Defendants do not deny that they banned Plaintiff-parents. They simply claim that the date Plaintiff-parents were banned was missing from the Complaint. *Ibid.* This technical omission is not sufficient to warrant dismissal of their claim. Rule 8 requires only a short, plain statement of the claim. Fed. R. Civ. P. 8. Since Defendants were well aware of their own actions in banning Plaintiff-parents, they cannot argue that such allegations failed to advise them of the underlying facts sufficient to state a claim. Moreover, Plaintiffs are entitled to reasonable inferences from their allegations. The fact that the banning occurred following Plaintiff-parents' multiple complaints was sufficient to meet the standard for establishing retaliatory animus.[8]

---

[8] If for any reason, Plaintiffs allegations for this or any other claim are deemed insufficient by the Court, Plaintiffs respectfully request the opportunity to amend their complaint to remedy any determined deficiencies. See Fed.R.Civ.P. 15(a).

## IV. PLAINTIFFS SUFFICIENTLY PLEADED A HOSTILE LEARNING ENVIRONMENT CLAIM.

Although newer than its counterpart the hostile work environment, the hostile learning environment has been recognized by multiple courts. To state a hostile education environment claim based on disability, a plaintiff must plead that the individual has a disability and that the harassment was because of the disability. *See Yennard v. Herkimer BOCES,* 241 F. Supp. 3d 346, 365-366 (N.D.N.Y. 2017); *S.S. v. Eastern Kentucky Univ.,* 532 F.3d 445 (6th Cir. 2008); *Gaither v. Barron,* 924 F. Supp. 134, 137 (M.D. Ala. 1996). In addition, a plaintiff must plead "(l) the alleged harassment was so severe, pervasive, and objectively offensive that it deprived the plaintiff of access to the educational opportunities or benefits provided by the school; (2) the funding recipient had actual knowledge of the ... harassment; and (3) the funding recipient was deliberately indifferent to the harassment." *M v. Stamford Bd. of Educ.,* 2008 U.S. Dist. LEXIS 51933 at *23 (D. Conn. July 7, 2008); *see also Davis v. Monroe Cnty Bd. of Educ.,* 526 U.S. 629, 650 (1999). As described *infra.* S.M. faced repeated harassment and bullying that he was effectively denied access to the benefits of school. The individual Defendants and the District were well aware of the harassment and were deliberately indifferent.

Defendants are thus liable in "circumstances wherein the [funding] recipient exercises substantial control over both the harasser and the context in which the known harassment occurs," and defendants' liability is "satisfied most easily and most obviously when the offender is an agent of the recipient." *Davis,* 526 U.S. at 645. This is precisely the case here, where Defendants' harassment occurred during school hours and on school grounds, and the individual Defendants, together with other Saddle Rock employees, were acting as agents of the School District. Further, given the similarities in language found in

Title IX and Section 504 and the ADA *(compare* 20 U.S.C. § 168l (a) *with* 29 U.S.C. § 794(a) and 42 U.S.C. § 12132), courts have applied the same "deliberate indifference standard" in both disability-based and gender-based harassment claims. *See, e.g., S.S. v. Eastern Kentucky Univ.,* 532 F. 3d 445 (6th Cir. 2008); *Guckenberger v. Boston Univ.,* 957 F. Supp. 306, 313-15 (D. Mass. 1997). Plaintiffs pleaded S.M. was a qualified individual with a disability under Section 504 and the ADA. ¶6. Defendants were aware of the discriminatory harassment and bullying, which they failed to remedy, condoned by their indifference, and deliberately ignored.

Specifically, here, by virtue of all Plaintiff-parents' complaints regarding the ongoing harassment and bullying S.M. endured over an eighteen-month period, Plaintiffs sufficiently alleged that S.M.'s school environment was permeated with hostility and intimidation. *See, e.g.*, ¶¶34-36, 37, 40, 45, 46, 60, 78, 98, 99, 105, 122, 138. Moreover, Plaintiffs alleged multiple adverse consequences of the bullying and harassment S.M. suffered, including that he experienced enhanced dysregulation, and that his academic performance severely suffered, information Defendants were more than aware of, ¶¶9,11.

Defendants' efforts to spin the contents of extraneous emails into various allegations of alleged "facts" to supplement the Complaint should be rejected. Each of the emails cannot be read in isolation or even together. Rather, Plaintiffs' CSE process, which is not the subject of this Complaint, can only be considered after full and fair discovery occurs. The emails, therefore, cannot be utilized by the Court out of the context in which the communications occurred; nor should Defendants' erroneous implication – that because Craig Moskowitz had a law degree, he somehow altered his mindset from the father of a disabled child into someone more calculating – be considered. At this stage in the proceedings Plaintiffs are entitled to every reasonable positive

reading of the allegations. Defendants' efforts to attribute a more sinister or calculating personality to Craig Moskowitz as a lawyer is wholly unwarranted, speculative, and, as will ultimately be discovered, untrue.

## V. PLAINTIFFS SUFFICIENTLY PLEADED THEIR CONSTITUTIONAL CLAIMS

Plaintiffs' Complaint sufficiently pleaded multiple civil rights violations stemming from the harassment and bullying treatment S.M. suffered, as well as the discrimination he endured because of his disabilities.

The essence of a Section 1983 claim is deprivation of a federal right by state actors. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (citing *Monroe v. Pape*, 365 U.S. 167, 171 (1961)). The federal right allegedly denied in a student's excessive force claim is the Fourth Amendment right to be free from an unreasonable seizure by school officials. *See New Jersey v. T.L.O.*, 469 U.S. 325, 333 (1984) (Fourth Amendment prohibition against unreasonable searches applies to public school students); *EC ex rel. RC v. County of Suffolk*, 882 F. Supp. 2d 323, 345 (E.D.N.Y. 2012) (*T.L.O.* framework for assessing reasonableness of searches applies to seizures of students) (collecting cases), *aff'd*, 514 Fed. App'x 28, 30 (2d Cir. 2013).

To state a claim under § 1983, a plaintiff "must allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Rae v. County of Suffolk*, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010) (quoting *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999)). A showing of state action is required. *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008). State action can be demonstrated by alleging that the defendant "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Carlos v.*

*Santos*, 123 F.3d 61, 65 (2d Cir. 1997) (quoting *Kern v. City of Rochester*, 93 F.3d 38, 43 (2d Cir. 1996)).

The state action component cannot be disputed, as the school officials and employees named as defendants are state actors for purposes of Section 1983. *See EC*, 882 F. Supp.2d at 344.

A plaintiff also can allege that a private actor, like Defendant Slackman, undertook "state action" if the private actor engaged in a "plan, prearrangement, conspiracy, custom, or policy" in conjunction with the state actor, such that the private conduct can be fairly attributed to the state. *Rodriguez v. Winski*, 973 F. Supp. 2d 411, 422 (S.D.N.Y. 2013) (quotation marks and citations omitted).

"To establish joint action, a plaintiff must show that the private citizen and the state official shared a common unlawful goal; the true state actor and the jointly acting private party must agree to deprive the plaintiff of rights guaranteed by federal law." *Wong v. Yoo,* 649 F. Supp. 2d 34, 55–56 (E.D.N.Y.2009) (internal quotations omitted). Thus, a plaintiff must establish: "(1) an agreement between two or more state actors or a state actor and a private entity (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal, and causing some harm." *Peres v. Oceanside Union Free School District,* 426 F. Supp. 2d 15, 24 (E.D.N.Y. 2006) (citing *Ciambriello v. County of Nassau,* 292 F.3d 307, 324–25 (2d Cir. 2002)). Plaintiffs' Complaint meets this pleading standard.

Plaintiffs allege that Defendants collectively participated in, and/or had knowledge of and failed to prevent, the unwarranted spread-eagle restraint of an eleven year of child in mid-air, for over 10 minutes, while he was hysterically sobbing. Defendants collectively ignored the ongoing harm caused by the bullying and harassment perpetuated by S.M.'s schoolmates. Defendants,

collectively and individually, had a mandated responsibility to keep S.M. safe and free from discrimination. Defendants failures extend to each individual and the District alike.

## VI. DEFENDANTS CANNOT SUBSTANTIATE DISMISSAL OF PLAINTIFFS' FOURTH AMENDMENT CLAIM BASED ON THE THEORY THAT THEIR CONDUCT WAS JUSTIFIED

Defendants argued that their ten-minute spread-eagle hold on S.M. was justified based on conduct Defendants factually added to the Complaint. D-Mem. at 25 (adding multiple, self-serving allegations purportedly justifying their egregious actions, *see* Exh. B, Suspension Letter). Other than "eloping," as a result of being threatened by Defendant Slackman, which Plaintiffs acknowledge, ¶47, none of the self-serving factually added justifications are admissible in this motion. Neither is the assertion that Plaintiffs did not respond to the Suspension Letter, another added assertion, D-Mem. at 26, admissible. Further, no negative presumptions or implications may be properly drawn from the fact that Plaintiffs did not respond in writing to the Suspension Letter.

Here, what happened *prior* to the 10-minute spread eagle hold can only be resolved through fact-intensive discovery. Until then, quite simply, Defendants cannot add their own facts to the Complaint – either within their motion to dismiss memorandum or by supplying self-serving affidavits or by supplying emails, the context of which is disputed – in an effort to justify their conduct or substantiate their theory of the case. Defendants' motion submissions attempt all three prohibited defense tactics in their effort to dismiss Plaintiffs' Complaint. This Court should not allow these prohibited defense tactics to succeed and must ignore Defendants' memorandum arguments that interweaves added facts to their legal arguments. Most importantly, no basis exists to convert this case to one seeking summary judgment, as such a course of action, would severely prejudice Plaintiffs' rights to discovery and a full and fair opportunity to obtain the

necessary evidence to prosecute their action.

### VII. PLAINTIFFS SUFFICIENTLY PLEADED PROCEDURAL AND SUBSTANTIVE DUE PROCESS CLAIMS

#### A. A Procedural Due Process claim was sufficiently pleaded

Plaintiffs assert a procedural due process violation for two reasons: first, Plaintiffs were denied a hearing to explain the basis for S.M.'s suspension; second, Plaintiffs were denied both a plan and an evaluation for a Section 504 accommodation.

In order to prevail on a Fourteenth Amendment procedural due process claim pursuant to 42 U.S.C. § 1983, "the plaintiff must show (1) that he possessed a protected liberty or property interest; and (2) that he was deprived of that interest without due process." *Rehman v. State Univ. of N.Y. at Stony Brook*, 596 F. Supp. 2d 643, 656 (E.D.N.Y. 2009) (citing *McMenemy v. City of Rochester*, 241 F.3d 279, 285-86 (2d Cir. 2001)). "Property rights arise from "'an independent source such as state law," [with] federal constitutional law determin[ing] whether that interest rises to the level of a "legitimate claim of entitlement" protected by the Due Process Clause.'" *Pichen v. City of Auburn, N.Y.*, 728 F. Supp. 2d 192, 198 (N.D.N.Y. 2010) (quotation and other citation omitted). The essential principle of procedural due process is that notice and an opportunity for a hearing should precede the deprivation of life, liberty, or property. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (citation omitted). If, however, "[w]here there is a meaningful post deprivation remedy, there is no due process violation." *Gudema v. Nassau County*, 163 F.3d 717, 724 (2d Cir. 1998) (citation omitted). Rights related to the "upbringing of children are among associational rights [the Supreme] Court has long ranked as of basic importance in our society, ... rights sheltered by the Fourteenth Amendment against the State's unwarranted usurpation, disregard or disrespect." *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir. 1999) (quoting *M.L.B. v. S.L.J.*, 519 U.S. 102, 116, 117 S. Ct. 555 (1996)). The

Supreme Court has recognized that parents have a "constitutionally protected liberty interest in the care, custody, and management of their children," *id* (collecting cases). Moreover, the Second Circuit has noted that "'[c]hildren have a parallel constitutionally protected liberty interest in not being dislocated from the emotional attachments that derive from the intimacy of daily family association.'" *Southerland v. City of New York*, 680 F.3d 127, 142 (2d Cir. 2011) (quoting *Kia P. v. McIntyre*, 235 F.3d 749, 759 (2d Cir. 2000)).

Generally, procedural due process requires a hearing prior to depriving a parent of the care, custody, or management of their children without their consent, *id.* at 149 (quoting *Nicholson v. Scoppetta*, 344 F.3d 154, 171 (2d Cir. 2003)), or a prompt post-deprivation hearing if the child is removed under emergency circumstances, *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 215 (S.D.N.Y. 2013) (citing *Velez v. Reynolds*, 325 F. Supp. 2d 293, 303 (S.D.N.Y. 2004)), or where the deprivation occurs at a time when the child is already in the custody of the State. *Kia P.*, 235 F.3d at 760 (citing *Gottlieb v. Cty. of Orange*, 84 F.3d 511, 520 (2d Cir. 1996)).

> To determine whether there have been sufficient procedural protections before an individual is deprived of a liberty interest, courts rely on the test stated in *Mathews v. Eldridge*, assessing: 1) 'the private interest that will be affected by the official action;' 2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;' and 3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'"

*Graham v. City of New York*, 869 F. Supp. 2d 337, 350 (E.D.N.Y. 2012) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893 (1976)).

Here, Plaintiff S.M. was involuntarily deprived of his freedom by the Defendants and subjected to unwarranted restraint. Following that action, no hearing or proceeding was

reasonably permitted to Plaintiff-parents to explain the basis for the restraint or the punishment of suspension, which deprived S.M. of two days of school.

Plaintiffs were also deprived of a timely evaluation of S.M. to determine his need for a Section 504 plan. Defendants had a responsibility to observe and evaluate S.M. for this purpose, particularly given the bullying and harassment he suffered, and the purported rationale Defendants offered to Plaintiff-parents – that S.M.'s behavior caused these incidents. Were that the case, the Defendants had an ongoing responsibility to offer a Section 504 plan to address the observed behaviors allegedly contributing to the abuse he was receiving. Defendants failed to intervene, investigate, or remedy this harassment and bullying S.M. was continually subjected to and by their inaction perpetuated his abuse.

## B. __Substantive Due Process claim was sufficiently pleaded.__

Plaintiffs pleaded a substantive due process claim in the alternative to Plaintiffs' Fourth Amendment claim.

A violation of substantive due process rights requires that the state action's conduct in question be "'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Okin v. Vill. of Cornwall–on–Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir. 2009) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8, 118 S. Ct. 1708 (1998)). Courts apply a "deliberate indifference" standard, which requires demonstration of a "willful disregard" of the "obvious risks," "serious implications," and "likelihood" of harm. *Id.* at 432. To prevail on a substantive due process claim, a plaintiff must prove that the conduct at issue was so extreme or egregious that it is fairly viewed as so "'brutal' and 'offensive to human dignity' " that it shocks the conscience. *Yap v. Oceanside Union Free Sch. Dist.,* 303 F. Supp. 2d 284, 296 (E.D.N.Y. 2004) (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 n. 6 (2d Cir.1973)). Thus, substantive due process "protects individuals against government action that is arbitrary,

35

conscience shocking, or oppressive in a constitutional sense, but not against government action that is 'incorrect or ill-advised.'" *Lowrance v. Achtyl,* 20 F.3d 529, 537 (2d Cir.1994) (internal citations omitted).

"The Supreme Court has stated that not all constitutional claims relating to physically abusive conduct arise under either the Fourth or Eighth Amendments, but 'if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'" *Bisignano v. Harrison Central Sch. Dist.,* 113 F. Supp. 2d 591, 598 (S.D.N.Y. 2000) (quoting *United States v. Lanier,* 520 U.S. 259, 272, 117 S. Ct. 1219 (1997)).

In *Kurilla v. Callahan,* 68 F. Supp. 2d 556, 557 (M.D.Pa.1999), the court considered whether a teacher's use of momentary force in angrily grabbing a student, resulting in bruising, should be analyzed under the Fourth Amendment's standard of reasonableness or under the Fourteenth Amendment's Due Process "shocks the conscience" standard. It held that "the momentary use of physical force by a teacher in reaction to a disruptive or unruly student does not effect a "seizure" of the student under the Fourth Amendment" and, therefore, the shock the conscience due process standard was applicable to the facts of that case. *Id.* at 563. *See also Metzger ex rel. Metzger v. Osbeck,* 841 F.2d 518, 520 (3d Cir.1988) ("A decision to discipline a student, if accomplished through excessive force and appreciable physical pain, may constitute an invasion of the child's Fifth Amendment liberty interest in his personal security and a violation of substantive due process prohibited by the Fourteenth Amendment.").

Here, the April 1, 2019 incident is sufficiently pleaded as a "shock the conscious" occurrence and constituted an unconstitutional invasion of his liberty interest in violation of the

Fourteenth Amendment.

### VIII.  PLAINTIFFS SUFFICIENTLY PLEADED
### AN EQUAL PROTECTION CLAIM

A plaintiff can prevail on an equal protection claim against school officials based on deliberate indifference to invidious student-on-student harassment. *See Gant*, 195 F.3d at 140. To succeed on a § 1983 equal protection claim asserting student-on-student harassment, plaintiff must prove: "(1) that the child in question was in fact harassed by other students based on [membership in a protected group], (2) that such disability-based harassment was actually known to the defendant school official, and (3) that the defendant's response to such harassment was so clearly unreasonable in light of the known circumstances as to give rise to a reasonable inference that the defendant himself intended for the harassment to occur," *see also Gant*, 195 F.3d at 140 (finding there was sufficient evidence that school officials acted unreasonably by not conducting a full investigation into a racial harassment incident).

A school's responsibility to conduct a full investigation of disability related harassment incidents – particularly given the ongoing pervasive nature of the bullying and harassing conduct was entirely unreasonable such that by Defendants' failures, they discriminated against S.M. based on his disabilities.

### IX.  MUNICIPAL LIABILITY IS PLAUSIBLY PLEADED.

A municipality may not be held liable under a *respondeat superior* theory of liability for the acts of its employees. *Monell v. Dep't of Social Services*, 436 U.S. 658, 691 (2d Cir. 2003). Rather, "[d]emonstrating that the municipality itself caused or is implicated in the constitutional violation is the touchstone of establishing that a municipality can be held liable for unconstitutional actions taken by municipal employees." *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 125 (2d Cir. 2004). This is typically done by showing that the alleged

unconstitutional actions resulted from an official policy, custom, or practice of the municipality. *Monell*, 436 U.S. at 691. The policy or custom requirement can be satisfied where the municipality "is faced with a pattern of misconduct and does nothing, compelling the conclusion that [it] has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007). Thus, "where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice, that acquiescence may be properly thought of as a city policy or custom that is actionable under § 1983." *Amnesty*, 361 F.3d at 126 (internal citation and quotation omitted).

The District Defendants are liable because, "When an official has final authority over significant matters involving the exercise of discretion, the choices he makes represent government policy." *Nagle v. Marron*, 663 F.3d 100, 116 (2d Cir. 2011) (internal quotation marks omitted). Accordingly, "'municipal liability [under § 1983] may be imposed for a single decision by municipal policymakers.'" Id. (quoting *Pembaur*, 475 U.S. at 480, 106 S. Ct. 1292). These principles notwithstanding, courts in the Second Circuit are split as to whether a principal may qualify as a final policymaker for purposes of *Monell* liability. *Dressler v. N.Y.C. Dep't of Educ.,* No. 10–CV–3769, 2012 WL 1038600, at *18 (S.D.N.Y. Mar. 29, 2012) (noting that "district court decisions in this Circuit have disagreed on whether a principal is a final policymaker"). Plaintiffs contend that "a public school principal may be a final policymaker where the harm that befell the plaintiff was under the principal's control." *Zambrano– Lamhaouhi v. N.Y.C. Bd. of Educ.,* 866 F. Supp. 2d 147, 175 (E.D.N.Y. 2011); *Marino v. Chester Union Free Sch. Dist.,* 859 F. Supp. 2d 566, 569 (S.D.N.Y. 2012).

Here, Plaintiffs contend that the principal Defendant Bradley was directly or indirectly

responsible for the failure of the Defendant District to timely and properly evaluate S.M. for a Section 504 accommodation. Further, Defendants were participants in failure of the District to adequately respond to the ongoing harassment and bullying they were repeatedly advised by Plaintiff parents was occurring in their school. Their failures to investigate, evaluate, and remedy the hostile educational environment renders them legally responsible for the harm that S.M. suffered.

Inadequate training or supervision of municipal employees can establish deliberate indifference to the rights of those with whom those employees interact. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). A three-part test applies to such claims: First, the plaintiff must show that a policymaker knows "to a moral certainty" that her employees will confront a given situation.... Thus, a policymaker does not exhibit deliberate indifference by failing to train employees for rare or unforeseen events. Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation.... [Third], the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights. *Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir. 1992). Finally, regardless of the policy theory advanced, plaintiffs must prove a direct causal link between the policy and the alleged constitutional violation. *Id.*, 498 US 378 at 385.

Here, Defendants are under a legal duty to evaluate bullying and harassing conduct to determine whether discrimination is also occurring. *See* U.S. Department of Education, Dear Colleague Letter, October 26, 2010, *supra*, advising school districts of the likelihood that disabled children have an increased likelihood of being bullied or harassed as a result of, or because of the manifestations of, their disabilities.

## X.   THE INDIVIDUAL DEFENDANTS ARE NOT
## ENTITLED TO QUALIFIED IMMUNITY

Courts in this Circuit have held that "the right not to be subjected to disability discrimination has long been clearly established," and have denied defendants qualified immunity on that basis. *Coleman v. Town of Old Saybrook,* No. 03 Civ. 01275, 2004 WL 936174 at *4 (D. Conn. Apr. 28, 2004). Indeed, because the Section 504 prohibition against disability discrimination is clearly established, it is not objectively reasonable for Brown to "disciplin[e]the plaintiff[s] for behavior related to [their] disabilit[ies]" in violation of their statutory rights. *Butler v.* S. *Glens Falls Cent. Sch. Dist.,* 106 F. Supp. 2d 414, 421- 22 (N.D.N.Y. 2000) (holding that defendants were not entitled to qualified immunity on a Section 504 claim because statute clearly established a right to be free from discriminatory discipline).

Critically, the Second Circuit has held that qualified immunity is an affirmative defense that "[u]sually... cannot support the grant of a [Rule] 12(b)(6) motion." *McKenna v. Wright,* 386 F.3d 432, 434-35 (2d Cir. 2004) (rejecting qualified immunity defense in a motion to dismiss where defendants failed to show beyond a doubt that plaintiffs detailed, 29-page amended complaint could give rise to no set of facts which would entitle plaintiff to relief). *See Castro v. United States,* 34 F.3d 106, 112 (2d Cir. 1994); *Keitt v. New York City,* 882 F. Supp. 2d 412, 448 (S.D.N.Y. 2011). The individual Defendants surely cannot assert a defense of qualified immunity, given the extensive claims against them in Plaintiffs' 219-paragraph Complaint, and this Court should permit Plaintiffs to proceed on their claims under Section 1983. This is especially true given that Plaintiffs have not yet had the benefit of full discovery, especially discovery regarding the individual Defendants' claims of

immunity.

### XI.  PLAINTIFFS' STATE LAW CLAIMS
#### ARE SUFFICIENTLY PLEADED

#### A.  False Imprisonment is sufficiently pleaded

"A plaintiff may bring an action for false arrest under state tort law or pursuant to 42 U.S.C. § 1983 based on unreasonable seizure in violation of the Fourth Amendment." *Kilburn v. Village of Saranac Lake,* No. 08 Civ. 0367, 2010 WL 1235576, at *3 (N.D.N.Y. Mar. 31, 2010). "In New York, the tort of false arrest is synonymous with that of false imprisonment." *Posr v. Doherty,* 944 F.2d 91, 96 (2d Cir. 1991) (citing *Jacques v. Sears, Roebuck & Co.,* 30 N.Y.2d 466, 334 N.Y.S.2d 632 (1972)). "The elements of the state and federal claims are substantially the same." *Kilburn,* 2010 WL 1235576, at *3.

To demonstrate a false arrest claim under New York law, plaintiff must show: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir. 1994).

Each of these elements is established by the Complaint at issue.

#### B.  The IIED claim is sufficiently pleaded.

To state a claim for IIED under New York law, a Plaintiff must show "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Rich v. Fox News Network, LLC*, 322 F. Supp. 3d 487, 498 (S.D.N.Y. 2018) (quoting *Friedman v. Self Help Cmty. Servs., Inc.*, 647 F. App'x 44, 47 (2d Cir. 2016)). "To form the basis of an IIED claim, the conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized society.' " *Rich*, 322 F. Supp. 3d at 498 (quoting *Howell v. New York Post Co.*, 81 N.Y.2d 115 (1993)).

Although difficult to satisfy, the April 1 incident is sufficient to meet this "outrageous" standard.

### C. <u>The NIED claim is sufficiently pleaded.</u>

"A claim for negligent infliction of emotional distress under New York law requires showing a breach of a duty of care resulting directly in emotional harm ... even though no physical injury occurred, as long as the mental injury [is] a direct, rather than a consequential, result of the breach, and the claim ... possess[es] some guarantee of genuineness." *Royce Corley et al. v. Cyrus R. Vance, Jr. et al.*, 2019 WL 3841939, at *8 (S.D.N.Y. Aug. 15, 2019) (quoting *Mortimer v. City of New York*, 2018 WL 1605982, at *27 (S.D.N.Y. Mar. 29, 2018)) (alterations in original).

Although here slight physical injury occurred, the significant impetus to Plaintiffs' claim is the resultant emotional injuries suffered by the Plaintiffs as a result of the ongoing abuse S.M. experienced. Plaintiffs complaint adequately pleads these claims.

### D. <u>Negligent Training and Supervision is sufficiently pleaded</u>

Under New York law, a plaintiff must establish three elements to prevail on a negligence claim: (1) that the defendant owed the plaintiff a duty of care; (2) that the defendant breached that duty; and (3) as a result of the breach, the plaintiff suffered damages. *See Pasternack v. Lab. Corp. of Am.*, 892 F. Supp. 2d 540, 546-47 (S.D.N.Y. 2012) (citing *Farash v. Cont'l Airlines, Inc.*, 574 F. Supp. 356, 367 (S.D.N.Y. 2008)). A claim for negligent hiring, supervision, or retention, "in addition to the standard elements of negligence," requires "a plaintiff [to] show: (1) that the tortfeasor and the defendant were in an employee-employer relationship; (2) that the

employer 'knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels.' " *Ehrens v. Lutheran Church*, 38 F.3d 232, 235 (2d Cir. 2004) (quoting *Kenneth R. v. Roman Catholic Diocese of Brooklyn*, 654 N.Y.S.2d 791, 229 A.D.2d 159, 161 (2d Dep't 1997)). "A cause of action for negligent hiring or retention requires allegations that the employer ... failed to investigate a prospective employee notwithstanding knowledge of the facts that would lead a reasonably prudent person to investigate that prospective employee." *Richardson v. City of N.Y.*, No. 04-CV-5314, 2006 WL 3771115, *13 (S.D.N.Y. Dec. 21, 2006) (internal quotation and alteration omitted).

Here, Plaintiffs adequately pleaded an employer/employee relationship concerning Defendant Slackman. Alternatively, Defendant Slackman was a joint actor with the District Defendants. Under either theory, Plaintiffs complaint states a claim.

### E.  Assault and Battery is sufficiently pleaded

Plaintiffs adequately plead claims for civil assault and civil battery against Defendants. "Under New York law, 'an "assault" is an intentional placing of another person in fear of imminent harmful or offensive contact. A "battery" is an intentional wrongful physical contact with another person without consent.'" *Girden v. Sandals Int'l*, 262 F.3d 195, 203 (2d Cir. 2001) (quoting *United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993)) Further, "[i]n the civil context, the common meanings of 'assault' and 'battery' subsume all forms of tortious menacing and unwanted touching." *Girden*, 262 F.3d at 203. (quoting *United Nat'l Ins. Co.*, 994 F.2d at 108).

Here, Plaintiffs complaint repeatedly makes clear, S.M. was the victim of harassment, bullying, and ultimately outrageous treatment. *See Wong v. Mangone*, 450 F. App'x 27, 30 (2d

Cir. 2011) (finding that plaintiff produced enough evidence for a reasonable fact-finder to find that defendant violated New York State laws prohibiting assault and battery, which are clearly intended to protect the security of persons and property).

### F. Punitive Damages against individual Defendants are warranted

Municipalities in their official capacity are immune from punitive damages pursuant to § 1983; *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S. Ct. 2748 (1981), however, officials in their individual capacity are not. *See Smith v. Wade,* 461 U.S. 30, 103 S. Ct. 1625 (1983). Accordingly, "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Id.* at 56.

Unlike in cases of fraud where plaintiffs must "allege facts that give rise to a strong inference of fraudulent intent" and may not base their claim "on speculation and conclusory allegations," *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir. 1994), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

### G. Defendant Slackman individual liability is established.

Although 42 U.S.C. § 1983 basically seeks "to deter *state* actors from using the badge of their authority to deprive individuals of their federally guaranteed rights," it may also impose liability upon a private individual. *Wyatt v. Cole,* 504 U.S. 158, 161–62, 112 S. Ct. 1827 (1992). "In order for an individual to be liable under § 1983, the plaintiff must demonstrate that the defendant is personally involved in the alleged constitutional violation. Personal involvement can mean either (1) direct participation, (2) failure to remedy the wrong after learning of it, (3)

creation of a policy or custom under which unconstitutional practices occurred, or (4) gross negligence in managing subordinates." *Dawson v. Cty. of Westchester,* 351 F. Supp. 2d 176, 196 (S.D.N.Y. 2004) (citing *Zappala v. Albicelli,* 980 F. Supp. 635, 639–40 (N.D.N.Y. 1997)).

### H. **Defendant Slackman Alleges she is not involved in pre-April 1 events**

Such an allegations, while adding information to the facts, is premature. Discovery has not yet occurred.

### XII. **PLAINTIFFS' REQUEST TO AMEND SHOULD BE GRANTED**

If the Court grants Defendants' motion in whole or in part, Plaintiffs respectfully request that this Court grant them leave to amend their Complaint pursuant to Rule l5(a) of the Federal Rules of Civil Procedure. *See Loreley Financing (Jersey) No. 3 v. Wells Fargo,* 797 F.3d 160, 189-190 (2d Cir. 2015) (granting leave to amend when request to amend raised at motion to dismiss stage). Leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2); the Federal Rules of Civil Procedure favor resolution of cases on their merits. *See Foman v. Davis*, 371 U.S. 178, 181–82 (1962); *see also Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 550 (2010) (observing that Rule 15 in particular expresses this preference). The Supreme Court in *Foman* indicated that, in the absence of any apparent reason (*e.g.*, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by previously allowed amendments, undue prejudice to the opposing party, futility), leave to amend should be freely given, as Rule 15 requires. 371 U.S. at 182.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Defendants' Motions to Dismiss be denied in their entirety.

November 18, 2020
Guilford, CT

Respectfully submitted,

_____/s/_____
Laura D. Barbieri