UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

CRAIG MOSKOWITZ and BARBARA MOSKOWITZ, each on their own behalf, and as parents on behalf of their minor child, S.M.,

Docket No.: 20-cv-1659 (KAM) (SIL)

Plaintiffs,

-against-

GREAT NECK UNION FREE SCHOOL DISTRICT, THE BOARD OF EDUCATION OF THE GREAT NECK UNION FREE SCHOOL DISTRICT, DANA SLACKMAN, DR. GABRIELLA DUKE, KATE MUGNO, ROBIN TRICHON, DR. ANTHONY IACOVELLI, LUCIANA BRADLEY, and SARA GOLDBERG, each Individually, and in their respective official capacities,

Defendants.

-------------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW OF THE GREAT NECK DEFENDANTS IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT**

**MIRANDA SLONE SKLARIN VERVENIOTIS LLP**
Attorneys for Great Neck Defendants
The Esposito Building
240 Mineola Boulevard
Mineola, New York 11501
(516) 741-7676

Of Counsel
Michael A. Miranda
Allyson N. Brown

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................. iii

PRELIMINARY STATEMENT .............................................................................................1

POINT I
THE COURT MAY RELY UPON THE DISTRICT'S DOCUMENTARY EVIDENCE
THAT CONTRADICT THE ALLEGATIONS IN THE COMPLAINT.................................2

POINT II
EXHAUSTION OF THE IDEA ADMINISTRATIVE REQUIREMENTS IS REQUIRED
FOR PLAINTIFFS' EDUCATION-RELATED CLAIMS ASSERTED UNDER THE ADA
AND SECTION 504 ............................................................................................................4

POINT III
PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE PROCEDURAL AND SUBSTANTIVE
CONSTITUTIONAL DUE PROCESS.................................................................................6

A. Procedural Due Process ...................................................................................6

B. Substantive Due Process..................................................................................7

POINT IV
PLAINTIFFS CANNOT PLAUSIBLY STATE A DISCRIMINATION CLAIM UNDER
SECTION 504 AND THE ADA...........................................................................................8

POINT V
PLAINTIFFS FAIL TO SUFFICIENTLY PLEAD RETALIATION UNDER SECTION 504
AND THE ADA ................................................................................................................10

POINT VI
PLAINTIFFS CAN NOT SUFFICIENTLY ASSERT A HOSTILE LEARNING
ENVIRONMENT .............................................................................................................11

POINT VII
PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE MUNICIPAL LIABILITY UNDER 42
U.S.C. SECTION 1983 ....................................................................................................12

POINT VIII
PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE A FOURTH AMENDMENT VIOLATION
.........................................................................................................................................13

POINT IX
PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE AN EQUAL PROTECTION VIOLATION
.........................................................................................................................................14

POINT X
    THE INDIVIDUAL GREAT NECK DEFENDANTS ARE ENTITLED TO QUALIFIED
    IMMUNITY ...................................................................................................................15

CONCLUSION.....................................................................................................................15

**Cases**

Agosto v. New York City Dept of Ed., No. 19-CV-2738, 2020 WL 7086060, at *7-10 (2d Cir. Dec. 4, 2020)................................................................................................................................13

Amnesty America v. Town of West Hartford, 361 F.3d 113, 128-130 (2d Cir. 2004) ...............13

Bisignano v. Harrison Central School Dist., 113 F.Supp.2d 591, 597 (S.D.N.Y. 2000)..............14

Blue v. Koren, 72 F.3d 1075, 1083 (2d Cir. 1995)........................................................................15

Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993) ...............................................3

C.L. v. Scarsdale Union Free School Dist., 744 F.3d 826, 840-41 (2d Cir. 2014).........................8

Cain v. Mercy College, 20-CV-2262, 2020 WL 4194637, at * (S.D.N.Y. July 20, 2020)...........11

Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)...............................................2

Concepcion v. City of New York, 15-CV-4844, 2019 WL 1994485, at *7-8 (E.D.N.Y. May 6, 2019)..............................................................................................................................................8

Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000)....................................................10

D.C. ex rel. E.B. v. New York City Dept. of Educ., 950 F.Supp.2d 494, 515 (S.D.N.Y. 2013) ....9

Diaz-Fonseca v. Puerto Rico, 451 F.3d 13, 31 (1st Cir. 2006) ......................................................6

DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010)..............................................2

EC ex rel. RC v. County of Suffolk, 882 F.Supp.2d 323, 348, 350-351 (E.D.N.Y. 2012)...........14

Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006).....................................................................4

Fry v. Napoleon, 137 S. Ct. 743, 754(2017) ................................................................................4

G.M v. Lincoln Cty. Sch. Dist., No. 16 Civ. 01739, 2017 WL 2804996, at *4 (D. Or. Apr. 21, 2017)..............................................................................................................................................5

Gabel ex rel. L.G. v. Board of Educ. of Hyde Park Central School Dist., (S.D.N.Y. 2005) ..........8

Harris-Thomson v. Riverhead Charter Sch., No. CV-14-5340, 2016 WL 11272084 (E.D.N.Y. Feb. 23, 2016) .............................................................................................................................3

Honig v. Doe, 484 U.S. 305, 326-27 (1988) .................................................................................6

J.E. ex rel. Edwards v. Ctr. Moriches Union Free Sch. Dist., 898 F. Supp. 2d 516, 542 (E.D.N.Y. 2012)..............................................................................................................................................7

J.L. v. Eastern Suffolk Boces, 2018 WL 1882847, at *2 (E.D.N.Y., April 19, 2018) ...................8

JS v. Attica Cent. Schs., 386 F.3d 107, 113-15 (2d Cir. 2004)......................................................6

K.M. ex rel. D.G. v. Hyde Park Cent. School Dist., 381 F. Supp. 2d 343, 360-361 (S.D.N.Y. 2005)..............................................................................................................................................9

Kelly v. Shapiro & Assocs., 716 F.3d 10, 14 (2d Cir. 2013) ......................................................10

Lombardi v. Whitman, 485 F.3d 73, 81 (2d Cir. 2007).................................................................8

McLennon v. New York City, No. 13-CV-128 (KAM) (SMG), 2015 WL 1475819, at *4 (E.D.N.Y. Mar. 31, 2015) .............................................................................................................3

People v. Cordero, 257 A.D.2d 372, 373-74 (1st Dep't 1999) ....................................................15

Reynolds v. Giuliani, 506 F.3d 183, 193 (2d Cir. 2007) .............................................................12

Smith ex rel. Smith v. Half Hollow Hills Cent. School Dist., 298 F.3d 168, 172-73 (2d Cir. 2002) ...................................................................................................................................................8

Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 788-91 (2d Cir. 2002) .............................................6

TC v. Valley Cent. School Dist., 777 F.Supp.2d 577, 598 (S.D.N.Y. 2011)...............................13

Vassallo v. Lando, 591 F.Supp.2d 172, 198 (E.D.N.Y. 2008)....................................................15

**<u>Statutes</u>**

42 U.S.C. § 1983.................................................................................................................13

## PRELIMINARY STATEMENT

This brief is submitted on behalf of the Great Neck School District Defendants (the "District") in further support of our motion to dismiss. The allegations at bar, at best, set forth a negligence claim concerning the April 1st emergency, which plaintiffs acknowledge was a crisis situation in which S.M. was attempting to escape the school building. (Ex A[1], complaint, ¶¶47-48.) All of the state law claims, including negligence, must now be dismissed by virtue of the State court's recent decision denying leave to file late notices of claim (Reply decl, Ex. I). We submit that upon this Court's scrutiny of the remaining Federal claims--which all require intent and/or deliberate indifference--none actually state a claim against the backdrop of the plaintiffs' own statements about the District's actual treatment of their child.

In this regard, the plaintiffs' own writings, including acknowledgement of the Principal's immediate explanation in writing of the incident of April 1st, are documentary evidence which can be used to contradict the factual allegations of the Complaint. Plaintiffs do not dispute the "integral" to the complaint rule; do not dispute the authenticity of the documents; but yet of course claim that this court should not consider these damaging documents largely written by their own client. We submit that if plaintiffs had considered these *before* drafting the complaint, this court and defendants would have been dealing with a different pleading.

Furthermore, Plaintiffs' argument that they do not specifically challenge any aspect of the student-plaintiff's disability services, such as Committee on Special Education (CSE) and IEP, are belied by their very own allegations. Indeed, Plaintiffs dedicate two (2) entire sections of their Complaint on these factual allegations. Ex. A 72-80, 86, 93, 116, 159. Thus, they cannot escape the IDEA's exhaustion requirements for those claims as they are clearly challenged by the

---

[1] All references to Exhibits are to the Miranda moving declaration, unless noted otherwise.

complaint—despite our adversary's current revisionist stance. Accordingly, Plaintiffs' Complaint cannot survive a motion to dismiss under 12(b)(6).

**POINT I**
**THE COURT MAY RELY UPON THE DISTRICT'S DOCUMENTARY EVIDENCE THAT CONTRADICT THE ALLEGATIONS IN THE COMPLAINT**

Plaintiffs had knowledge of, was in possession of, and relied upon (or should have) the District's documentary evidence as they wrote or received them, but have presented the facts in a misleading fashion. Indeed, even Plaintiff concedes that "if a plaintiff relies upon an extrinsic document, but presents the document's facts in a misleading fashion, a defendant is free to rely upon that document in its 12(b)(6) motion." (Opp, p. 8.) In addition, even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).Certainly, the complaint's FAPE and discrimination claims, as well as the 4th Amendment claims and due process claims, directly concern Ex. B and C, which consist of the principal's immediate explanation of the incident and the plaintiff-father's response. Certainly, there can be no dispute that plaintiffs had "actual notice" of the documents we are asking this court to consider as they wrote them. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

Specifically, as to Plaintiff's allegations at paragraph 51 that the District provided no reasonable justification for S.M.'s suspension, Principal Bradley's April 2, 2019 letter explains that on April 1st, plaintiff-S.M. deliberately evaded District personnel, verbally and physically assaulted District personnel, and posed a threat to persons within his vicinity, necessitating that a hold be used on S.M. to subdue him. S.M was thus suspended. The Plaintiff-father even signed off on receipt of this letter on April 2d. Ex. B.

After receipt of this substantive letter, the plaintiff-father's email of April 3d (Ex. C) makes clear that not only was he was well aware of the District's efforts to schedule meetings to explain the incident and the reasons for S.M.'s suspension, but that he appreciated how "lucky" the plaintiffs were to have S.M. at Great Neck since it was "so outstanding". At no point does he criticize the handling of this crisis incident or suggest he was going to contest the suspension— which he never did.

Nor was this exhibit an outlier as the parent-Plaintiffs praised the District for their handling of S.M.'s educational needs at numerous points from 2018 through 2019, including acknowledging accommodations provided to him by the District--all of which rebut the allegations in the Complaint, including paragraphs 60 and 76 -- where Plaintiffs claim the District failed to provide a safe learning environment and to protect him from emotional abuse.  See also Ex. A, 37, 40, 53, 77, 127, 161, 193. Certainly, Plaintiffs had knowledge of these emails (Exs. D-G) prior to the commencement of this action and relied upon their terms in drafting the Complaint -- albeit asserting falsities that are in direct contravention of the subject emails' admissions.  Therefore, Plaintiffs had actual notice of the contents of this extrinsic documentation, which are integral to the Complaint and may be considered by the Court for its truth.[2]

Even if the Court declines to accept them as tru , the Court may nonetheless take judicial notice. Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993) (abrogated on other grounds by Chambers, supra).  Indeed, Plaintiff concedes that "this exception allows a court to

---

[2] Plaintiff's reliance on McLennon v. New York City, No. 13-CV-128 (KAM) (SMG), 2015 WL 1475819, at *4 (E.D.N.Y. Mar. 31, 2015), is incorrect. There the Court was explaining the standard for accepting the truth of statements made in public documents-- not documents produced by the Plaintiff himself.  Plaintiff misrepresents Harris-Thomson v. Riverhead Charter Sch., No. CV-14-5340, 2016 WL 11272084 (E.D.N.Y. Feb. 23, 2016) (report and recommendation) (adopted in full at 14-CV-5340 (JMA)(AYS) 2016 WL 4617207 (E.D.N.Y. Sept. 6, 2016) In granting the defendants' pre-answer motion to dismiss, the court considered some but not all of the extrinsic evidence.

consider … facts that 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" (Opp. p. 9.) While Plaintiffs attempt to downplay the admissions found in their own client's, a lawyer's, writings, they do not dispute the authenticity of the documents. Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006). Moreover, their relevance cannot be reasonably disputed, as they directly pertain to plaintiff-S.M.'s education, which is the subject of the complaint.

Thus, Plaintiffs' arguments that the emails strictly concern the CSE process and are not relevant are telling: to wit: plaintiff praised the CSE of the District, but attacks the educational process at bar? That is incongruous as the CSE is the District entity which sets educational policy and special education accommodations for the plaintiff-student. Great Neck Public Schools, Special Education and Pupil Services, https://www.greatneck.k12.ny.us/domain/100. Accordingly, the Court may consider the District's exhibits, which rebut the allegations in the Complaint.

## POINT II
## EXHAUSTION OF THE IDEA ADMINISTRATIVE REQUIREMENTS IS REQUIRED FOR PLAINTIFFS' EDUCATION-RELATED CLAIMS ASSERTED UNDER THE ADA AND SECTION 504

Plaintiffs contend that the Complaint centers solely on harassment, bullying, and discrimination, therefore not requiring exhaustion, and improperly rely on Fry for this assertion. Opp., pp. 13-14. Fry held the exhaustion rule hinges on whether a lawsuit seeks relief for the denial of FAPE, which this complaint does. Fry v. Napoleon, 137 S. Ct. 743, 754(2017). If the complaint contests the adequacy of FAPE in any way, the plaintiffs cannot escape exhaustion simply by also alleging other non-FAPE claims. Id. at 755 and 758.

At bar, Plaintiffs did not "merely mention" issues with S.M.'s education; rather, they dedicated two (2) sections of their Complaint to the denial of FAPE, including in their ADA claim.

(Ex A ¶¶ 72-80,86,93,116,159.) So too, Plaintiffs have relied upon the alleged denial of educational accommodations and FAPE to bolster their discrimination claims. (Ex. A, ¶¶93,116)

In this regard, Plaintiffs allege that Defendants failed to provide S.M. with a Section 504 behavioral plan; a Section 504 coordinator; and failed to convene a Section 504 meeting with respect to S.M.'s educational needs. (Ex. A, ¶¶ 72, 73) Thus, the gravamen of the Complaint concerns the denial of FAPE as it permeates the ADA/504 discrimination claims. It is inseparable from their discrimination claims as plaintiffs expressly allege that the failure to provide FAPE includes providing S.M. with a harassment-free education.( Ex. A, ¶77)

Plaintiffs' reliance on G.M v. Lincoln Cty. Sch. Dist. is misplaced. In that Oregon case, issues related to the student's FAPE appeared to be resolved. No. 16 Civ. 01739, 2017 WL 2804996, at *4 (D. Or. Apr. 21, 2017). The plaintiff alleged discrimination, not inadequate individualized educational services as at bar, and thus the Oregon Court held that his claims fell outside the IDEA.

Further, Plaintiffs' analysis of the "Fry Hypothetical Test" is unconvincing. Plaintiffs allege that exhaustion would only be required if an adult at the school could not press the same grievance, or if the plaintiff could not allege the same claim if the conduct alleged occurred at a public facility, such as a library. (Opp. p. 17) Here, the crux of Plaintiffs' claims concern a denial of educational services which amounted to S.M.'s behavior spiraling out of control, culminating in the April 1st incident. Plaintiffs not only contest the manner of S.M. being held in response to his concededly hyperactive behavior, but largely take issue with the overall manner in which the District handled S.M.'s social and behavioral impairments. (Ex. A. ¶¶ 16, 17, 19, 20, 24, 25.) Such educational-related grievances could not have been brought by an adult employee at the school-she would have called the police if held; nor could Plaintiffs allege these same claims with

a public library -- which would not be responsible for S.M.'s education and/or safety--which the educators at bar ensured by holding him for 10 minutes. (Ex. A, par. 163)

Further, Plaintiffs claim that their harm was systemic, and therefore immune from exhaustion. In Honig, the Court found that the state unilaterally excluded disabled children from the classroom for disruptive conduct arising out of their disabilities. Honig v. Doe, 484 U.S. 305, 326-27 (1988). The court further held, however, *that where a student possessed an immediate threat to safety of others, officials may temporarily suspend him.* First, the District does not have any similar system challenged at bar, and any issues Plaintiffs had with S.M.'s FAPE would have been resolved upon exhaustion of Plaintiffs' administrative remedies—which they failed to do. Second, S.M. posed an immediate threat to his own safety during the April 1st incident, which was a singular emergency event. As such, Honig does not support the proposition that "systemic" harm permits Plaintiffs to bypass exhaustion. Nor does Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 788-91 (2d Cir. 2002); see also JS v. Attica Cent. Schs., 386 F.3d 107, 113-15 (2d Cir. 2004). [also distinguishable as the Complaint is devoid of any allegations that the District's programs itself created harm beyond S.M.; only allegations as to S.M. are pled (Ex. A, ¶¶ 59-7.) Nor would exhaustion be futile as the IDEA process offers monetary relief against the District. See, e.g., Diaz-Fonseca v. Puerto Rico, 451 F.3d 13, 31 (1st Cir. 2006).

## POINT III
## PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE PROCEDURAL AND SUBSTANTIVE CONSTITUTIONAL DUE PROCESS

A. Procedural Due Process

Plaintiffs argue that the District violated their procedural due process rights by denying them a hearing to explain the basis for S.M.'s suspension. (Opp. p. 33.) Initially, Plaintiffs admittedly

failed to first seek relief via the existing state post-deprivation procedure: an Article 78 proceeding. J.E. ex rel. Edwards, 898 F.Supp.2d 516, 546 (E.D.N.Y. 2012).

Moreover, the documentary evidence -- which plaintiff wants this Court to ignore -- supports that the District promptly explained the reasoning for S.M.'s suspension -- that being his dangerous behavior -- and also afforded Plaintiffs the opportunity to be heard regarding the suspension. (Exs. B and C.) So too, the plaintiff-father, a lawyer, wrote to the Principal AFTER receipt of this suspension letter, praising the District! See Ex. C.[3]

Additionally, while Plaintiffs alleged that they were denied an evaluation under Section 504, they do not even allege that they ever requested such a plan. Indeed, the District provided S.M. with all reasonable accommodations related to his disabilities, such as providing him with access to an individualized education program (IEP) on account of his disabilities "in an effort to ensure that he received the educational learning and skills necessary for his educational and social advancement" (Ex. A, ¶ 32)—which gave him meaningful access to an education; and counseling from language pathologist, psychologists, and therapists. (Ex. A, ¶ 32).

Thus, Plaintiffs have failed to identify a deprivation of a property right as required to sustain a due process claim. J.E. ex rel. Edwards v. Ctr. Moriches Union Free Sch. Dist., 898 F. Supp. 2d 516, 542 (E.D.N.Y. 2012).

B. Substantive Due Process

Plaintiffs allege that the hold used on S.M. during the April 1st incident shocks the conscience, by amounting to a violation of substantive due process. (Opp, p. 35.) However, "In order to shock the conscience, official conduct must be outrageous and egregious under the

---

[3] Our adversary's suggestion that this was sarcastic is bizarre. Who starts an email with compliments and then does not criticize in the remainder of the document? Nor are counsel's self-serving characterization of any utility. What is significant is her failure to proffer an affidavit from her client-who can speak for himself as a lawyer.

circumstances; it must be truly brutal and offensive to human dignity." Lombardi v. Whitman, 485 F.3d 73, 81 (2d Cir. 2007).

At bar, Plaintiffs allege that holding S.M. by his arms and/or legs for 10 minutes, was egregious -- while also expressly admitting he was trying to "escape" and it was a "crisis" situation. (Ex A.,47-48,163). Plaintiffs also ignore caselaw we cite. See Smith ex rel. Smith v. Half Hollow Hills Cent. School Dist., 298 F.3d 168, 172-73 (2d Cir. 2002); see also Concepcion v. City of New York, 15-CV-4844, 2019 WL 1994485, at *7-8 (E.D.N.Y. May 6, 2019) [pushing student, causing him to fall, was insufficient]; J.L. v. Eastern Suffolk Boces, 2018 WL 1882847, at *2 (E.D.N.Y., April 19, 2018) [wrestling with student, causing nosebleed, was insufficient].

Accordingly, Plaintiffs fail to plausibly allege a substantive due process claim.

### POINT IV
### PLAINTIFFS CANNOT PLAUSIBLY STATE A DISCRIMINATION CLAIM UNDER SECTION 504 AND THE ADA

The core of plaintiffs' discrimination claims sound in FAPE—as they are asserting educational accommodations-which they could have cured by exhaustion. In this regard,plaintiffs cannot establish deliberate indifference on the part of the District under Section 504 where the crux of their argument is a denial of FAPE. See Gabel ex rel. L.G. v. Board of Educ. of Hyde Park Central School Dist., (S.D.N.Y. 2005)

We agree with plaintiffs that discrimination claims under 504/ADA require deliberate indifference. C.L. v. Scarsdale Union Free School Dist., 744 F.3d 826, 840-41 (2d Cir. 2014). However, Deliberate indifference requires Plaintiffs to show that the District was put on notice of, and completely failed to act with respect to pervasive, severe disability-based harassment that deprived a disabled student of access to the school's resources. See K.M. ex rel. D.G. v. Hyde Park Cent. School Dist., 381 F. Supp. 2d 343, 360-361 (S.D.N.Y. 2005); See also D.C. ex rel. E.B. v. New York City Dept. of Educ., 950 F.Supp.2d 494, 515 (S.D.N.Y. 2013)

Here, Plaintiffs claim that they informed the District that S.M. was being bullied, yet fail to acknowledge that none of these alleged reports conveyed to the District that S.M. was being **discriminated against** based upon his purported disabilities -- therefore failing to comply with the notice requirement so that the District could take corrective measures or ignore those complaints -- which is what they are required to do. (Ex. A, ¶¶ 11, 34, 35, 40, 43, 44;Opp, p. 22-24.) Moreover, Plaintiffs fail to establish that the District had no intentions of cooperating with their concerns regarding S.M., as even Plaintiffs concede that they were informed that the District's teachers and other staff would maintain a careful watch on S.M., signifying the District's efforts to ameliorate any alleged bullying. (Compl. ¶ 40.) This is amplified by the various laudatory emails plaintiffs sent regarding their work helping him improve SM 's social skills and body functions; and making a difference in his life.(Ex. D-G)

Further, Plaintiffs' allegation that the District removed S.M. from the classroom for reasons related to his disability, alone, does not arise to a cognizable claim for disability discrimination (Opp, p. 23)—as the District has the authority and obligation to prevent students from disrupting the classroom, regardless of whether or not they have a disability.

Thus, based on Plaintiffs' own allegations, there is no factual basis to support that the District was deliberately indifferent to S.M.'s rights or acted with bad faith or gross misjudgment.

Plaintiffs contend that the District denied S.M. services required by FAPE and his IEP, but also contradictorily allege that the District provided S.M. with special education and related services, including participating in the School's IEP in an integrated classroom teaching setting due to his behavioral impairments. (Ex. A ¶¶ 8, 10, 32, 33, 86, 93.) Plaintiffs further claim that District allegedly failed to provide hours of home-bound schooling and tutoring for S.M., though also conceding that the District actually provided S.M. with instruction along with other services agreed to in his most recent IEP. (Ex. A ¶¶ 78-80, 86.)

In continuing their distortion of the facts, Plaintiffs erroneously contend that we somehow admitted that Plaintiffs <u>sufficiently</u> alleged that they deprived S.M. of access to services by failing to provide a behavioral plan, and sufficiently alleged that they failed to provide sufficient homebound instructions and tutoring. (Opp. p. 23.) In no manner did the District admit that Plaintiffs <u>sufficiently</u> alleged those purported facts by outlining Plaintiff's allegations as part of the exhaustion defense.

Lastly, Plaintiffs allege that SM was denied accommodations, though fail to deny that they didn't actually <u>request</u> any accommodations. Therefore, the 504/ADA discrimination claims must be dismissed.

**POINT V**
**PLAINTIFFS FAIL TO SUFFICIENTLY PLEAD RETALIATION**
**UNDER SECTION 504 AND THE ADA**

Plaintiffs contend that they sufficiently engaged in a "protected activity" by complaining about the alleged harassment and bullying received by S.M and that there is a causal connection between the parent-Plaintiffs being banned from the school. (Opp p. 27) "Protected activity" refers to action taken to protest or oppose statutorily prohibited discrimination. <u>Cruz v. Coach Stores, Inc.</u>, 202 F.3d 560, 566 (2d Cir. 2000); <u>Kelly v. Shapiro & Assocs.</u>, 716 F.3d 10, 14 (2d Cir. 2013). At bar, the sole "protected activity" Plaintiffs allege is communicating their concerns about bullying of S.M. However, in so doing, during which time they never expressed any indication that S.M. was being discriminated against due to his disability in accord with this Circuit's requirements. (Compl., ¶¶ 98, 105.)

Simply expressing their concerns regarding S.M. is not by itself, an act by them to protest discrimination. Id. Moreover, simply believing an act to be discriminatory without saying so to the District does not equate to opposing discrimination. At best, Plaintiffs' alleged current <u>subjective</u> beliefs that the other student's actions towards S.M. was discriminatory is all that is alleged. Based

on the foregoing, Plaintiff's retaliation claim must be dismissed based on the lack of protected activity at bar.

## POINT VI
## PLAINTIFFS CAN NOT SUFFICIENTLY ASSERT A HOSTILE LEARNING ENVIRONMENT

For a recognizable hostile learning environment claim, the parties agree on the elements of a severe and pervasive environment was permeated with discriminatory intimidation to alter the conditions of [the learning environment], and (2) a deliberate indifference to the alleged knowledge on the part of the school. See e.g. Cain v. Mercy College, 20-CV-2262, 2020 WL 4194637, at * (S.D.N.Y. July 20, 2020).

Here, Plaintiffs fail to explain the extent and/or frequency of the alleged bullying to suggest that the school was "permeated with discriminatory intimidation." Rather, Plaintiffs repeat the same conclusory allegations as in the Complaint, that plaintiff-SM was subjected to repeated bullying over the course of 18 months. Plaintiffs' allegations as pled cannot be deemed sufficiently severe or pervasive or demonstrate deliberate indifference. Importantly, Plaintiffs have not alleged that S.M.'s learning environment was largely altered due to this purported bullying. Cain, supra. Indeed, Plaintiffs concede that S.M.'s own behavioral impediments, including "hyperactivity and dysregulated behavior", significantly altered his learning process. (Compl. ¶¶ 41, 42.) Furthermore, there is no sufficient basis to impute the conduct that created the alleged hostile environment to the District, as Plaintiffs do not allege that they conveyed to the District that the alleged bullying amounted to discriminatory behavior due to S.M.'s disability.

Tellingly, the plaintiff-father's own words expressing his satisfaction with the District's handling of S.M.'s educational environment belies Plaintiffs' allegations. (Exs. C, E, G). Accordingly, the hostile learning environment claim must be dismissed.

### POINT VII
### PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE MUNICIPAL LIABILITY UNDER 42 U.S.C. SECTION 1983

Plaintiffs allege that that the District is liable, but entirely miss the mark as they suggest that merely showing state action is enough. Plaintiffs do concede that in order to sustain a municipal liability claim under <u>Monell</u>, they must prove an official municipal policy.  (Opp., p. 37-38). However, Plaintiffs still do not identify any policy, custom, or practice of the District that could lead to a constitutional violation. Indeed, Plaintiffs merely repeat their SM-centric Section 504 accommodation and hostile environment claims.  Opp, p. 39. Plaintiffs neither point to a policy that led to these alleged harms, nor allege that the District has a practice of engaging in such actions. Instead, they cite inapposite cases.

In <u>Reynolds</u>, the Court actually held that plaintiff did <u>not</u> successfully allege a municipal liability claim, in part, because the plaintiff failed to prove that the alleged wrongful actions by the defendant was a "**deliberate choice** among various alternatives, rather than negligence or bureaucratic inaction." <u>Reynolds v. Giuliani</u>, 506 F.3d 183, 193 (2d Cir. 2007). At best, what plaintiffs may have alleged at bar is a negligence claim—albeit in an emergency crisis situation.

 Under their general failure to train theory, "plaintiffs not only must establish that the officials' purported failure to train occurred under circumstances that could constitute deliberate indifference, but also must identify a specific deficiency in the [defendants'] training program and establish that such deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation."  <u>Amnesty America v. Town of West Hartford</u>, 361 F.3d 113, 128-130  (2d Cir. 2004).  Plaintiffs have made no such showings as the Complaint does not allege (and the documentary evidence does not support) that the District Defendants made a conscious choice to utterly disregard S.M.'s educational needs or the rights of the parent-Plaintiffs. To the contrary, the plaintiffs' emails reflect satisfaction with the District's program as to S.M.(Ex. C-G)

Lastly as to Principal Bradley's allegedly being a policy maker, the Second Circuit recently rejected this theory. In <u>Agosto v. New York City Dept of Ed.</u>, the Circuit found that a school principal could not be held liable under a municipal liability theory as an official policymaker. No. 19-CV-2738, 2020 WL 7086060, at *7-10 (2d Cir. Dec. 4, 2020). The Court held that for a school official's actions to constitute official policy, they must be "responsible under state law for making policy in that area of the municipality's business." The Court found that the Plaintiff failed to point to any state authority indicating that a New York school principal had final "responsibility under state law for making policy." <u>Id.</u> at 7. Accordingly, as Principal Bradley does not possess such expansive authority for policymaking (and Plaintiffs fail to plead this fact), neither she nor the District can be held liable under this theory of municipal liability.

As such, a motion to dismiss for failure to state a cause of action under 42 U.S.C. § 1983 must be granted where the complaint fails to plead the existence of an official policy. <u>See</u> <u>TC v. Valley Cent. School Dist.</u>, 777 F.Supp.2d 577, 598 (S.D.N.Y. 2011)

## POINT VIII
## PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE A FOURTH AMENDMENT VIOLATION

Plaintiffs argue that the events that transpired on April 1st can only be resolved through "fact-intensive discovery." The problem is that plaintiffs have no competent witness to support their claims-particularly since the plaintiff-father only arrived at the conclusion of the incident. Courts have disposed of Fourth Amendment claims involving similar facts , prior any fact discovery, upon a finding that the physical actions taken by school personnel were (1) "justified at its inception" and (2) "reasonably related in scope to the circumstances which justified" the seizure in the first place." <u>Bisignano v. Harrison Central School Dist.</u>, 113 F.Supp.2d 591, 597 (S.D.N.Y. 2000); <u>EC ex rel. RC v. County of Suffolk</u>, 882 F.Supp.2d 323, 348, 350-351 (E.D.N.Y. 2012).

Here, the Defendants restrained SM for "10 minutes" in response to his admitted hysteria which would have likely caused harm to himself and those around him. (Ex A ¶¶ 163.) There was admittedly no physical harm. During the April 1st emergency, Plaintiff S.M. tried to escape from staff, and was very <u>aggressive in the form of hitting, head butting, kicking, pushing, ramming his head into the wall, and attempting to bite the District's staff members.</u> (Ex. B.) During this episode, S.M. even said to the District's consultant, Ms. Slackman, that <u>he was going to kill her.</u> (<u>Id.</u>) In their opposition, Plaintiffs claim that S.M.'s actions were due to his being threatened by Ms. Slackman, who was not employed by the District. In actuality, the real threat that day was S.M., not only to District staff and Slackman, but also to other students within the vicinity. Thus, the District was left with no choice other than to place S.M. in temporary holds until the admitted crisis abated. Ex A, 47-48.

## POINT IX
## PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE AN EQUAL PROTECTION VIOLATION

Plaintiffs maintain that the District was deliberately indifferent to other students harassing S.M. due to his disabilities. (Opp, p. 37.) Plaintiffs rely on <u>Gant ex rel. Gant v. Wallingford Bd. of Educ.</u> to support this proposition. However, that court held that a fact finder could not conclude that the teacher was deliberately indifferent to racial discrimination/harassment, where the student merely complained to the teacher that he was being called names, but did not specify that the name-calling was racial in nature. 195 F.3d 134, 142-143 (2d Cir. 1999).

Similarly, at bar, the District was not privy to any student harassment directed toward S.M. on the basis of his disability. At best, the Complaint supports that S.M. had personality conflicts with other students, but this alone does not arise to unlawful discrimination. Nor do Plaintiffs plausibly allege that S.M. was selectively treated differently, compared to others similarly situated.

Indeed, Plaintiffs' opposition fails to identify, let alone with any specificity, actual incidents in which S.M. was denied Equal Protection based on his behavioral impediments.

**POINT X**
**THE INDIVIDUAL GREAT NECK DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY**

The District Defendants are entitled to qualified immunity as their actions did not violate clearly established law as explained, <u>supra</u>, in detail.  Contrary to Plaintiffs' assertions, courts should determine the availability of qualified immunity "at the earliest possible stage in litigation", i.e. at the 12(b)(6) motion stage.  <u>Vassallo v. Lando</u>, 591 F.Supp.2d 172, 198 (E.D.N.Y. 2008). Nor has plaintiffs identified the concrete motive the individual educators had for their discriminatory actions, as required by <u>Blue v. Koren</u>—which is also belied by the documentary proof. 72 F.3d 1075, 1083 (2d Cir. 1995).

Defendants provided sworn affidavits that neither Trichon nor Dr. Iacovelli were even in the building during the "restraint" incident on April 1st.  (<u>See</u> Trichon aff.; Iacovelli Aff.). Nor was educator Mugno involved, save to greet the father when he arrived to pick up his son. (Mugno aff.) In response, plaintiffs ignore their Rule 11 obligations to investigate the involvement of the individual Defendants in the incidents alleged throughout the Complaint.  Rather, Plaintiffs rely on the testimony of the 5th grade-Plaintiff for an account of Defendants' actions—whose testimony is presumed incompetent—which doctrine plaintiffs also conveniently ignore.  <u>People v. Cordero</u>, 257 A.D.2d 372, 373-74 (1st Dep't 1999).

Accordingly, the individual Defendants are shielded from liability under the qualified immunity doctrine.

**CONCLUSION**

For the reasons set forth above, and in the moving papers, the Great Neck Defendants' motion to dismiss should be granted and the Complaint dismissed in its entirety.

Dated: Mineola, New York
      December 11, 2020

**MIRANDA SLONE SKLARIN**
**VERVENIOTIS LLP**
Attorneys for Great Neck Defendants

_____
Michael A. Miranda
Allyson N. Brown
240 Mineola Boulevard
The Esposito Bldg.
Mineola, New York 11501
(516) 741-7676

TO:   All Counsel of record via ECF