UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------x
CRAIG MOSKOWITZ and BARBARA
MOSKOWITZ, each on their own behalf, and as
parents on behalf of their minor child, S.M.,

                              Plaintiffs,

         -against-

GREAT NECK UNION FREE SCHOOL
DISTRICT, THE BOARD OF EDUCATION OF
THE GREAT NECK UNION FREE SCHOOL
DISTRICT, DANA SLACKMAN, DR.
GABRIELLA DUKE, KATE MUGNO, ROBIN
TRICHON, DR. ANTHONY IACOVELLI,
LUCIANA BRADLEY, and SARA GOLDBERG,
each Individually, and in their respective
official capacities,

                            Defendants.
---------------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**
20-cv-1659 (KAM)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

      Presently before the Court, on referral from the Honorable Kiyo A. Matsumoto,

for Report and Recommendation, are Defendants' motions to dismiss Plaintiffs'

complaint for lack of subject matter jurisdiction and failure to state a claim.  Plaintiffs

Craig Moskowitz and Barbara Moskowitz, individually and as parents to S.M., their

child with emotional and learning disabilities (together, the "Plaintiffs" or "Parents"),

commenced this action against Defendants Great Neck Union Free School District

(the "District"), the Board of Education of the Great Neck Union Free School District

(the "Board"), Dana Slackman ("Slackman"), Dr. Gabriella Duke ("Duke"), Kate

Mugno ("Mugno"), Robin Trichon ("Trichon"), Dr. Anthony Iacovelli ("Iacovelli"),

Luciana Bradley ("Bradley"), and Sara Goldberg ("Goldberg") (collectively with Slackman, Duke, Mugno, Trichon, Iacovelli, and Bradley, the "Individual Defendants," and with the District and the Board, "Defendants") by way of Complaint dated April 1, 2020, alleging violations of: (1) Section 504 of the Rehabilitation Act of 1983 ("Section 504"); (2) the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; and (3) 42 U.S.C. § 1983 ("Section 1983") with respect to Plaintiffs' Due Process, Equal Protection, and Fourth Amendment rights for the 2017-2018 and 2018-2019 school years, as well as related state law claims for false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, negligent training and supervision, negligent performance of a governmental function, and assault and battery. *See* Complaint ("Compl."), Docket Entry ("DE") [1]. On December 11, 2020, Defendants filed their motions to dismiss, which Plaintiffs oppose. *See* DE [34], [35], [37], [39], [40], [41]. On April 1, 2021, Judge Matsumoto referred Defendants' motions to this Court for a Report and Recommendation as to whether they should be granted. *See* April 1, 2021 Electronic Order Referring Motion. For the reasons set forth herein, the Court respectfully recommends granting Defendants' motions.

## I. BACKGROUND

### A. <u>Relevant Facts and Claims</u>

Unless otherwise indicated, the facts set forth herein are taken from the Complaint, and are accepted as true for purposes of the instant motions.

### 1. The Parties

S.M. is an eleven-year-old child who is a resident of Great Neck, New York, along with his parents, Plaintiffs Craig and Barbara Moskowitz, who are married. *See* Compl. ¶¶ 5, 12. S.M. has been diagnosed at various times as suffering from several emotional and learning disabilities and disorders, including Attention Deficit Hyperactivity Disorder ("ADHD"), Disruptive Mood Dysregulation Disorder ("DMDD"), Unspecified Anxiety, and Unspecified Trauma, which limit and inhibit S.M.'s ability to concentrate and learn. *See id.* ¶ 7. S.M.'s doctors noted that his learning and behavioral disabilities make him hyperactive, impulsive and unable to concentrate on a regular basis. *See id.* Accordingly, S.M. qualifies for special education and related services as defined and authorized by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq. See id.* ¶ 8. Despite these disabilities, S.M. was qualified to participate in an Integrated Classroom Teaching ("ICT") educational program that Saddle Rock Elementary School ("Saddle Rock") offers. *See id.* ¶ 10. Plaintiffs maintain that, while attending Saddle Rock, S.M. was not capable of defending himself or responding to bullying and harassment in the same way that a non-disabled child may have been, and that he was harassed and bullied on multiple occasions in the form of teasing, name calling, physical altercations and intimidation, which caused him "extreme emotional disstress," increased anxiety and hyperactivity, further exacerbating the disruption to his learning. *See id.* ¶ 11. The Parents allege that they, along with S.M.'s doctors,

informed Defendants on a regular basis of S.M.'s disabilities and diagnoses. *See id.* ¶ 14.

The District and its Board of Education are located in Great Neck, New York, with the Board of Education existing as a corporate body under New York law. *See id.* ¶¶ 15-16. Saddle Rock is a public school located within the District, which, during all relevant times, received federal funds as contemplated by Section 504 and the ADA. *See id.* ¶¶ 16-19. At all times relevant to this action, Defendant Slackman was a behavior clinician, specializing in special education, who worked as an employee or independent contractor with the District at Saddle Rock. *See id.* ¶ 20. Additionally, Defendant Duke was Saddle Rock's school psychologist, Mugno was S.M.'s fifth-grade teacher, Trichon was a speech and language therapist at Saddle Rock, Iacovelli was a school psychologist at Saddle Rock, Bradley was Saddle Rock's principal, and Goldberg was Saddle Rock's assistant principal. *See id.* ¶¶ 20-26. Plaintiffs allege that the Individual Defendants have both individual and collective duties and responsibilities to protect children with disabilities, including S.M. *See id.* ¶ 27.

### 2. S.M.'s Disabilities and Mandated Education Services

Defendants were aware of S.M.'s disabilities at the time he first enrolled at Saddle Rock. *See id.* ¶ 30. Accordingly, S.M. received an individualized education program ("IEP") to ensure he received the education and skills necessary for his educational and social advancement. *See id.* ¶ 32. According to his IEP, S.M. was to learn in an "ICT classroom setting," and was to receive small group counseling

sessions during school, as well as speech and language therapy in small group settings.  *See id.* ¶ 33.

### 3.  Allegations of Bullying and Harassment at Saddle Rock

Plaintiffs maintain that, during the 2017-2018 school year, S.M. endured continuous bullying and harassment by his classmates, which they discussed with all of the Individual Defendants, including providing Iacovelli with recordings of S.M. recounting the alleged conduct.  *See id.* ¶¶ 34-35, 37-38.  The Parents maintain that Defendants "blamed" S.M. for these incidents, claiming that he "caused" them because he placed himself "in the path" of bullies, and did nothing to alleviate the alleged harassment and bullying.  *See id.* ¶¶ 36, 38.  Eventually, Plaintiffs filed a police report regarding the continuing bullying and harassment, after which Craig Moskowitz spoke with a number of Individual Defendants to express his concerns as to these incidents and the fact that Defendants were failing to protect S.M.  *See id.* ¶ 37.  Plaintiffs allege that these Individual Defendants responded that S.M. should stay away from any bullies and try not to put himself in their paths.  *See id.*  The bullying and harassment subsequently worsened.  *See id.* ¶ 38.

These incidents continued into the 2018-2019 school year, during which the Parents spoke with Goldberg to express their ongoing concerns and frustrations.  *See id.* ¶¶ 39-40.  Goldberg reassured the Parents that Saddle Rock teachers and staff would maintain a careful watch over S.M.  *See id.* ¶ 40.  Plaintiffs claim that the events continued, and that S.M.'s behavior worsened in turn, interrupting his education.  *See id.* ¶¶ 41-42.  According to Plaintiffs, Defendants witnessed the

bullying and harassment throughout the school year, and the Parents further alerted them to these events. *See id.* ¶¶ 43-45. As a result of their continued interactions with Defendants as to S.M.'s classmates' conduct, the Parents allege they were banned from school grounds. *See id.* ¶ 46. The District later withdrew the ban in part. *See id.*

### 4. April 1, 2019 Restraint

Plaintiffs allege that on April 1, 2019, Slackman stared at and taunted S.M., threatening to "drag" him to see Iacovelli. *See id.* ¶ 47. These and other actions exacerbated S.M.'s disability symptoms and caused him to feel threatened and unsafe. *See id.* As a result, S.M. began to run through the school in an attempt to leave the building. *See id.* Plaintiffs claim that Defendants chased him through the school while threatening him. *See id.* Finally, Mugno, Duke, Trichon and Slackman attempted to restrain S.M. by each taking hold of one of S.M.'s limbs and stretching him spread-eagle in the air, holding him in that position for over ten minutes while he screamed and cried, which Craig Moskowitz witnessed upon his arrival at Saddle Rock. *See id.* ¶¶ 48-49. Plaintiffs maintain that this method of restraint is unauthorized, and that, based on standard practices and protocols for de-escalation and crisis management, Defendants should have stood behind S.M. and held his arms and embraced him until he calmed down. *See id.* ¶¶ 50, 68. S.M. could not stand when Defendants released him, and Plaintiffs allege that the incident caused S.M. to suffer severe trauma, as well as physical and emotional injuries. *See id.* ¶ 50. The Parents claim that they repeatedly asked Defendants why they employed this

restraint, but received no adequate or reasonable justification. *See id.* ¶ 51. Defendants then suspended S.M. from Saddle Rock for two days. *See id.*

Plaintiffs allege that, as a result of the April 1, 2019 incident, the Parents hospitalized S.M. at South Oaks Hospital for ten days for psychiatric treatment. *See id.* ¶ 53. Upon his discharge, S.M.'s physician prescribed him additional medication to treat his ADHD and DMDD. *See id.* ¶ 54. Further, South Oaks referred S.M. to a therapist and psychiatrist, and recommended that he attend Sagamore Intensive Day Treatment Program to recover and receive proper educational and emotional support. *See id.* ¶ 55. South Oaks Hospital diagnosed S.M. as having experienced trauma as a result of long-term bullying and Defendants' physically restraining him. *See id.* ¶ 57. S.M. expressed fear and apprehension regarding a potential return to school or seeing any of the Defendants. *See id.* ¶ 58.

### 5. S.M.'s Right to a Free and Appropriate Education

Plaintiffs allege that Saddle Rock failed to provide S.M. with reasonable accommodations, including a behavioral plan pursuant to Section 504, notice to the Parents as to S.M.'s rights under Section 504, provision of a Section 504 coordinator or Section 504 meeting, and the development of interventions to benefit S.M., including a modified disciplinary policy and protections from bullying and harassment. *See id.* ¶¶ 72-73. Plaintiffs further claim that Defendants deprived S.M. of a free and appropriate education ("FAPE"), as required by the IDEA, when, after observing his behavioral and learning disabilities and disorders, as well as the bullying and harassment he endured, they did not work to provide him with a safe

and harassment-free learning environment. *See id.* ¶¶ 74-77. Moreover, Plaintiffs maintain that after S.M.'s discharge, and while they awaited possible placement at Sagamore's program, they requested that the District provide home-bound schooling and tutoring. *See id.* ¶ 79. Defendants initially agreed to provide S.M. five hours of one-to-one instruction, as well as other services agreed to in his most recent IEP, but subsequently reduced those hours. *See id.* ¶ 80.[1] S.M. actually received less than five hours of instruction per week, which Plaintiffs allege negatively impacted his education. *See id.*

### 6. Plaintiffs' Claims for Relief

Plaintiffs' Complaint asserts seventeen causes of action. As to their Section 504 claims, Plaintiffs' first cause of action alleges that Defendants discriminated against S.M. when they failed to properly accommodate him, despite his disabilities, by: failing to offer Section 504 accommodations; segregating S.M. from other students in his class when he experienced emotional and behavioral dysregulation; denying him the right to participate in the education program offered to the same extent as other nondisabled students; permitting severe harassment and bullying against S.M. to occur and blaming him for such incidents; denying him the right to fully participate in Saddle Rock's educational and extracurricular programs; removing him from the classroom and unlawfully restraining him; and failing to provide S.M. with academic instruction, including home-bound schooling, during the time that he was removed from Saddle Rock. *See id.* ¶¶ 81-86. Plaintiffs claim that these actions substantially

---

[1] The Complaint is unclear as to whether the agreed-upon five hours of one-to-one instruction were per day or otherwise.

impaired the ability of students with attentional and learning disabilities to access Saddle Rock's educational program. *See id.* ¶ 87. Their third cause of action alleges that Defendants retaliated against the Parents under Section 504 when the District banned them from school grounds after the Parents communicated their concerns as to S.M.'s education and treatment. *See id.* ¶¶ 97-103. The Complaint's fifth cause of action asserts that Defendants created a hostile learning environment under Section 504 by failing to intervene during instances of harassment and bullying, as well as by failing to provide S.M. with a FAPE. *See id.* ¶¶ 111-18.

As to their ADA claims, Plaintiffs' second cause of action alleges that Defendants discriminated against S.M. when they failed to ensure he received the services required under his IEP to provide him with a FAPE, failed to protect S.M. from bullying and harassment, and failed to follow protocols and procedures for deescalating and/or restraining children. *See id.* ¶¶ 91-96. Plaintiffs' fourth cause of action claims that Defendants retaliated against the Parents when the District banned them from school grounds. *See id* ¶¶ 104-10.

As to their Section 1983 claims, Plaintiffs' sixth cause of action, although pled as a violation of Section 1983, alleges only that Defendants deprived S.M. of a proper education, a safe educational environment, the ability to move freely, and freedom from harassment and bullying when they failed to prevent harassment and unlawfully restrained S.M., without discussion of any particular established right. *See id.* ¶¶ 119-29. Their seventh cause of action claims that Defendants violated S.M.'s Fourth Amendment rights when they seized and restrained him. *See id.* ¶¶

130-40.  Plaintiffs claim in their eighth cause of action that Defendants violated the Equal Protection Clause when they treated S.M. differently than his schoolmates by giving him timeout sessions, removing him from the classroom, and physically restraining him in a way that other equally disruptive students were not.  *See id.* ¶¶ 141-46.  The Complaint's ninth cause of action alleges that Defendants violated both S.M.'s and the Parents' Due Process rights.  *See id.* ¶¶ 147-56.  Specifically, Plaintiffs claim that Defendants mishandled S.M.'s disability symptoms, including by physically restraining him, and that they denied the Parents a hearing as to the reasons and rationale for S.M.'s suspension.  *See id.*  Finally, Plaintiffs' tenth cause of action alleges that Defendants violated S.M.'s Equal Protection rights when they failed to intervene during instances of bullying and harassment, did not provide him services required by his IEP to allow him access to a FAPE, and created an unsafe learning environment.  *See id.* ¶¶ 157-61.  As to Plaintiffs' Section 1983 claims, they are asserted against the District and Board under *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036 (1978), and against the Individual Defendants in their official and personal capacities.  *See* Compl. at ¶¶ 20-27.

Plaintiffs also allege seven related state law claims.  Their eleventh cause of action claims that Defendants subjected S.M. to false imprisonment during the April 1, 2019 restraint.  *See id.* ¶¶ 162-66.  Their twelfth and thirteenth causes of action allege that Defendants intentionally and negligently inflicted emotional distress upon S.M. and the Parents, respectively, through their failure to intervene in instances of bullying and harassment, as well as through their use of restraint on

10

April 1, 2019. *See id.* ¶¶ 167-77. Plaintiffs' fourteenth through sixteenth causes of action maintain that Defendants acted negligently by failing to provide him with necessary services in conjunction with his education, allowing mistreatment of S.M. to occur and continue, restraining him, and failing to properly train employees and staff. *See id.* ¶¶ 178-96. Finally, Plaintiffs' seventeenth cause of action alleges that Defendants committed assault and battery against S.M. when they held him spread-eagle, mid-air for over ten minutes on April 1, 2019. *See id.* ¶¶ 197-200.

### B. Procedural History

Based on the above, Plaintiffs commenced this action on April 1, 2020 against Defendants. *See* Compl. The Complaint seeks declaratory relief as to each cause of action as well as monetary damages. *See id.*

On December 11, 2020, Slackman filed her own motion to dismiss, while the remaining Defendants filed a separate motion. *See* Memoranda of Law in Support of Defendant Dana Slackman's Motion to Dismiss ("Slackman Mem."), DE [35-1]; Memorandum of Law of the Great Neck Defendants in Support of Their Motion to Dismiss the Complaint ("Def. Mem."), DE [34-15]. Specifically, Slackman argues that she is an independent contractor and therefore not a state actor for purposes of Plaintiffs' Section 1983 claims. *See* Slackman Mem. All Defendants claim that Plaintiffs have failed to state any claim upon which relief may be granted, and the Individual Defendants each assert that they are entitled to qualified immunity. *See id.*; Def. Mem. Finally, the District argues that Plaintiffs have not exhausted their administrative remedies as required under the IDEA, and therefore cannot bring

11

these causes of action in this Court at this time.  *See* Def. Mem.  Plaintiffs oppose

both motions.  *See* Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss

("Pl. Opp."), DE [37].  Judge Matsumoto referred the motions to this Court for report

and recommendation.  *See* April 1, 2021 Electronic Order Referring motions.

## II.  LEGAL STANDARDS

Defendants move to dismiss for lack of subject matter jurisdiction and for

failure to state a cause of action, pursuant to Federal Rule of Civil Procedure ("Fed.

R. Civ. P.") 12(b)(1) and 12(b)(6).[2]

Under Fed. R. Civ. P. 12(b)(1), a federal court must dismiss a claim when it

lacks jurisdiction over the subject matter of the action.  *See* Fed. R. Civ. P. 12(b)(1);

*see also Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("A case is

properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when

the district court lacks the statutory or constitutional power to adjudicate it.")

(citation omitted).  The party asserting subject matter jurisdiction has the burden to

prove the court's jurisdiction by a preponderance of the evidence.  *See Vailette v.*

*Lindsay*, No. 11-cv-3610, 2014 WL 4101513, at *3 (E.D.N.Y. Aug. 18, 2014) (citation

omitted).

In deciding a motion to dismiss for lack of subject matter jurisdiction, the court

must assume that all factual allegations in the complaint are true and draw all

reasonable inferences in favor of the non-moving party.  *C.K. v. Bd. of Educ. of the*

---

[2] While Defendants make their motions pursuant to Fed. R. Civ. P. 12(b)(6) only, their argument that Plaintiffs have not exhausted their administrative remedies necessarily implicates this Court's subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

*Westhampton Beach Sch. Dist.*, 185 F. Supp. 3d 317, 324 (E.D.N.Y. 2016) (citation omitted). Further, the court may refer to evidence outside the pleadings, such as affidavits, to resolve the jurisdictional issue. *Forbes v. State Univ. of New York at Stony Brook*, 259 F. Supp. 2d 227, 231-32 (E.D.N.Y. 2003) (citations omitted).

To survive a motion to dismiss for failure to state a cause of action, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 127 S. Ct. at 1949. In deciding a motion to dismiss, "a court must 'accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" *U.S. ex rel. Siegel v. Roche Diagnostics Corp.*, 988 F. Supp. 2d 341, 343 (E.D.N.Y. 2013) (quoting *LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009)).[3]

## III. DISCUSSION

### A.   Subject Matter Jurisdiction and the IDEA's Exhaustion Requirement

Defendants assert that the Court lacks subject matter jurisdiction over Plaintiffs' ADA and Section 504 claims because of their failure to exhaust their

---

[3] Defendants submit several exhibits containing material outside of the pleadings in connection with their motions to dismiss. *See* DE [34-1]-[34-14]; [35-2]-[35-3]. The Court does not rely on these documents in reaching its recommendation.

administrative remedies as required by the IDEA.  *See* Def. Mem. at 3-8.[4]  Plaintiffs counter that they did not need to exhaust their claims because exhaustion is not required for the actions they complain of, centered on harassment, bullying and discrimination, rather than the denial of a FAPE.  *See* Pl. Opp. at 13-18.  Moreover, Plaintiffs argue that exhaustion would be futile because an administrative hearing officer would not be able to offer Plaintiffs relief, as the harm alleged is systemic.  *See id.* at 17-18.

The IDEA was created to "provide disabled students with a free appropriate public education in the least restrictive environment suitable for their needs."  *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245 (2d Cir. 2008) (internal quotations and citations omitted).  The statute mandates that each state establish procedures that give parents an opportunity "to present a complaint with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."  20 U.S.C. § 1415(b)(6)(A).

The Second Circuit has explained that New York State has "a two-tier administrative system for review of IEPs.  First, an impartial hearing officer [IHO] . . . conduct[s] the initial hearing and issue[s] a written decision.  That decision can then be appealed to a state review officer of the New York Education Department."

---

[4] In conducting this analysis, the Court notes that claims against the Individual Defendants in their official capacities are treated the same as the claims against the municipal entities, here the District and the Board.  *See Baldessarre ex rel. Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*, 496 F. App'x 131, 135 (2d Cir. 2012) ("The real party in interest in an official-capacity suit is the government entity.").

*Cave*, 514 F.3d at 245 (citing *Heldman ex rel. v. Sobol*, 962 F.2d 148, 152 (2d Cir. 1992)). "Only after exhaustion of these procedures has an aggrieved party the right to file a suit in a federal or state court." *Id.* (citing 20 U.S.C. § 1415(i)(2)(A)). "Failure to exhaust the administrative remedies deprives the court of subject matter jurisdiction." *Id.* (citing *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 483 (2d Cir. 2002)).

The Supreme Court observed in *Fry v. Napoleon Community Schools* that IDEA exhaustion is "unnecessary where the gravamen of the plaintiff's suit is something other than the denial of the IDEA's core guarantee of a FAPE." __ U.S. __, __, 137 S.Ct. 743, 746, 756 (2017). One clue as to whether the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination, may come from asking a pair of hypothetical questions: (i) could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school – such as a public theater or library?; (ii) could an adult at the school – such as an employee or visitor – have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; in those situations there is no FAPE obligation and the same basic suit may proceed. When the answer is no, however, the complaint likely concerns a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in a school setting, and not an adult in that setting or a child in some other context, has a viable claim. *See id.*

15

at 756; *see also Lawton v. Success Acad. Charter Sch., Inc.*, 323 F. Supp. 3d 353, 362 (E.D.N.Y. 2018) ("[P]laintiffs are only required to exhaust the IDEA's administrative remedies when the gravamen of their claims is denial of a FAPE."); *Patrick v. Success Acad. Charter Sch., Inc.*, 354 F. Supp. 3d 185, 228 (E.D.N.Y. 2018) (holding that plaintiffs' claims relating to an allegedly discriminatory suspension process and retaliatory calls to EMS are "beyond the reach of the IDEA's exhaustion requirement") (citing *J.S., III, ex rel. J.S. Jr. v. Houston Cty. Bd. of Educ.*, 877 F.3d 979, 986 (11th Cir. 2017) (also holding that claims related to a disabled student's repeated removal from class should not be analyzed as a FAPE violation but rather were "cognizable as a separate claim for intentional discrimination")). As noted, Plaintiffs dispute that their claims under Section 504 and the ADA are subject to the exhaustion requirement and, in the alternative, that exhaustion would be futile, a recognized exception to the exhaustion requirement.

The District Defendants also challenge the adequacy of the pleadings and ask the Court to dismiss the claims for failure to state a claim. Fed. R. Civ. P. 12(b)(6).

### 1. Whether the IDEA's Exhaustion Requirement Applies

"[I]t is well settled that plaintiffs must exhaust administrative remedies under the IDEA whenever they assert claims for relief *available* under the IDEA, regardless of the statutory basis of their complaint, and that the failure to do so deprives the court of subject-matter jurisdiction." *L.K. v. Sewanhaka Cent. High Sch. Dist.*, 641 Fed.Appx. 56, 57 (2d Cir. Mar. 4, 2016) (internal quotation marks omitted) (emphasis in original). This IDEA exhaustion requirement applies to claims under other

statutory frameworks that involve the education of disabled children. *See id.* ("[I]f the theory behind a claim relates to the education of disabled children, IDEA exhaustion is required unless plaintiffs demonstrate that their failure to exhaust should be excused.") (internal quotations and citations omitted).

Viewing Plaintiffs' Complaint as a whole, it is clear that the federal causes of action – under Section 504, the ADA and Section 1983 – not only explicitly allege the denial of a FAPE, but are comprised of claims that only a child in a school setting may assert due to the FAPE requirement.[5] Specifically, Plaintiffs' discrimination and hostile learning environment claims under Section 504 allege that Defendants failed to provide him proper educational and behavioral accommodations, including a FAPE, and denied him the right to fully participate in Saddle Rock's educational and extracurricular activities.   While Plaintiffs further assert that Defendants discriminated against S.M. by allowing bullying and harassment to continue, these claims are centered around S.M.'s disabilities and the proper accommodations he was to be afforded while at Saddle Rock in terms of his education, safety and wellbeing while receiving that education.   S.M. could not bring such claims against a public library or theater, as those entities would not have a duty to provide him an IEP and a FAPE under the IDEA.   Nor could an adult employee assert these causes of action against Saddle Rock.

---

[5] While Defendants challenge this Court's subject matter jurisdiction only with respect to Plaintiffs' Section 504 and ADA claims, the exhaustion requirement applies with equal force to Section 1983 claims such as those alleged here, as discussed below.

Similarly, Plaintiffs' ADA discrimination cause of action specifically alleges that Defendants failed to ensure S.M. received services required by his IEP and his right to a FAPE. That this claim further alleges that Defendants failed to protect S.M. from bullying or to follow proper procedures for restraining children does not change that a denial of a FAPE and access to an educational environment that encourages S.M.'s learning are the crux of Plaintiffs' allegations. Further, the Parents' causes of action for retaliation under Section 504 and the ADA arise directly out of their allegations of discrimination under both statutes.

Plaintiffs' Section 1983 causes of action are subject to the IDEA's exhaustion requirement as well. They specifically assert that Defendants "knowingly deprived S.M. of a proper education, safe educational environment, ability to move freely, and freedom from harassment and bullying." *See* Compl. ¶ 127. That S.M.'s treatment may be the result of discrimination does not convert Plaintiffs' claims into something other than those concerning S.M.'s right to a FAPE and the implementation of the requirements according to his IEP. Further, in terms of Plaintiffs' Fourth Amendment cause of action, an administrative hearing officer is in a better position, in the first instance, to determine whether Defendants restrained S.M., and if so whether that restraint was appropriate under the circumstances. Plaintiffs' Due Process and Equal Protection claims focus on Defendants' failure to provide S.M. a FAPE or a safe learning environment, and allege that he was discriminated against when Defendants failed to protect him based on his disabilities, failed to provide the accommodations required under his IEP and right to a FAPE, physically restrained

18

him, and failed to provide a hearing as to S.M.'s suspension. These are allegations that neither S.M. nor the Parents could bring against a public entity other than a school, nor could a Saddle Rock employee bring such claims.

Accordingly, Plaintiffs' Section 504, ADA, and Section 1983 claims against the District, the Board, and the Individual Defendants in their official capacities are subject to the IDEA exhaustion requirement.

### 2. Whether Exhaustion Would be Futile

Having established that the IDEA's exhaustion requirement applies, the Court turns to the issue of futility. The Second Circuit has recognized that "[t]he exhaustion requirement is excused when exhaustion would be futile because the administrative procedures do not provide an adequate remedy." *Cave*, 514 F.3d at 249 (citing *Honig v. Doe*, 484 U.S. 305, 326-27, 108 S.Ct. 592, 606 (1988)). "To show futility, a plaintiff must demonstrate that 'adequate remedies are not reasonably available' or that 'the wrongs alleged could not or would not have been corrected by resort to the administrative hearing process.'" *Coleman v. Newburgh Enlarged City School Dist.*, 503 F.3d 198, 205 (2d Cir. 2007) (quoting *J.G. v. Bd. of Educ. of Rochester City Sch. Dist.*, 830 F.2d 444, 447 (2d Cir. 1987)). "The party seeking to avoid exhaustion bears the burden of showing futility." *Cave*, 514 F.3d at 249 (citing *Polera*, 288 F.3d at 488 n.8).

One potential basis for futility is where a plaintiff alleges "systemic violations that could not be remedied by local or state administrative agencies 'because the framework and procedures for assessing and placing students in appropriate

educational programs were at issue, or because the nature and volume of complaints were incapable of correction by the administrative hearing process.'" *Id.* (quoting *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 114 (2d Cir. 2004)). "The rationale behind this exception is that while the administrative hearing officers have the authority to enforce established regulations, policies and procedures, they generally do not have the authority to set new policies or to alter existing ones." *King v. Pine Plains Cent. Sch. Dist.*, 918 F.Supp. 772, 781 (S.D.N.Y. 1996). Accordingly, "requiring a parent to exhaust his administrative remedies when he is challenging a generally applicable policy or procedure would be futile." *Id.*

For example, in *J.S. ex rel. N.S.*, the Second Circuit found that the claims of six students against a school district under the IDEA, the Rehabilitation Act and Section 1983 fell within the systemic violation exception to the exhaustion requirement because "the complaint d[id] not challenge the content of Individualized Education Programs, but rather the School District's total failure to prepare and implement Individualized Education Programs." 386 F.3d at 115. The complaint also included numerous examples of systemic problems at the school district, including:

> failure to perform timely evaluations and reevaluations of disabled children; failure to provide parents with required procedural safeguards regarding identification, evaluation, and accommodation of otherwise disabled children; and failure to perform legally required responsibilities in a timely manner, including providing and implementing transition plans, transitional support services, assistive technology services, and declassification services for children with disabilities.

*Id.*

On the other hand, courts in this Circuit have found that allegations of discrimination on the part of school districts are not sufficient to excuse the IDEA exhaustion requirement in cases where those allegations are tied to the events, conditions or consequences of an individual student's IEP. This is because those complaints can be remedied at the administrative level and therefore, resort to the administrative process would not be futile. *See Baldessarre v. Monroe–Woodbury Cent. Sch. Dist.*, 820 F.Supp.2d 490, 505 (S.D.N.Y. 2011) ("Because all of Plaintiffs' claims of discrimination relate to the interplay between [the student's] disability and his education, whether the Amended Complaint adequately alleges facts sufficient to state a claim under these other statutes is entirely irrelevant."); *Wang v. Williamsville Cent. Sch. Dist.*, No. 08–CV–575S, 2010 WL 1630466, at *6 (W.D.N.Y. Apr. 21, 2010) ("Plaintiffs' attempt to recast their claims is unavailing. What they are alleging, in essence, is that the District knew it had certain obligations to [the student] because of his medical conditions, but it failed to act on that knowledge when it let another factor take precedence. The gravamen of their claim is the failure to provide appropriate services to [the student]; the purported reason for the failure – race discrimination – is secondary.").

In this case, while Plaintiffs assert that the District discriminated against S.M. during the 2017-2018 and 2018-2019 academic years based on his disabilities, and subsequently discriminated against the Parents, in violation of Section 504 and the ADA, and violated their Fourth Amendment, Due Process and Equal Protection rights under Section 1983, their ultimate claim is that Defendants failed to provide

S.M. a FAPE, including the accommodations provided for under his IEP and Section 504, as well as a safe learning environment free from harassment, bullying and inappropriate or unlawful restraint.  This type of challenge to the education of a single disabled student is a matter that is within the ambit of the administrative scheme addressed by the IDEA, which explicitly provides parents with an opportunity to present a complaint to an impartial IHO "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child[.]"  20 U.S.C.A. § 1415(b)(6)(A).

As such, Plaintiffs' issues with Defendants' accommodations and treatment of S.M. must first be addressed to the local and state education agencies who are "uniquely well suited to review the content and implementation of IEPs . . . and to determine what changes, if any, are needed."  *Cave*, 514 F.3d at 248 (internal quotations and citations omitted).  As a result, the Parents must exhaust their administrative remedies before an appropriate state tribunal before seeking relief in federal court.  Accordingly, the Court respectfully recommends that Defendants' motions to dismiss for lack of subject matter jurisdiction against the District, the Board, and the Individual Defendants in their official capacities be granted as to Plaintiffs' Section 504, ADA and Section 1983 claims, without prejudice, to be refiled after exhaustion of administrative remedies.

### B. Plaintiffs' Federal Claims Against the Individual Defendants

Plaintiffs allege the same federal causes of action against the Individual Defendants in their personal capacities in addition to their official capacities, namely

for:  violations of Section 504, the ADA, and Plaintiffs' Fourth Amendment, Due Process and Equal Protection rights under Section 1983.  As to these claims, the Individual Defendants argue that Plaintiffs' claims fail as a matter of law, or in the alternative, that they are entitled to qualified immunity.

### 1.  Section 504 and ADA Claims

Insofar as Plaintiffs are suing the Individual Defendants under Section 504 and Title II of the ADA, those claims are barred as a matter of law because there is no individual liability under either statute.  *See Piotrowski on behalf of J.P. v. Rocky Point Union Free Sch. Dist.*, 462 F. Supp. 3d 270, 285 (E.D.N.Y. 2020); *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001).  Accordingly, the Court recommends that Plaintiffs' Section 504 and ADA claims against the Individual Defendants be dismissed.

### 2.  Section 1983 Claims

The Complaint alleges violations of Section 1983 against the Individual Defendants in their personal capacities on the bases that they violated S.M.'s Due Process, Equal Protection and Fourth Amendment rights.  *See* Compl. ¶¶ 119-61.

A Section 1983 claim "has two essential elements:  [(i)] the defendant acted under color of state law; and [(ii)] as a result of the defendant's actions, the plaintiff suffered a denial of his or her federal statutory rights, or his or her constitutional rights or privileges."  *Piotrowski*, 462 F. Supp. at 290. [6]

---

[6] Defendant Slackman argues that, as an independent contractor, she was not a state actor for purposes of Plaintiffs' Section 1983 claims.  *See* Slackman Mem. at 6-7.  "[A] private actor can be found

### a. Liability of the District and the Board Pursuant to *Monell*

A municipality may not be held liable under Section 1983 on a *respondeat superior* theory of liability for its employees' alleged constitutional violations. *See Monell*, 436 U.S. at 691, 98 S.Ct. at 2036; *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995). A municipal entity may only be liable if the alleged conduct was undertaken pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [its] officers" or a "governmental 'custom' even though such a custom has not received formal approval through [] official decisionmaking channels." *Monell*, 436 U.S. at 690–91, 98 S.Ct. 2018 at 2036.

Accordingly, to bring a Section 1983 claim against a municipal defendant, a plaintiff must establish both a violation of his constitutional rights and that the violation was motivated by a municipal custom or policy. *Id.*; *see also Coon v. Town of Springfield, Vt.*, 404 F.3d 683, 686 (2d Cir. 2005) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). "For purposes of § 1983,

---

'to act under color of state law for § 1983 purposes . . . if the private party is a willful participant in joint action with the State or its agents.'" *Anilao v. Spota*, 774 F. Supp. 2d 457, 498 (E.D.N.Y. 2011) (quoting *Dennis v. Sparks*, 449 U.S. 24, 28, 1010 S. Ct. 183, 187 (1980)). "To establish joint action, a plaintiff must show that the private citizen and the state official shared a common unlawful goal; the true state actor and the jointly acting private party must agree to deprive the plaintiff of rights guaranteed by federal law." *Anilao*, 774 F. Supp.2d at 498 (quoting *Bang v. Utopia Restaurant*, 923 F. Supp. 46, 49 (S.D.N.Y. 1996)). When the extent of the relationship between the private party and the state actor is a financial one, "to satisfy the joint action test, Plaintiff must show that th[e] financial support specifically affected the decision" at issue. *See Dawkins v. Biondi Educ. Ctr.*, 164 F. Supp. 3d 518, 528 (S.D.N.Y. 2016); *see also D.W.M. by Moore v. St. Mary Sch.*, No. 218CV3099DRHGRB, 2019 WL 4038410, at *10 (E.D.N.Y. Aug. 27, 2019). As the District paid Slackman and she worked in concert with the Individual Defendants in handling S.M.'s education, the Court recommends that she be treated as a state actor for purposes of Plaintiffs' Section 1983 claims, and that dismissal on the pleadings on this basis be denied.

24

school districts are considered to be local governments and are subject to similar liability as local governments under *Monell*." *Scaggs v. New York Dep't of Educ.*, No. 06 CV 0799 JFB VVP, 2007 WL 1456221 at *14 (E.D.N.Y. May 16, 2007) (internal quotation marks omitted).

The existence of a municipal policy or custom may be pled in any of four ways. A plaintiff may allege that his constitutional injuries arose from: "(1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to 'deliberate indifference' to the rights of those who come in contact with the municipal employees." *Williams v. City of Mt. Vernon*, 428 F.Supp.2d 146, 159 (S.D.N.Y. 2006) (citing *Moray v. City of Yonkers*, 924 F.Supp. 8, 12 (S.D.N.Y.1996)); *see also Bonds v. Suffolk Cnty. Sheriff's Dep't*, No. 05 CV 3109 SJF, 2006 WL 3681206, at *2 (E.D.N.Y. Dec. 5, 2006) (same); *Peterson v. Tomaselli*, No. 02 CIV.6325 RJH, 2004 WL 2211651, at *9 (S.D.N.Y. Sept. 30, 2004) (same).

Plaintiffs allege that Defendants failed to properly train or supervise the staff within the District. *See* Compl. ¶¶ 59-71. Nevertheless, these assertions are vague and conclusory, and do not specify any incorrect training or what training should have been implemented by the District or the Board. *See Weaver v. City of N.Y.*, No.

13-cv-20 (CBA)(SMG), 2014 WL 950041, at *7 (E.D.N.Y. Mar. 11, 2014) ("[V]ague and conclusory assertions are not sufficient to state a claim of municipal liability under *Monell*."); *Genovese v. Town of Southhampton*, 921 F.Supp.2d 8, 25 (E.D.N.Y. 2013) ("[V]ague and conclusory assertions that . . . [defendant municipality] did not adequately train . . . without any actual supporting evidence, are insufficient to adequately plead a *Monell* claim.").

Moreover, Section 1983 causes of action based on the conduct of a single individual or as to an individual instance are not sufficient to establish an overarching policy or practice to render *Monell* liability upon a municipality. *See Worrell v. City of N.Y.*, No. 12-CV-6151 (MKB), 2014 WL 1224257, at *12 (E.D.N.Y. Mar. 24, 2014) ("[A] single incident of [the plaintiff's] own allegedly negligent investigation is not sufficient to impose municipal liability without additional allegations from which [the c]ourt may infer that it was caused by a practice so widespread as to practically have the force of law."); *Murray v. Admin. for Children's Servs.*, 476 F.Supp.2d 436, 442 (S.D.N.Y. 2007) ("The Amended Complaint does not allege other similar instances . . . that could raise an inference that the [defendant municipality] maintains a policy or custom of deliberate indifference to these types of unconstitutional deprivations."), *aff'd*, 293 Fed.Appx. 831 (2d Cir. 2008).

Accordingly, even if the federal claims against the District and the Board are not dismissed for failure to exhaust administrative remedies, they should be on these alternate grounds, given the lack of any factual allegations establishing a plausible cause of action for *Monell* liability.

### b. Liability of the Individual Defendants in Their Personal Capacities

Plaintiffs assert all of their Section 1983 claims against the Individual Defendants in their personal capacities, in addition to their professional capacities. Individuals can only be held liable under Section 1983 if they were personally involved in the misconduct alleged. *See McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977) ("In this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983."). The personal involvement of a supervisor can be shown in the following ways:

> [i] actual direct participation in the constitutional violation, [ii] failure to remedy a wrong after being informed through a report or appeal, [iii] creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, [iv] grossly negligent supervision of subordinates who committed a violation, or [v] failure to act on information indicating that unconstitutional acts were occurring.

*Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

Whether the Complaint alleges the personal involvement of each of the Individual Defendants in the conduct at issue, *see* Compl. ¶¶ 34-48, Plaintiffs' allegations, taken together, should nevertheless be dismissed for the reasons set forth below.

### i.   Due Process Claims

Plaintiffs allege that the Individual Defendants violated their Fourteenth Amendment Due Process rights in connection with the April 1, 2019 incident, the disciplinary process (or lack thereof) provided in connection with the incident, and

the Individual Defendants' handling of the bullying S.M. allegedly experienced while a student within the District.

"To state a due process violation—procedural or substantive—Plaintiffs must first show a deprivation of a constitutionally protected property or liberty interest." *S.C. v. Monroe Woodbury Cent. Sch. Dist.*, No. 11-CV-1672 CS, 2012 WL 2940020, at *5 (S.D.N.Y. July 18, 2012) (internal quotation marks omitted); *see also White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1061–62 (2d Cir. 1993) ("In order to succeed on a claim of deprivation of procedural due process, a plaintiff must establish that state action deprived him of a protected property or liberty interest."); *JG & PG ex rel. JG III v. Card*, No. 08–CV–5668, 2009 WL 2986640, at *5 (S.D.N .Y. Sept. 17, 2009) ("To state a substantive due process claim, a plaintiff must allege that (1) the complained-of state action compromised a constitutionally-protected liberty or property right, and (2) the state action that deprived him of that interest was oppressive or arbitrary."). Moreover, to demonstrate a deprivation, Plaintiffs must plausibly allege that Defendants "acted with more than mere negligence." *Grune v. Rodriguez*, 176 F.3d 27, 33 (2d Cir. 1999) (citing *Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 663 (1986)); *see Williams v. King*, 796 F.Supp. 737, 742 (E.D.N.Y.1992) ("[A] 'mere lack of due care' by a state official is not cognizable as a 'deprivation' under the Fourteenth Amendment.") (quoting *Daniels*, 474 U.S. at 330–31, 106 S.Ct. at 664). If these threshold requirements are satisfied, a court may then decide whether the deprivation of a protected interest is a violation of substantive or procedural due process. *See, e.g., Toussie v. Cnty. of Suffolk*, 806 F.Supp.2d 558, 579

(E.D.N.Y. 2011). Accordingly, the Court initially addresses whether S.M. has a constitutionally protected property interest in a public education and then whether Defendants' actions deprived S.M. of that interest.

### a.      Property Interest in a Public Education

Plaintiffs may establish a property interest protected by the Fourteenth amendment where they demonstrate a "'legitimate claim of entitlement to the benefits in question.'" *Frooks v. Town of Cortlandt*, 997 F.Supp. 438, 449 (S.D.N.Y. 1998) (quoting *Crowley v. Courville*, 76 F.3d 47, 52 (2d Cir. 1996)) (substantive due process); *see also White Plains Towing*, 991 F.2d at 1062 (procedural due process). The Second Circuit has found that Article 11, Section 1 of the New York Constitution "does not appear . . . alone [to] give[] rise" to a legitimate claim of entitlement to a public education, but that New York Education Law Section 3202(1) does for children of S.M.'s age, *see Handberry v. Thompson*, 446 F.3d 335, 353 (2d Cir. 2006); *see also Saggio v. Sprady*, 475 F.Supp.2d 203, 210 (E.D.N.Y. 2007) (New York Education Law Section 3202(1) establishes a right to public education), and therefore S.M. has a property interest in a public education protected by the Fourteenth Amendment.

### b.      Deprivation of S.M.'s Property Interest

Plaintiffs plausibly allege that Defendants' actions deprived S.M. of this property interest, which "entitle[s him] to attend the public schools maintained in the district in which [he] resides." N.Y. Educ. Law § 3202(1). Defendants suspended S.M. from the District, and Plaintiffs allege that Defendants used excessive force during the April 1, 2019 incident, provided no explanation or hearing as to his

suspension, and did little to nothing to stop the bullying S.M. experienced at school. Accordingly, the Court turns to whether such deprivation occurred without due process, as afforded by the 14th Amendment, and concludes that it did not.

### c.    Substantive Due Process

"To state a substantive due process claim, a plaintiff must allege that . . . the state action that deprived him of [a constitutionally protected] interest was oppressive or arbitrary." *Card*, 2009 WL 2986640, at *5. Conduct that is deemed to be "arbitrary or oppressive" must "shock the conscience." *West v. Whitehead*, No. 04–CV–9283, 2008 WL 4201130, at *13 (S.D.N.Y. Sept. 11, 2008). "While the measure of what is conscience shocking is no calibrated yard stick," *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847, 118 S.Ct. 1708, 1717 (1998), "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Id.* at 849, 118 S.Ct. at 1718. As the Second Circuit has stated,

> Substantive due process is an outer limit on the legitimacy of governmental action. It does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit seeking review of administrative action. Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority.

*Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999).

Making a bad decision or acting negligently is not the sort of "conscience shocking" behavior that violates the Constitution, *see Sacramento*, 523 U.S. at 849, 118 S.Ct. at 1718, nor necessarily is conduct that violates state law, *see Padberg v. McGrath–McKechnie*, 203 F.Supp.2d 261, 283 (E.D.N.Y. 2002).

In *Smith v. Guilford Board of Education*, 226 F. App'x 58 (2d Cir. 2007) (summary order), the Second Circuit concluded that, on Defendants' motion to dismiss, "failure to respond to the harassing and bullying to which [the student] was subjected . . ., while highly unfortunate, does not rise to the level of egregious conduct . . . so brutal and offensive to human dignity as to shock the conscience." *Id.* at 62 (internal quotation marks omitted). The bullying at issue included, but was not limited to,

> (1) pushing and shoving; (2) blocking [the child's] entrance into or out of classrooms, restraining and imprisoning him therein; (3) placing [the child] on students' shoulders and physically treating him "like a baby;" (4) teasing, harassing, bullying and tormenting [the child] on a daily basis; (5) forcing [the child] into a backpack, zipping the pack, then parading the backpack, with [the child] visible, through the halls of the school; (6) mocking [the child] with sexually suggestive comments; (7) on at least one occasion, picking him up against his will, cradling and treating him as if he were a baby; (8) grabbing, assaulting, restraining, imprisoning, and teasing him with disparaging or threatening comments.

*Smith v. Guilford Bd. of Educ.*, No. 03–CV–1829, 2005 WL 3211449, at *1 (D.Conn. Nov. 30, 2005), *aff'd in part, vacated in part on other grounds*, 226 F. App'x 58 (2d Cir. 2007); *compare Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 252 (2d Cir. 2001) (gym teacher violently assaulting eighth grade student shocked the conscience); *Camac v. Long Beach City Sch. Dist.*, No. 09–CV–5309, 2011 WL 3030345, at *4, 14 (E.D.N.Y. July 22, 2011) (false report to police of student's suicide attempt and falsely testifying under oath to same, which resulted in child's commitment at hospital, sufficient to withstand dismissal); *Card*, 2009 WL 2986640, at *2 (denying dismissal where defendants allegedly "locked Plaintiff–Children in closets or bathrooms for extended periods of time, . . . used physical force to restrain

31

and sometimes force feed Plaintiff–Children, causing vomiting and injury, . . . engaged in inappropriate sexual conduct in front of Plaintiff–Children, . . . photographed Plaintiff–Children's private parts, . . . called [Plaintiff-Children] degrading names, . . . and []refused to change certain Plaintiff–Children's diapers"), *with Smith ex rel. Smith v. Half Hollow Hills Cent. Sch. Dist.*, 298 F.3d 168, 173 (2d Cir. 2002) ("Striking a student without any pedagogical or disciplinary justification," while "undeniably wrong," does not "shock the conscience"); *Chambers v. N. Rockland Cent. Sch. Dist.*, 815 F.Supp.2d 753, 770-71 (S.D.N.Y. 2011) (assistant principal's underestimate of severity of harassment of plaintiff-student and accompanying imposition of minimal punishment on harassers who later violently attacked plaintiff-student did not shock conscience); *Myslow v. New Milford Sch. Dist.*, No. 03–CV–496, 2006 WL 473735, at *14 (D.Conn. Feb. 28, 2006) (encouraging parents to medicate student "simply does not rise to the level that can be described as conscience-shocking"); *Cohn v. New Paltz Cent. Sch. Dist.*, 363 F.Supp.2d 421, 434 (N.D.N.Y. 2005) (school's overbroad interpretation of behavior code does not shock conscience); *Yap v. Oceanside Union Free Sch. Dist.*, 303 F.Supp.2d 284, 296–97 (E.D.N.Y. 2004) (teacher's racial slurs did not shock conscience); *Bisignano v. Harrison Cent. Sch. Dist.*, 113 F.Supp.2d 591, 599–600 (S.D.N.Y. 2000) (teacher confining student to storage closet did not shock conscience).

Applying these standards, Defendants' response to S.M.'s bullying, as well as to his behavior on April 1, 2019, while certainly unfortunate, did not "transgress[] the outer limit of legitimate governmental action," *Cohn*, 363 F.Supp.2d at 434 (internal

quotation marks omitted), so as to shock the conscience and rise to the level of a constitutional cause of action. In this regard, Plaintiffs' allegations that Defendants' response to their concerns that they would simply "maintain a careful watch on S.M.," *see* Compl. ¶ 40, while, if true, may be insufficient to address the problems S.M. was facing, does not change the Court's conclusion. *See Smith*, 226 F. App'x at 61 (defendants allegedly knew of some or all of the mistreatment to which plaintiff was subjected, and yet "condoned, permitted and/or acquiesced in" such mistreatment) (internal quotation marks omitted); *Musco Propane, LLP v. Town of Wolcott*, No. 10–CV–1400, 2011 WL 3267756, at *5 (D.Conn. July 28, 2011) ("In determining whether a plaintiff has stated a claim for violation of federal substantive due process, the court is mindful that the Fourteenth Amendment is not a 'font of tort law.'") (quoting *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005)). Because Defendants' actions do not rise to a level to "shock the conscience" of the Court, Plaintiffs' substantive Due Process claim fails as a matter of law, and the Court respectfully recommends that Plaintiffs' substantive Due Process claim against the Individual Defendants in their personal capacities be dismissed.

### d.    Procedural Due Process

Plaintiffs' procedural Due Process claim centers on the allegation that Defendants denied them an explanation for the April 1, 2019 restraint used or for S.M.'s subsequent suspension. *See* Compl. ¶¶ 154-55. To the extent the Parents seek to bring their own Due Process claims (as opposed to ones brought on behalf of S.M.), the Court recommends that their procedural Due Process claims be dismissed

because they lack standing. *See Patrick*, 354 F. Supp. 3d at 208–09; *Irwin v. W. Irondequoit Cent. Sch. Dist.*, No. 6:16-CV-6028 (EAW), 2017 WL 881850, at *3 (W.D.N.Y. Mar. 2, 2017) (finding that the parent-plaintiff "lack[ed] standing to bring the asserted § 1983 claims based solely on the deprivation of the constitutional rights of his son") (collecting cases); *see also Jarmon v. Batory*, No. 94-CV-0284 (HJH), 1994 WL 313063, at *5 (E.D. Pa. June 29, 1994) (finding that parents of expelled student lacked standing to bring their own due process claim where they failed to allege that "any right personal to them was violated by the defendants . . . [and] their claims [were] wholly derivative of [the child's] claims based on her suspension and subsequent expulsion"); *Boster v. Philpot*, 645 F.Supp. 798, 807 (D. Kan. 1986) ("[W]hen a student is suspended, it is the *student* who is entitled to due process because it is the student – not his parents – who has a right to a free public education.") (emphasis in original). Nevertheless, the Parents may bring Due Process claims on behalf of S.M. *See Marino v. Chester Union Free Sch. Dist.*, 859 F.Supp.2d 566, 568 (S.D.N.Y. 2012) ("[W]here minor children are the real parties in interest, parents appropriately bring litigation on their children's behalf.") (collecting cases).

As to S.M., to state a procedural Due Process claim, a plaintiff must demonstrate that the deprivation of a property interest occurred without due process. *See McMenemy v. City of Rochester*, 241 F.3d 279, 285–86 (2d Cir. 2001). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319,

333, 96 S.Ct. 893, 902 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85

S.Ct. 1187, 1191 (1965)).

> [It is a] long accepted premise that due process dictates that persons ordinarily deserve some kind of hearing *prior* to the deprivation of a [protected] interest, and that it is only where the state is effectively unable to anticipate and prevent a random deprivation of a [protected] interest, that post deprivation remedies might satisfy due process.

*Velez v. Levy*, 401 F.3d 75, 91 (2d Cir. 2005) (citation and internal quotation marks

omitted) (emphasis in original); *see Hellenic Am. Neighborhood Action Comm. v. City

of N.Y.*, 101 F.3d 877, 880 (2d Cir. 1996) (as to random and unauthorized acts, "the

Due Process Clause of the Fourteenth Amendment is not violated . . . so long as the

State provides a meaningful postdeprivation remedy").

"In *Goss v. Lopez*, 419 U.S. 565, 573, 95 S. Ct. 729, [735-36] . . . (1975), the

Supreme Court held that students facing a ten-day suspension must be given some

kind of notice and afforded some type of hearing." *Cohn*, 363 F. Supp. 2d at 433. "The

Court stated that the hearing could be held immediately following the incident and

be informal." *Id.* "[T]he Supreme Court did caution 'suspensions or expulsions for

the remainder of the school term, or permanently, may require more formal

procedures.'" *Id.* (quoting *Goss*, 419 U.S. at 584, 95 S. Ct. at 741).

"Constitutionally, due process 'requires that individuals have 'notice and

opportunity for a hearing appropriate to the nature of the case' prior to a deprivation

of life, liberty, or property.'" *Id.* at 433 (quoting *Rosa R. v. Connelly*, 889 F.2d 435,

438 (2d Cir. 1989)) (other citation omitted). "'Notice must be reasonably calculated,

under all the circumstances, to appraise interested parties of the pendency of the

action and afford them an opportunity to present their objections.'" *Id.* (quoting *Rosa R.*, 889 F.2d at 439) (other citation omitted).

Moreover, it is well-established in the context of disciplinary proceedings, such as those at issue here, that post-discipline due process provides sufficient due process to satisfy the requirements of the Fourteenth Amendment. *See id.* at 433-34. Accordingly, the availability of an adequate, post-deprivation hearing will preclude a procedural Due Process claim. *See id.* (citations omitted); *see also Storey v. Morris*, No. 7:16-cv-206, 2017 WL 933212, *3 (N.D.N.Y. Feb. 1, 2017) (citing cases finding that the plaintiff failed to plausibly allege a procedural Due Process claim because of the availability of an Article 78 proceeding); *Richardson v. Capt. Van Dusen*, 833 F. Supp. 146, 153 (N.D.N.Y. 1993) ("*[E]ven when assuming* that the Superintendent's Hearing was conducted in [a] manner that deprived plaintiff of his due process rights, the process afforded the plaintiff in the Article 78 proceeding cured any defect in the original hearing") (emphasis in original).

In *Cohn*, a high school student asserted, among other things, a Due Process claim against the school in connection with his suspension for misconduct. The court held that the plaintiff failed to state a procedural Due Process claim because of the availability of the procedural safeguards of an Article 78 proceeding to challenge any disciplinary decision. *See Cohn*, 363 F.Supp.2d at at 433-34. Both the Second Circuit and its district courts have reached the same conclusion. *See S.C.*, 2012 WL 2940020, at *10 (an Article 78 proceeding is "itself a sufficient post-deprivation remedy" precluding a procedural Due Process claim for review of decisions by school

administrators); *DeFabio v. E. Hampton Union Free Sch. Dist.*, 658 F. Supp. 2d 461, 491 (E.D.N.Y. 2009) (granting summary judgment on Due Process claim based on long-term suspensions because the plaintiffs received initial hearing and "plaintiffs also could have resorted to an Article 78 proceeding"), *aff'd*, 623 F.3d 71 (2d Cir. 2010); *Bogle–Assegai v. Bloomfield Bd. of Educ.*, 467 F. Supp. 2d 236, 243-44 (D. Conn. 2006) (same), *aff'd*, 312 Fed. Appx. 435 (2d Cir. 2009).

Accordingly, where, as here, Article 78 gave Plaintiffs a meaningful opportunity to challenge the academic suspension, they were not deprived of due process simply because they failed to avail themselves of the opportunity. Based on the foregoing, the Court recommends that Defendants' motions to dismiss Plaintiffs' procedural Due Process claims, as against the Individual Defendants in their personal capacities, be granted.

### ii.    Fourteenth Amendment Equal Protection Claim

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382, 2394 (1982)). In "determining the validity of state legislation or other official action that is challenged as denying equal protection" on the grounds that it distinguishes between disabled and non-disabled individuals, the Court must determine whether such

legislation or official action is "rationally related to a legitimate governmental purpose." *Cleburne*, 473 U.S. at 440, 446, 105 S.Ct. at 3254, 3258.

Courts within this Circuit have held that to the extent a plaintiff's claims, however framed, are actually based upon alleged denials of a "free appropriate public education," they cannot state an Equal Protection claim. *See Schafer v. Hicksville Union Free Sch. Dist.*, No. 06-CV-2531 JS ARL, 2011 WL 1322903, at *18 (E.D.N.Y. Mar. 31, 2011) ("[T]o the extent [plaintiff] was denied a FAPE because of his disability, this is the type of violation that should be redressed through IDEA."); *Pape v. Bd. of Educ. of the Wappingers Cen't Sch. Dist.*, 2009 WL 3151200, at *6 (S.D.N.Y. Sept. 29, 2009) ("The broad discriminatory claims alleged by Plaintiffs are, at best, the type of alleged discrimination that Section 504 and the ADA are designed to protect against, not the Equal Protection Clause.") (internal quotations and citations omitted).

Nevertheless, Plaintiffs allege an Equal Protection violation, claiming that S.M., "as a child with learning disabilities" was "targeted" and treated differently than other students in that he was given timeout sessions, removed from the classroom, subjected to "egregious restraint," and restrained by physical means, and that Defendants failed to intervene upon learning of the alleged bullying and harassment "he faced based on his disabilities." *See* Compl. ¶¶ 141-46, 157-61. Accordingly, Plaintiffs allege that S.M. was "unfairly singled out by Defendants in violation of the Equal Protection Clause." *See Pape*, 2009 WL 3151200 at *6. Such claims, to the extent viable, should be analyzed under the "class of one" equal

protection theory.  *See id.*  "The Supreme Court has 'recognized successful equal protection claims brought by a "class of one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'"  *Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 58 (2d Cir. 2010) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 1074 (2000)).

Plaintiffs asserting a "class of one" Equal Protection claim, however, "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves."  *See Ruston*, 610 F.3d at 59 (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)) (internal quotation marks omitted). Specifically, such plaintiffs "must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake."  *Id.* at 59–60 (quoting *Clubside, Inc.*, 468 F.3d at 159) (internal quotation marks omitted).  "The standard for determining whether another person's circumstances are similar to the plaintiff's must be . . . whether they are prima facie identical."  *Kamholtz v. Yates Cty.*, No. 08-CV-6210, 2008 WL 5114964, at *5 (W.D.N.Y. Dec. 3, 2008), *aff'd*, 350 F. App'x 589 (2d Cir. 2009) (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005)) (internal quotation marks omitted).

Applying these standards, even if an Equal Protection claim in this context could be alleged, Plaintiffs fatally fail to identify any similarly situated comparators. After each allegation of wrongdoing, the Complaint asserts, in conclusory fashion, that S.M. was "treated [] differently than his schoolmates," and that other "equally disruptive" students were not "treated with such force." *See* Compl. ¶¶ 141-46. These vague allegations are insufficient to establish that "another person's circumstances . . . are prima facie identical" to S.M.'s, and so the claim, as asserted, is untenable. *See Kamholtz*, 2008 WL 5114964, at *5. Accordingly, for both of these reasons, the Court recommends that Plaintiffs' Equal Protection claim against the Individual Defendants in their personal capacities be dismissed.

### iii.    Fourth Amendment Claim

Plaintiffs allege that the Individual Defendants violated S.M.'s Fourth Amendment right to be free from unreasonable searches and seizures when they seized and restrained him as he attempted to leave school grounds on April 1, 2019. *See* Compl. ¶¶ 130-40.

"[T]he relevant Fourth Amendment inquiry is whether there was a seizure and, if so, whether that seizure was reasonable. In the schoolhouse, a seizure is reasonable if it was (1) 'justified at its inception' and (2) 'reasonably related in scope to the circumstances which justified' the seizure in the first place." *Schafer*, 2011 WL 1322903, at *8 (quoting *Bisignano*, 113 F.Supp.2d at 597); *Camac*, 2011 WL 3030345, at *8. In the education context, the Supreme Court "has repeatedly emphasized the need for affirming the comprehensive authority of the States and of school officials,

consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools." *Patrick*, 354 F. Supp. 3d at 206–07 (internal quotations and citations omitted). "In evaluating a challenged seizure, the Court reviews the totality of the circumstances." *Schafer*, 2011 WL 1322903, at *8.

Based on the facts asserted, the Court cannot, on a motion to dismiss, determine whether this alleged seizure was justified or reasonably related in scope to justifying circumstances. Nevertheless, the Court respectfully recommends that Plaintiffs' Fourth Amendment claim be dismissed on qualified immunity grounds, as discussed below. Accordingly, the Court recommends that Defendants' motions to dismiss be granted with respect to all of Plaintiffs' Section 1983 causes of action against the Individual Defendants in their personal capacities.[7]

### c.  Qualified Immunity

"Under the doctrine of qualified immunity, a government official performing discretionary functions is shielded from liability for civil damages if his conduct did not violate plaintiff's clearly established rights or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights." *Mandell v. County of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003). The defense of qualified immunity will rarely support a Rule 12(b)(6) motion unless "the facts supporting the defense appeared on the face of the complaint." *McKenna v. Wright*,

---

[7] Plaintiffs' sixth cause of action simply alleges that "Defendants Violated 42 U.S.C. § 1983," but does not specify an established right that Defendants are alleged to have violated. *See* Compl. ¶¶ 119-29. Accordingly, the Court respectfully recommends that this cause of action be dismissed because the Court is unable to discern an alleged violation of a federal right such as those asserted in Plaintiffs' other causes of action.

386 F.3d 432, 435 (2d Cir. 2004).    In this regard, "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Id.* at 436.

With respect to clearly established rights, relatively few cases have examined the contours of a student's right to be free from unreasonable seizures in the school setting. *See Couture v. Bd. of Educ. of Albuquerque Pub. Schs.*, 535 F.3d 1243, 1254-55 (10th Cir. 2008) (discussing the "disinclination" on the part of courts—particularly appellate courts—to "insert [them]selves into the evaluation of educational policy and techniques"). This is particularly true in the specific context at issue in this case: the use of physical restraints by school officials to address the behavioral challenges posed by a student with disabilities who demonstrated a risk to himself and perhaps those around him when he attempted to leave school grounds.

As a preliminary matter, the court notes that, "[f]ederal [statutory] law does not contain general provisions relating to the use of seclusion and restraints, and there are [currently] no specific federal laws concerning the use of seclusion and restraint in public schools." Nancy Lee Jones & Jody Feder, U.S. Congressional Research Service Report for Congress: *The Use of Seclusion and Restraint in Public Schools: The Legal Issues 2* (Oct. 14, 2010); *see also* U.S. Dept. of Educ., *Restraint and Seclusion: Resource Document* (May 15, 2012).

Against this lack of federal guidance, courts have held that the use of physical restraints and seclusion in school settings – particularly in special education classrooms – is not necessarily unlawful. *See C.N. v. Willmar Pub. Schs., Indep. Sch.*

42

*Dist.*, No. 347, 591 F.3d 624, 633 (8th Cir. 2010) (teacher's allegedly excessive use of restraints and seclusion that were part of developmentally delayed student's IEP, "even if overzealous at times and not recommended . . . was not a substantial departure from accepted judgment, practice or standards and was not unreasonable in the constitutional sense"); *Couture*, 535 F.3d at 1251-52, 1256 (repeated use of timeout rooms over a two-month period to address student's disruptive and dangerous behavior was reasonable, particularly in light of the fact that timeouts were prescribed in the student's IEP as a mechanism to teach him behavioral control); *Alex G. ex rel. Dr. Steven G. v. Bd. of Trs. of Davis Joint Unified Sch. Dist.*, 387 F. Supp. 2d 1119, 1125 (E.D. Cal. 2005) (use of physical restraints against aggressive and violent autistic student not unlawful despite parents' non-consent, where state law allows such restraints when the student poses an immediate danger to himself or others).

Even where restraints and seclusion are used in a manner that exceeds what is authorized in the student's IEP, courts have generally found their use to be constitutionally permissible. *See Payne v. Peninsula Sch. Dist.*, 623 F. App'x 846, 847-48 (9th Cir. 2015) (no violation of clearly established rights where teacher repeatedly placed autistic student in prolonged isolation in a small, dark room as a punishment and had student assist in cleaning up after he defecated in the room, both of which violated student's IEP); *Miller v. Monroe Sch. Dist.*, 159 F. Supp. 3d 1238, 1248-49 (W.D. Wash. 2016) (finding no clearly established right against holds and seclusions that were performed for discriminatory reasons, by a teacher without

the proper training, for lengths that exceeded the maximum time limit in student's IEP).

As of yet, there are few cases in which qualified immunity was denied to a teacher or school official who used physical restraints or seclusion in the course of their "custodial and tutelary responsibility." *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 656, 115 S.Ct. 2386, 2392 (1995). Instead, in cases in this area where Fourth Amendment violations have been found, the teacher or school official's actions clearly fell under the rubric of "arbitrary . . . excessive and unreasonable corporal punishment." *See Preschooler II v. Clark Cty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1181-82 (9th Cir. 2007) (teacher not entitled to qualified immunity where she repeatedly hit a four-year-old disabled student, body-slammed him, and forced him to walk without shoes across asphalt); *P.B. v. Koch*, 96 F.3d 1298, 1302-04 (9th Cir. 1996) (principal not entitled to qualified immunity where he physically assaulted multiple students when there was no need for force); *Doe ex rel. Doe v. Hawaii Dep't of Educ.*, 334 F.3d 906, 909-10 (9th Cir. 2003) (vice principal not entitled to qualified immunity where he taped a second-grader's head to a tree because the student was "horsing around" and refusing to stand still); *Jefferson v. Ysleta Indep. Sch. Dist.*, 817 F.2d 303, 305 (5th Cir. 1987) (denying qualified immunity where teacher, as part of a school-sanctioned educational exercise, tied an eight-year-old child to her chair with a jump rope for almost two full school days).

In light of the above, the Court concludes that the Individual Defendants are entitled to qualified immunity as to Plaintiffs' Fourth Amendment cause of action

because they did not violate clearly established law at the time of the alleged violation. While reasonable people may differ as to whether the Individual Defendants' tactics in restraining S.M. when he attempted to leave the school were appropriate in hindsight, they do not rise to the level of a violation of a clearly established constitutional right. *Couture*, 535 F.3d at 1254 ("[p]edagogical misjudgments . . . do not, without more, expose teachers to liability under the Fourth Amendment.").

Accordingly, the Court recommends that Defendants' motions to dismiss Plaintiffs' Fourth Amendment claim against the Individual Defendants under Section 1983 be granted, based on their qualified immunity.[8]

## C. <u>Plaintiffs' Remaining State Law Claims</u>

The Complaint is brought pursuant to 28 U.S.C. § 1331, which confers upon courts federal question jurisdiction over suits "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Accordingly, in light of the recommendation of the dismissal of Plaintiffs' federal law claims against all Defendants, the Court must first determine whether it should exercise supplemental jurisdiction over Plaintiffs' state law claims before addressing the merits of any motion to dismiss these claims.

In the absence of federal question jurisdiction, district courts may exercise "supplemental jurisdiction over all other claims that are so related to claims in the

---

[8] To the extent Plaintiffs' other Section 1983 claims may otherwise be viable, contrary to the conclusions above, the Court similarly concludes that the Individual Defendants did not violate any clearly established rights, and therefore the defense of qualified immunity is applicable to those causes of action as well, and would serve as an alternate basis for dismissal.

action within such original jurisdiction that they form part of the same case or controversy." *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 332 (2d Cir. 2011) (quoting 28 U.S.C. § 1367(a)).   Supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right." *Heckmann v. Town of Hempstead*, No. 10-cv-5455, 2013 WL 1345250, at *2 (E.D.N.Y. Mar. 27, 2013) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139 (1966)).   A federal court "usually should decline the exercise of supplemental jurisdiction when all federal claims have been dismissed at the pleading stage[.]" *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) (citation omitted); *see also Brooklyn Heights Ass'n v. Nat'l Park Serv.*, 818 F. Supp. 2d 564, 570-71 (E.D.N.Y. 2011); 28 U.S.C. § 1367(c).

As set forth above, the Court recommends dismissal of all of Plaintiffs' federal law claims against all Defendants on the pleadings and, in turn, should decline to exercise supplemental jurisdiction over the remaining state law causes of action pursuant to 28 U.S.C. § 1367(c)(3).   Accordingly, the Court recommends dismissal of Plaintiffs' eleventh through seventeenth causes of action against all Defendants without prejudice to be filed in state court, or if appropriate, in federal court after all alternative remedies have been exhausted.   *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 124 (2d Cir. 2006) (vacating district court's order over state law claims where all federal law claims had been dismissed before trial and remanding with instructions that state law claims be dismissed without prejudice); *see also McGuire v. City of N.Y.*, No. 12-cv-814, 2015 WL 8489962, at *8 (E.D.N.Y. Dec. 8, 2015) (declining to depart from the Supreme Court and Second Circuit's general rule

that "when the federal claims are dismissed the state law claims should be dismissed as well") (internal quotation marks and citations omitted).

## IV.  CONCLUSION

For the reasons stated above, the Court respectfully recommends that Defendants' motions to dismiss be granted in their entirety.  Specifically:  (1) Plaintiffs' Section 504 and ADA claims against the District and the Board should be dismissed without prejudice until all administrative remedies are exhausted; (2) Plaintiffs' Section 1983 claims against the District and the Board under the theory of *Monell* liability should be dismissed without prejudice, with leave to replead consistent with this recommendation; (3) Plaintiffs' Section 504, ADA, and Section 1983 claims against the Individual Defendants should be dismissed with prejudice, as a matter of law; and (3) Plaintiffs' state law claims should be dismissed without prejudice.

## V.    OBJECTIONS

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; *Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:      Central Islip, New York
               August 4, 2021

<u>/s/ Steven I. Locke</u>
STEVEN I. LOCKE
United States Magistrate Judge